**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SREYNUON LUNN, Petitioner, v. YOLANDA SMITH, Superintendent of Suffolk County House of Correction, Respondent. | Case No. 17-cv-10938<br>Hon. Talwani<br>**ORAL ARGUMENT REQUESTED** |

**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO**
**RESPONDENT'S MOTION TO DISMISS**

## I. INTRODUCTION

The Department of Homeland Security ("DHS" or "the government") released Petitioner Sreynuon Lunn from immigration detention three days after he filed the Petition the government now contends is moot. Mr. Lunn has been unlawfully detained by DHS four times, totaling approximately 13 months. His Petition alleged that his detention was unlawful and unconstitutional because DHS had no reasonably foreseeable prospect of removing him. In releasing Mr. Lunn, DHS did not disclaim the authority to re-detain him even if it still has no reasonable prospects for removing him. To the contrary, it imposed numerous conditions on Mr. Lunn's release, which indicate that he will be re-detained under circumstances that are just as impermissible as existed when he filed the Petition.

Under well-established case law, DHS's voluntary cessation of Mr. Lunn's detention cannot moot this case. *See Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005). But even if it could, the case would not be moot for additional reasons. Due to the government's intermittent detention of Mr. Lunn, the illegal conduct challenged in this petition is capable of repetition yet evading

review. And by virtue of the substantial conditions placed on his release, Mr. Lunn is presently still "in custody" for habeas purposes. For these reasons, the government's motion to dismiss should be denied, and this case should proceed to briefing and argument on whether declaratory and injunctive relief are necessary to prevent further unlawful detention.

## II. PROCEDURAL HISTORY

On May 22, 2017, Mr. Lunn filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") (Dkt. 1), which challenged his unlawful immigration detention at the Suffolk County House of Correction in custody of DHS. Mr. Lunn requested immediate release from custody and an injunction enjoining future detention without a finding that there is a significant likelihood of removal in the reasonably foreseeable future.

On May 25, 2017, this Court issued a Service Order (Dkt. 12), which, inter alia, terminated respondents John F. Kelly (United States Secretary of Homeland Security), Thomas D. Homan (Director (acting), United States Immigration and Customs Enforcement), and Christopher Cronen (Director, United States Immigration and Customs Enforcement, Boston Field Office) (collectively, the "Federal Respondents") as parties to this action.

Also on May 25, 2017, Mr. Lunn was released from DHS detention at Suffolk County House of Correction under electronic monitoring. DHS imposed additional conditions on Mr. Lunn's release, including domestic travel restrictions, weekly home visits, and weekly in-person reports to the Intensive Supervision Appearance Program office. Declaration of Kim B. Nemirow ("Nemirow Decl."), Ex. A, Order of Supervision (May 25, 2017). The DHS Release Notification and Order of Supervision make numerous references to DHS's purported ability to re-detain Mr. Lunn for violations of the conditions of release, regardless of whether Mr. Lunn's removal becomes significantly likely. *See* Nemirow Decl., Ex. A, Order of Supervision; Ex. B, Release

Notification (May 24, 2017).

On May 26, 2017, Petitioner filed a Motion to Reconsider the Order Terminating Respondents (Dkt. 14) because the Federal Respondents are Mr. Lunn's custodians, whose unlawful conduct Mr. Lunn seeks to enjoin.

On May 29, 2017, Respondent filed a Motion to Dismiss the Petition (Dkt. 15) as moot. The motion and accompanying memorandum of law were submitted on Respondent's behalf by the Department of Justice.

On or about May 30, 2017, Mr. Lunn reported to the Immigration and Customs Enforcement ("ICE") Boston Field Office in Burlington, Massachusetts. During that visit, ICE removed Mr. Lunn's electronic-monitoring device.

## III. ARGUMENT

### A. The Action Is Not Moot.

The government contends that the Petition is moot for the sole reason that DHS released Mr. Lunn from detention, without addressing any of the exceptions to the mootness doctrine. But, in appropriate cases, courts have "appl[ied] the mootness exceptions to reach the conclusion that a *habeas* petition is not moot merely because the prisoner had been released." *Farez-Espinoza v. Napolitano*, No. 08 CIV. 11060HB, 2009 WL 1118098, at *6 (S.D.N.Y. Apr. 27, 2009). Indeed, the Supreme Court in *Clark v. Martinez* reached exactly this conclusion. 543 U.S. at 376 n.3 (deciding that a habeas petitioner's case was not moot despite his release from immigration detention because release could be terminated at the government's discretion); *see Rodriguez v. Hayes*, 591 F.3d 1105, 1117–18 (9th Cir. 2010) (relying on *Clark* to determine that immigration-detention habeas case was not mooted by the petitioner's release).

For three reasons, DHS's release of Mr. Lunn does not render this action moot, and an

"actual controversy" is still "extant." *KG Urban Enters., LLC v. Patrick,* 969 F. Supp. 2d 52, 56 (D. Mass. 2013) (citing *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013)). First, the government's discretionary release of Mr. Lunn does not moot his petition because it is at best a voluntary cessation of unlawful conduct. Second, the unlawful conduct is capable of repetition yet evading review. Third, the conditions DHS has imposed on Mr. Lunn's release mean that he is still "in custody" within the meaning of 28 U.S.C. § 2241.

**1. The Government's Release of Mr. Lunn Was Voluntary Cessation of Its Unlawful Conduct.**

A habeas petition "continues to present a live case or controversy" if the government releases the petitioner subject to its "discretionary authority to terminate" that release. *Clark*, 543 U.S. at 376 n.3. For example, the Ninth Circuit has held that a habeas petition did not become moot when the petitioner was released "subject to revocation on the government's discretion," because the circumstances of his release were "far different" than protections he would have acquired if the relief requested in his petition had been granted. *Rodriguez*, 591 F.3d at 1117. In particular, the petition had requested an order precluding his detention unless the government could "demonstrate by clear and convincing evidence at a hearing before an immigration judge that he is a sufficient danger or flight risk to justify his detention." *Id.*

It can be possible for a party to establish mootness despite "voluntarily ceas[ing] committing the offending activity," but that party must meet the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *KG Urban Enters.*, 969 F. Supp. 2d at 56. Only "when cessation of the challenged activity occurs because of reasons unrelated to the litigation, such as when the challenged conduct lapses by its own terms, without reference to the defendant's conduct," is the voluntary-cessation doctrine

inapplicable. *Id.* at 57.

This case, like *Clark* and *Rodriguez*, is not moot because the government has released Mr. Lunn subject to revocation on grounds that are "far different" from the protections sought in his Petition. *Rodriguez*, 591 F.3d at 1117. The Petition alleged that Mr. Lunn's detention was unlawful and unconstitutional and that any further detention would be equally unlawful and unconstitutional because his removal to Cambodia was not reasonably foreseeable. Yet the government has released Mr. Lunn under circumstances that would permit him to be re-detained for numerous reasons, even if his removal to Cambodia remains unforeseeable. *See* 8 C.F.R. § 241.4(*l*)(2) (purporting to authorize revocation of release for "any . . . circumstance [that] indicates that release would no longer be appropriate"). This case therefore fits squarely within the voluntary-cessation exception to the mootness doctrine.

The government cannot overcome the voluntary-cessation exception because it has not made it "absolutely clear" that its wrongful behavior will not recur. Rather than repudiate its past pattern of detaining Mr. Lunn without a significant likelihood of removal in the reasonably foreseeable future, the government doubled down on its position that it has the authority to do so. *See* Memorandum of Law in Support of Motion to Dismiss for Mootness ("Mem.") 2 n.2 (indicating that DHS has the ability to detain Mr. Lunn for non-criminal, unspecified "immigration violations"); Nemirow Decl., Ex. A, Order of Supervision ("Any violation of these conditions may result in you being taken into ICE custody . . . ."). Likewise, the circumstances of Mr. Lunn's release, which came three days after he filed this Petition, suggest that the government has not abandoned its apparent view that it can detain Mr. Lunn without regard to whether his removal to Cambodia is reasonably foreseeable. DHS also removed Mr. Lunn's electronic-monitoring device shortly after Mr. Lunn referred to it in his Motion to Reconsider, a rapid about-face on an ankle

monitor that was placed on him just days earlier and further evidence that the government is not acting for reasons unrelated to this litigation. *See Centeno-Ortiz v. Culley*, No. 11-CV-1970-IEG POR, 2012 WL 170123, at *5 (S.D. Cal. Jan. 19, 2012) ("[T]he Court does not find it purely coincidental that, after detaining Petitioner for nearly [three] years, the government released him [one month] after he filed the Petition."); *cf. Doan v. Bergeron*, No. 15-cv-11725-IT, 2016 WL 4443151, at *3 (D. Mass. Aug. 18, 2016) (Talwani, J.) (holding a habeas petition was moot upon the petitioner's involuntary commitment, which followed a preliminary injunction and transferred custody of the petitioner from ICE to the state of Connecticut).

Far from satisfying the government's "formidable burden" to establish mootness despite voluntarily releasing Mr. Lunn, these circumstances confirm that his petition is not moot. *See Clark*, 543 U.S. at 376 n.3 (2005); *Farez-Espinoza*, 2009 WL 1118098, at *7 (finding that the government's statements that it was "unquestionably permitted to detain [the petitioner] in any instance . . . fit[] comfortably within the voluntary cessation exception to the mootness doctrine," even without evidence that the "government's decision to release [the petitioner] was in any way motivated by a strategy to avoid an unfavorable decision"); *Centeno-Ortiz*, 2012 WL 170123, at *4 (finding that the voluntary-cessation exception applied "because Petitioner's detention [by ICE] can reasonably be expected to recur"); *cf. Doan*, 2016 WL 4443151, at *3 (holding habeas petition was moot in part because ICE represented to the Court that it would re-detain the petitioner only if she were restored to mental competency, a highly speculative condition).

**2. DHS's Unlawful Conduct Is Capable of Repetition Yet Evading Review.**

A second exception to the mootness doctrine applies when "'(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action

again.'" *Ramírez v. Sánchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). This exception applies here because both the legal issue presented in the Petition and the intermittent detention of Mr. Lunn himself are capable of repetition yet evading review.

With respect to the legal issue, DHS's detention of post-order non-citizens without a significant likelihood of removal is capable of repetition yet evading review. DHS controls the length of detention and can release non-citizens before the legality of detention is fully litigated, which is precisely what happened to Mr. Lunn. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 397 (6th Cir. 2003) ("[B]ecause the INS can grant [the petitioner] parole at any time, such detention can always evade review.").

With respect to Mr. Lunn, there is at least a reasonable expectation that the government will unlawfully detain him again. Not only does the government purport to have the authority to do so at any time, 8 C.F.R. § 241.4(*l*); *see* Mem. 2 n.2, it has actually detained Mr. Lunn four times in the last nine years. *See Rosales-Garcia v. Holland*, 322 F.3d at 397 (finding a "reasonable expectation" of re-detention when INS revoked petitioner's parole twice in the past fifteen years).

**3. Mr. Lunn Remains in DHS Custody.**

This case is not moot for the independent reason that Mr. Lunn, though not incarcerated, is still in DHS's custody. Conditions of release "significantly restrain[ing] petitioner's liberty" are "enough to invoke the help of the Great Writ." *Jones v. Cunningham*, 371 U.S. 236, 242–43 (1963) (holding that a parole order restricting driving without permission, reporting to a parole officer, parole visitations at the petitioner's home or work at any time, along with the threat that a single deviation might be enough to result in his being returned to prison, qualified as restrictions sufficient to warrant habeas relief). Moreover, an "imminent and inevitable" future detention may

separately render a person "in custody." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 874 n.8 (1st Cir. 2010). Custody is "imminent and inevitable" when a person's proximate custody is not "a speculative possibility that depends on a number of contingencies over which he has no control," or where a finding that a defendant is not in custody postpones an inevitable habeas hearing. *Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 24 (1st Cir. 1991) (citing *Hensley v. Municipal Court*, 411 U.S. 345, 351–52 (1973)).

Here, the government has imposed conditions of release that are so onerous that they "significantly restrain[] petitioner's liberty," *Jones*, 371 U.S. at 243, and which are so easily violated that they make future detention "imminent and inevitable," *Gonzales-Fuentes*, 607 F.3d at 874 n.8. DHS requires Mr. Lunn to abide by 16 separate conditions of release, including notifying ICE prior to travelling outside of Massachusetts, being subject to ICE check-ins and home visits, potentially undergoing medical and psychological evaluations, and enrolling in an Alternatives to Detention program that may subject him to electronic monitoring and a curfew. Nemirow Decl., Ex. A, Order of Supervision. Similar to the onerous parole requirements in *Jones*, 371 U.S. at 241–42, these conditions amount to a substantial restraint on Mr. Lunn's liberty. *See also Rodriguez*, 591 F.3d at 1118. Moreover, a single violation of any of these conditions may result in Mr. Lunn being taken into ICE custody, regardless of DHS's ability to remove him. Violations seem inevitable, given Mr. Lunn's history of mental illness and homelessness. How, for example, does DHS intend to accomplish regular home visits for someone who does not have a fixed address? Nemirow Decl., Ex. A, Order of Supervision (showing Mr. Lunn's address as a homeless shelter)**.** Thus, although styled as conditions of release, the constraints imposed on him could more accurately be described as a recipe for further detention. *See Gonzales-Fuentes*, 607 F.3d at 874 n.8.

Mr. Lunn's case is therefore materially different from the petitioner's in *Doan*, another habeas petition decided by this Court. 2016 WL 4443151. In *Doan*, a Connecticut court order involuntarily committed the petitioner to a Connecticut psychiatric hospital, which in this Court's view terminated ICE's custody of her in Massachusetts. ICE also specifically disclaimed any intention to re-detain Doan unless a highly speculative condition occurred: the restoration of competence. *Id.* at *3. Here, in contrast, Mr. Lunn has not been transferred to another sovereign, and the government has given no assurances whatsoever that would conceivably stop the government from unlawfully detaining Mr. Lunn; to the contrary, it has imposed conditions that seem to make re-detention inevitable. What is more, because the government knows Cambodia will not take Mr. Lunn, and because it has already subjected him to 13 months of post-order detention, a single day of additional detention would be unlawful and unconstitutional.

**B. The Court May Order Declaratory and Injunctive Relief.**

**1. Declaratory Relief Is a Proper Remedy Now that Mr. Lunn Has Been Released from Detention.**

Because this case is not moot, and so long as Mr. Lunn is not detained, it would be appropriate for this Court to issue declaratory judgment on the question whether Mr. Lunn's detention was unlawful and unconstitutional when the Petition was filed. Declaratory relief is available to petitioners who have been released from immigration detention. *See Rodriguez*, 591 F.3d at 1105 (certifying a habeas class that sought injunctive and declaratory relief). The facts must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994); *see* 28 U.S.C. § 2201. "This requirement should not be applied woodenly" *id.*, and Mr. Lunn has shown that there is still "a case of actual controversy," 28 U.S.C. § 2201; *see supra* Part III.A.

### 2. The Court Also Has Jurisdiction to Order Injunctive Relief.

The government's contention that the Court "lacks jurisdiction to entertain injunctive relief," Mem. 1 n.2, is without support. The single case they cite for the prohibition on injunctive relief, *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973), was not concerned with the question of whether injunctive relief "is beyond the scope of . . . habeas jurisdiction," Mem. 1 n.2, but rather whether state prisoners challenging the length of their detention could proceed under the Civil Rights Act.

Indeed, an injunction is a natural fit, since habeas is "not now and [has] never . . . been a static, narrow, formalistic remedy." *Jones*, 371 U.S. at 243. Accordingly, courts have granted injunctive relief to remedy unlawful conduct challenged via habeas petitions. *Builes v. Nye*, 239 F. Supp. 2d 518, 520–21 (M.D. Pa. 2003) (granting habeas petition and enjoining removal); *Rosciano v. Sonchik*, No. CIV01-0472-PHX-JATMS, 2002 WL 32166630, at *13 (D. Ariz. Sept. 9, 2002) (same); *cf. Rodriguez*, 591 F.3d at 1105 (certifying a habeas class that sought injunctive and declaratory relief); *but see Doan*, 2016 WL 4443151, at *3 (deciding habeas petition was moot and denying injunction).

The injunction Mr. Lunn seeks would not "essentially provide immunity . . . for any additional criminal or immigration violations." Mem. 2 n.2. Instead, it would ensure that DHS, which has repeatedly unlawfully detained Mr. Lunn, conforms its conduct to the law. Mr. Lunn requests only that DHS be required to prove to this Court that any re-detention by DHS is authorized by statute and does not run afoul of the Constitution.[1] Puzzlingly, the government contends that this relief is "not necessary" because "existing regulations" permit revocation of

[1] Of course, none of the relief that Mr. Lunn seeks would disturb the operation of an ordinary criminal prosecution. By overlooking this reality, and instead arguing that an injunction against improper *immigration* detention would somehow immunize him for *crimes*, the government seems to inadvertently confirm that it has been using immigration detention to punish Mr. Lunn. This is precisely why the Petition was filed.

release to facilitate removal. *Id.* But the entire basis of this action is that DHS has repeatedly detained Mr. Lunn *without any regard for the likelihood of removal*, in violation of both the Fifth Amendment and the very statute that purportedly authorizes these regulations.

## REQUEST FOR ORAL ARGUMENT

Mr. Lunn respectfully requests oral argument on Respondent's Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, Mr. Lunn respectfully requests that the Court deny Respondent's Motion to Dismiss.

Dated: June 12, 2017

Respectfully submitted,

By: /s/ Kim B. Nemirow

Kim B. Nemirow (BBO # 663258)
Ropes & Gray LLP
191 North Wacker Drive
32nd Floor
Chicago, IL 60606
(312) 845-1200
Kim.Nemirow@ropesgray.com

Matthew R. Segal (BBO # 654489)
Laura Rótolo (BBO # 665247)
American Civil Liberties Union
Foundation of Massachusetts
211 Congress Street, Suite 301
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
lrotolo@aclum.org

Laura Murray-Tjan (BBO # 649609)
Federal Immigration Appeals Project, PLLC
Six Beacon Street, Suite 900
Boston, MA 02108
(617) 580-1717
laura@fiapboston.com

*Attorneys for Petitioner Sreynuon Lunn*

**CERTIFICATE OF SERVICE**

I, Kim B. Nemirow, hereby certify that, on June 12, 2017, the foregoing document was filed through the Electronic Court Filing system and a copy thereof will be sent electronically to the registered recipients and counsel of record as identified on the Notice of Electronic Filing.

Dated: June 12, 2017

/s/ Kim B. Nemirow
Kim B. Nemirow