UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|                                         |   |                                         |
|-----------------------------------------|---|-----------------------------------------|
| SREYNUON LUNN,                          | ) |                                         |
|                                         | ) |                                         |
|     Petitioner,     | ) |                                         |
|                                         | ) | C.A. No. 1:17-cv-10938-IT               |
|     v.              | ) |                                         |
|                                         | ) |                                         |
| YOLANDA SMITH, Superintendent of Suffolk, | ) | Leave to file granted: June 14, 2017  |
| County House of Correction,             | ) |                                         |
|                                         | ) |                                         |
|     Respondent.     | ) |                                         |

_____

**RESPONDENT'S REPLY**
**(LEAVE TO FILE GRANTED: JUNE 14, 2017)**

Although Petitioner Sreynoun Lunn ("Lunn") has been released from custody, he nonetheless argues that his habeas petition is not moot because Respondent's release of Lunn was a voluntary cessation of unlawful conduct, the conduct is capable of repetition yet evading review, and the conditions imposed upon Lunn mean he is still "in custody" within the meaning of 28 U.S.C. § 2241. ECF No. 17, Opposition. However, none of the exceptions to mootness apply and Lunn's attack on his conditions of release and his speculative fear of future re-detention by U.S. Immigration and Customs Enforcement ("ICE") are meritless under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

**DISCUSSION**

**I.        There is no Live Controversy as to Which Relief Can Be Granted**

Article III, Section 2, of the Constitution requires the existence of a "case" or "controversy" through all stages of federal judicial proceedings. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to

the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "Even if an actual case or controversy exists at the inception of the litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of effectual relief." *Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 17 (1st Cir. 2003).

Federal district courts may grant writs of habeas corpus if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). However, "[a] habeas petition will become moot once the prisoner is released from custody unless the petitioner can show some sufficient collateral consequence of the underlying proceeding." *Leitao v. Reno*, 311 F.3d 453, 454 (1st Cir. 2002) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Here, Lunn was released from custody on May 25, 2017. Accordingly, his petition is moot unless he can demonstrate a collateral consequence that is a "concrete and continuing injury." *Spencer*, 523 U.S. at 7. Events which are "a matter of speculation" or are a "possibility, rather than a certainty or even a probability" do not suffice. *Spencer*, 523 U.S. at 14.

Lunn has failed to identify a collateral consequence sufficient to give rise to an Article III case or controversy. Lunn's claim that he can be re-detained if certain circumstances occur, ECF No. 17, Opposition, at 1, is not a collateral consequence that may be redressed by granting his Petition. Indeed, such a controversy is neither immediate nor real. The Court cannot possibly predict the future circumstances surrounding a hypothetical future detention. Such future circumstances are "purely a matter of speculation," and therefore, do not constitute collateral consequences that continue to present a live controversy. *Spencer*, 523 U.S. at 12-13, 16. (refusing to "extend our presumption of collateral consequences . . . to the area of parole revocation").

2

Moreover, consequences that are within Lunn's power to avoid, such as triggering re-detention by violating the terms of his supervised release, are not considered collateral consequences for purposes of overcoming mootness. *Spencer*, 523 U.S. at 14 (rejecting claims of collateral consequences that are "contingent upon violating the law . . ." because the petitioner is required to prevent such possibility from occurring). Therefore, Lunn has failed to demonstrate collateral consequences that would overcome the mootness issue.

## II.     No Exceptions to the Mootness Doctrine Apply

In addition, despite Lunn's erroneous claims to the contrary, his habeas petition does not fall within any of the exceptions to the mootness doctrine.

### A.     The Voluntary Cessation Doctrine Does Not Apply

Lunn asserts that, under the "voluntary cessation" principle, his habeas proceedings are not moot despite his release because the government released Lunn "under circumstances that would permit him to be re-detained, even if his removal to Cambodia remains unforeseeable."[1] ECF No 17, at 5. The "voluntary cessation" exception to mootness applies when "a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case, and there exists a reasonable expectation that the challenged conduct will be repeated following dismissal of the case." *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (internal citation and quotation marks omitted). The purpose of this exception "is to deter a 'manipulative litigant

---

[1] Lunn argues that it is "well-established case law [that] DHS's voluntary cessation of Mr. Lunn's detention cannot moot this case." ECF No. 17, at 1 (citing *Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005)). However, *Clark* found that the case continued to present a live case or controversy because Clark's release was subject to the Secretary's discretionary authority to terminate release for Mariel Cubans under 8 C.F.R. § 212.12(h) (2004), a regulation that is not applicable in this case. ICE cannot terminate release for Lunn unless circumstances change (e.g., if Lunn violates his conditions of release or ICE requires his custody in order to present him for any interview required for issuance of travel documents for his removal) and ICE notifies Lunn. *See infra*, Part IV (discussing the regulations).

[from] immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after.'" *Id.* (quoting *American Civil Liberties Union of Massachusetts ("ACLUM") v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 54-55 (1st Cir. 2013). When conduct is ceased voluntarily, the government holds the "burden of showing it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envl. Servs., Inc*, 528 U.S. 167, 190 (2000). "The voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation." *ACLUM*, 705 F.3d at 56 (internal citation omitted).

Here, contrary to Lunn's assertions, ECF No. 17, at 5-6,[2] ICE voluntarily released Lunn not because he filed a habeas petition, but because the Boston ICE office was notified that no travel document interviews were scheduled in the "near future" by the Cambodian consulate, so Lunn was released pursuant to an OSUP on May 25, 2017.[3] Exhibit A ("Exh. A"), Declaration of Deportation Officer Robert Piepiora, at ¶ 8. Moreover, even if ICE were to again detain Lunn at

---

[2] Lunn also asserts that the removal of his electronic-monitoring device is "further evidence that the government is not acting for reasons unrelated to this litigation." ECF No. 17, at 5-6. However, these assumptions are not correct. Upon Lunn's release from ICE custody on May 25, 2017, he was placed into the ICE Alternatives to Detention ("ATD") GPS monitoring program. Exh. A, at ¶ 9. However, on May 26, 2017, Lunn, who was staying at a homeless shelter, failed the residence verification, which is part of the ATD process. *Id.* Because Lunn was homeless, he had no residence at which to conduct monitoring and no ability to be regularly contacted by phone. *Id.* Moreover, he would be unable to charge his GPS bracelet as required by the monitoring requirements. *Id.* Accordingly, ICE made the decision to remove Lunn from the ATD/GPS Monitoring Program and to instead supervise his release with criminal database monitoring and regular reporting to the ICE office. *Id.*

[3] Notably, Cambodia is currently cooperating with the repatriation of its citizens, and removals to Cambodia are being conducted. Exh. A, ¶ 10. Accordingly, travel documents may be issued to facilitate Lunn's removal in the future. *Id.* In such a circumstance, it may be necessary to conduct an in person interview with the consulate for travel documents, which would require that Lunn be taken back into ICE custody and presented before consulate personnel. *Id.*

some point in the future based on changed circumstances, a new detention would have nothing to

do with Lunn's prior detention, which occurred after Lunn was released from state criminal

custody after his arrest for larceny in violation of Massachusetts Law, and will turn on new facts

beyond the control of ICE. Indeed, absent Lunn's re-involvement with the criminal justice

system, his violation of his conditions of supervision, the necessity for his presentation for an

interview in pursuit of issuance of Cambodian travel documents enabling him to return to

Cambodia, or the willingness of a third party to accept him, he will remain on release. Therefore,

there is no evidence the alleged wrong will recur, and the "voluntary cessation" doctrine does not

apply. *See ACLUM*, 705 F.3d at 56; *see also Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir.

1991) (declining to apply the voluntary cessation doctrine when ICE on its own released

petitioner on parole under conditions of supervision).

**B.     The Capable of Repetition, Yet Evading Review Doctrine Does Not Apply**

The "capable of repetition, yet evading review" exception "applies only in exceptional

situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), where a Petitioner can show

that "(1) the challenged action was in its duration too short to be fully litigated prior to its

cessation or expiration, and (2) there was a reasonable expectation that the same complaining

party would be subjected to the same action again," *Gulf of Me. Fisherman's Alliance v. Daley*,

292 F.3d 84, 89 (1st Cir. 2002) (internal quotation and citation omitted). Such exception is

"construed narrowly." *Redfern v. Napolitano*, 727 F.3d 77, 84 (1st Cir. 2013).

Here, the only necessary question is whether there is a reasonable expectation that Lunn,

who is presently free, "will be subjected to the same action again."[4] *Gulf of Me. Fisherman's*

---

[4] Lunn argues that "DHS's detention of post-order non-citizens without a significant likelihood of removal is capable of repetition yet evading review." ECF No. 17, at 7. However, the issue in

5

*Alliance*, 292 F.3d at 89. Petitioner argues that it is "at least a reasonable expectation that the government will unlawfully detain him again." ECF No. 17, at 7. However, the likelihood that Petitioner might commit another crime or otherwise violate the conditions of his release from immigration custody is uniquely within his own control and is too tenuous to make his return to custody pending removal a reasonable expectation in this case. *See City of Los Angeles*, 461 U.S. at 95. Additionally, even if ICE were to re-detain Lunn at some point in the future (which is purely hypothetical at this point), it would be under a new set of circumstances and new facts, such as the Cambodian consulate scheduling new interviews for travel documents. "The Court has never held that a mere physical or theoretical possibility was sufficient" to meet this standard. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Moreover, a speculative assertion is insufficient to save a case from becoming moot. *Redfern*, 727 F.3d at 85 (citing *Doe No. 1 v. Reed*, 697 F.3d 1235, 1239 (9th Cir. 2012) ("A moot case cannot be revived by alleged future harm that is so remote and speculative that there is no tangible prejudice to the existing interests of the parties."), and *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 732 (7th Cir. 2006) ("[P]ure speculation as to future injury is not sufficient to meet the exception to mootness.")).

Further, there is no showing that Lunn would be unable to fully litigate the legality of any re-detention, if any, through a habeas petition. If Respondent were to re-detain Lunn, Lunn would be free to file a new habeas petition if he believes his detention is unlawful. The "hardship" associated with Lunn being required to file a new habeas petition would be minimal,

---

this case deals with ICE's detention of *Lunn*, not ICE's detention of all post-order non-citizens. Thus, this argument is over broad and unavailing.

and counterbalanced by the advantage this Court would have in adjudicating the new habeas

petition based on facts then in existence (rather than hypothetical future circumstances).

More importantly, Lunn is seeking an order today to bar future events based on what he

anticipates future facts to be.  Such requested relief is nothing more than a request for an

advisory opinion, and such declarations are prohibited under the Constitution. *Aetna Life Ins. Co.*

*v. Haworth*, 300 U.S. 227, 240-41 (1937); *see also Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir.

2003) ("Past exposure to illegal conduct does not in itself show a present case or controversy

regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.")

(quoting *L.A. v. Lyons*, 461 U.S. 95, 102 (1983)).  The controversy "must be a real and

substantial controversy admitting of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of

facts." *Maryland Cas. Co. v. United Corp. of Massachusetts*, 111 F.2d 443, 446 (1st Cir. 1940);

*see also Boston Teachers Union Local 66, AFT, AFL-CIO v. Edgar*, 787 F.2d 12, 16 (1st Cir.

1986) (stating that the court may not offer opinions based on hypothetical facts). It simply does

not make sense for a court to issue a declaration that will have no legal effect until the facts upon

which it was issued have been overcome by later events. Such a declaration would be the

quintessential advisory opinion prohibited by the Constitution. *Ka Lok Lau v. Holder*, 880

F.Supp.2d 276 (D. Mass. July 31, 2012) ("If a controversy has not yet arisen, declaratory

judgment is inappropriate.") (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 139

(2007)).

## III.    Lunn's Conditions of Release do not Render Him in Custody

Lunn next argues that even though he has been released from detention, he remains "in

custody" because he was released pursuant to an Order of Supervision ("OSUP").  ECF No. 17,

at 7-9. However, as the Supreme Court made clear, "[t]he choice . . . is not between imprisonment and the alien living at large. It is between imprisonment and supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 696. Indeed, the Supreme Court in *Zadvydas* explicitly noted that when a petitioner's detention becomes "unreasonable and [is] no longer authorized by statute," the alien's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699-700; *see Riley v. INS*, 310 F.3d 1253, 1256-57 (10th Cir. 2002) (a petitioner's release from detention under an order of supervision "moot[ed] his challenge to the legality of his extended detention").

Several different statutory and regulatory sources detail the release conditions permitted under *Zadvydas* and those authorities govern Lunn's release. *See Zadvydas*, 533 U.S. at 699-700 (citing 8 U.S.C. §§ 1231(a)(3), 1253, 8 C.F.R. § 241.5). Pending his removal, "the alien … shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The statute goes on to require that regulations "shall include provisions requiring the alien: (A) to appear before an immigration officer periodically for identification . . . (C) to give information  under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." *Id*. The regulations promulgated pursuant to the aforementioned statute likewise require several  conditions of release, including that the alien "continue efforts to obtain a travel document and  assist the Service in obtaining a travel document" and that he obtain "advance approval of travel  beyond previously specified times and distances." 8 C.F.R. § 241.13(h); *see also* 8 C.F.R. §§ 241.5(a)(2), (a)(4).

Lunn's release pursuant to these reasonable conditions is justified by Congress's intent to effectuate the removal of aliens and prevent them from absconding. *Demore v. Kim*, 538 U.S. 510, 528 (2003). Moreover, the Supreme Court has explained that the "Due Process Clause does not require [the government] to employ the least burdensome means" in this context. *Id.* The cases cited by Lunn to support his assertion that he is "in custody" all involve habeas petitioners detained for criminal violations. *See Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (discussing a petitioner detained under criminal statutes); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010) (discussing a class of petitioners detained under criminal statutes).[5] But Lunn's argument ignores the distinction between criminal detention – which is not at issue here – and civil immigration detention. The analysis has *always* been different in the immigration context. *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime.").

## IV.    This Court Should Not Order Declaratory and Injunctive Relief

Lunn next argues that it is "appropriate for this Court to issue declaratory judgment on the question of whether [Lunn's] detention was unlawful and unconstitutional when the petition was filed." ECF No. 17, at 9. However, "issuance of a declaratory judgment deeming past conduct illegal is . . . not permissible as it would be merely advisory." *ACLUM*, 705 F.3d at 53 (citing *Maine v. U.S. Dep't of Labor*, 770 F.2d 236, 239 (1st Cir. 1985)). "The Supreme Court has admonished that federal courts 'are not in the business of pronouncing that past actions

---

[5] Indeed, in *Gonzalez-Fuentes*, the First Circuit noted that while a "future restraint on liberty may provide a basis for habeas jurisdiction if it is imminent and inevitable," "custody is not considered imminent and inevitable for habeas purposes if it would depend on 'contingencies' which may 'render the entire controversy academic.'" 607 F.3d at 874 n.8 (quoting *Fernos Lopez*, 929 F.2d 20, 24 (1st Cir. 1991) (per curiam)).

which have no demonstrable continuing effect were right or wrong.'" *Id.* at 53 (quoting *Spencer*, 523 U.S. at 18). Accordingly, where, as here, there is no longer an active case or controversy, *see supra* Part I, such relief is not appropriate. "For declaratory relief to withstand a mootness challenge, the facts alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *ACLUM*, 705 F.3d at 53-54 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)). As discussed above, Lunn has been released, and any potential future detention is speculative at this time.

Finally, Lunn asks this Court to issue an injunction requiring DHS "to prove to this Court that any re-detention by DHS is authorized by statute and . . . the Constitution." ECF No. 17, at 10. First, Lunn's argument is premised on his belief that his prior detentions by ICE were unlawful. However, each time Petitioner has been detained by ICE it has been as a result of Petitioner's own conduct which created changed circumstances. Lunn was initially arrested by ICE on May 16, 2008, subsequent to an April 30, 2008, arrest by the Boston Police Department. Exh. A, at ¶ 5. He was placed into administrative removal proceedings, was ordered removed from the United States on June 25, 2008, and was subsequently released on an administrative order of supervision on July 21, 2008. *Id.* Since his initial ICE arrest, Lunn has been brought back to ICE on two occasions. *Id.* at ¶ 6. On November 6, 2009, Lunn was arrested by ICE after his January 5, 2009, arrest by the Quincy, Massachusetts, Police Department for assault and battery with a dangerous weapon, an offense for which he was subsequently convicted. *Id.* at ¶ 7. Lunn had also failed to report as required to ICE after his previous release from ICE custody. *Id.* His order of supervision was revoked and he was brought back into custody for efforts to facilitate his removal. *Id.* ICE attempted to obtain travel documents to effect Lunn's removal from the United States, but without success, and Lunn was again released pursuant to an OSUP

on February 22, 2010. *Id.* On February 6, 2017, ICE arrested Lunn after his appearance in Boston District Court on October 23, 2016, after his arrest by the Boston Police Department. *Id.* at ¶ 8. Because Lunn had failed to report as required to ICE after his 2010 release and continued to commit new crimes, his release order was revoked and he was brought back into ICE custody for renewed efforts to facilitate his removal from the United States. *Id.* ICE again made attempts to obtain travel documents; however, when the Boston ICE office was notified that no travel document interviews were scheduled in the "near future" by the Cambodian consulate, Lunn was again released pursuant to an OSUP and released from ICE custody on May 25, 2017. *Id.*

Moreover, and as discussed in our Motion to Dismiss, existing regulations provide for revocation of release for purposes of removal and set out the procedures by which the alien is provided notice and an opportunity to contest the revocation. 8 C.F.R. § 241.13(i)(2) and (3). The regulations provide that ICE may revoke an alien's release if there are changed circumstances and ICE determines there is now a significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2). The alien is notified of the revocation basis, is provided an opportunity to respond, and may submit evidence or information to show why he or she believes that removal is not significantly likely in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(3). ICE must comply with these regulations.

## CONCLUSION

As Lunn's habeas petition has become moot and his release conditions are reasonable and permitted, the Court must dismiss Lunn's habeas corpus petition pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated: June 15, 2017                        Respectfully submitted,


CHAD A. READLER                  By:   /s/ Kathleen A. Connolly
Acting Assistant Attorney General        KATHLEEN A. CONNOLLY
Civil Division                           CT Bar 426183
                                         Senior Litigation Counsel
WILLIAM C. PEACHEY                       Department of Justice, Civil Division
Director                                 Office of Immigration Litigation (OIL)
                                         District Court Section
GISELA WESTWATER                         P.O. Box 868
Assistant Director                       Washington, DC 20044
                                         Tel: (202) 305-8627
                                         Fax: (202) 307-8781
                                         Email: Kathleen.a.connolly@usdoj.gov

                                         **Attorneys for Respondent**



## CERTIFICATE OF SERVICE


        I hereby certify that a true copy of the above Motion for Leave to File a Reply was served upon the attorney of record for each other party on June 15, 2017, through the CM/ECF for the District of Massachusetts.  All parties are registered CM/ECF participants and were served electronically, as identified on the Notice of Electronic Filing (NEF).


                                         /s/ Kathleen A. Connolly
                                         Kathleen A. Connolly
                                         Senior Litigation Counsel

Date:  June 15, 2017