UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
                                                              )
SREYNUON LUNN,                                                )
                                                              )
         Petitioner,                                          )
                                                              )          C.A. No. 1:17-cv-10938-IT
         v.                                                   )
                                                              )
YOLANDA SMITH, Superintendent of Suffolk,                     )
County House of Correction,                                   )
                                                              )
         Respondent.                                          )
———————————————————————)

## RESPONDENT'S RESPONSE AND OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Sreynoun Lunn ("Lunn") filed his Petition for Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2241 on May 22, 2017. ECF No. 1, Petition ("Pet."). On May 25, 2017, the Court

issued an order directing Respondents to respond to the petition by May 29, 2017. ECF No. 12,

Order. On May 25, 2017, Lunn was released from custody. ECF No. 16-1, McGrath-Boyle

Declaration ("Decl.") at ¶ 4. On May 29, 2017, Respondents moved to dismiss the habeas

petition as moot, ECF Nos 15 and 16, to which Lunn opposed, ECF No. 17. On July 11, 2017,

after oral argument, the Court denied Respondents' Motion to Dismiss and ordered Respondents

to file a response to the petition by July 25, 2017. ECF Nos. 26, 27.  Respondents now file their

Response and Opposition to the Petition.

## INTRODUCTION

Petitioner Lunn was issued a final order of removal to Cambodia on June 25, 2008. Pet.

at ¶ 16. After his initial release from custody in 2009, he has been re-detained by Immigration

and Customs Enforcement ("ICE") twice in attempts to effectuate his removal to Cambodia, each

time as a result of his failure to comply with his Order of Supervision. ECF No. 23-1, Piepiora

Decl. Lunn argues that, because his removal is not reasonably foreseeable, Respondents' re-

detention of him for violating his Order of Supervision ("OSUP") conditions violates 8 U.S.C.

§ 1231 and is unconstitutional under the Fifth Amendment's Due Process Clause. Pet. at ¶¶ 28-

38; ECF No. 3, Memorandum in Support ("Mem. in Support") at 1-2, 5-11. Lunn's Petition must

be denied, because ICE's ability to detain Lunn for violating his conditions of release is neither

unlawful under 8 U.S.C. § 1231 nor a violation of the Due Process Clause of the Fifth

Amendment.

## FACTUAL BACKGROUND

Lunn was born in a Thai refugee camp, after his Cambodian parents fled the Khmer

Rouge. Pet. ¶ 10. On September 25, 1985, Lunn was lawfully admitted to the United States as a

refugee. *Id.* at ¶ 11. Lunn was initially arrested by ICE on May 16, 2008, subsequent to an April

30, 2008, arrest by the Boston Police Department. ECF No. 23-1, Piepiora Decl. at ¶ 5. The

Department of Homeland Security ("DHS") initiated removal proceedings against Lunn,

charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), as a result of his conviction

for an aggravated felony. Pet. ¶ 15. On June 25, 2008, an immigration judge issued Lunn a final

order of removal to Cambodia. *Id.* at ¶16. On October 16, 2008,[1] Lunn was released from ICE

custody on an OSUP pending his removal because his country of origin declined to provide

travel documents. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.4.

Lunn has consistently violated the conditions of release set forth in the OSUP by failing

to appear as required by ICE, and by being arrested and/or convicted of new crimes. ECF No.

---

[1] The declaration submitted with Respondents' Reply incorrectly stated that his release date had been July 21, 2008; however, July 21, 2008, was a transfer date. Lunn's release date was October 16, 2008. *See* Exhibit A, Gentile Declaration ("Gentile Decl.").

23-1, Piepiora Decl. at ¶ 6. Since his initial ICE release in 2008, Lunn has been re-detained on two occasions. *Id.* On November 6, 2009, Lunn was arrested by ICE after his January 5, 2009, arrest by the Quincy, Massachusetts, Police Department, for assault and battery with a dangerous weapon, an offense for which he was subsequently convicted. *Id.* at ¶ 7. At that time, Lunn's OSUP was revoked and he was re-detained to facilitate his removal to Cambodia. *Id.* On February 22, 2010, ICE released Lunn from detention pursuant to an OSUP pending his removal after his country of origin declined to provide travel documents. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.4.

In 2016, Lunn was arrested by the Boston Police Department on charges of robbery in violation of Massachusetts law. Pet. at ¶ 22. On October 24, 2016, Lunn was arraigned in the Central Division of the Boston Municipal Court on charges of unarmed robbery. On February 6, 2017, Lunn was arrested by ICE as a result of this arrest. ECF No. 23-1, Piepiora Decl. ¶ 8. Because he had again violated the conditions of his OSUP – by failing to report to ICE and by committing new crimes – ICE revoked his release order and he was taken into custody to facilitate his removal to Cambodia. *Id.* Thereafter, ICE was notified that no travel document interviews were scheduled in the "near future" by the Cambodian consulate, so ICE again released Lunn pursuant to an OSUP on May 25, 2017. *Id.*

## PROCEDURAL BACKGROUND

On May 22, 2017, while he was still in ICE detention, Lunn filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on May 22, 2017. ECF No. 1, Pet. In his Petition and Memorandum in Support, Lunn challenges his detention and argues that, because his removal is not reasonably foreseeable, his detention for violating his OSUP conditions violates 8 U.S.C. § 1231 and is unconstitutional under the Due Process Clause. Pet. at ¶¶ 28-38; Mem. in

Support at 1-2, 5-11. He requested release from physical custody,[2] and an order enjoining Respondents "from re-detaining Mr. Lunn without first establishing in this Court, by a preponderance of the evidence, that his removal has become reasonably foreseeable." Pet. at ¶ 40. On May 25, 2017, the Court issued an order directing Respondents to respond to the petition by May 29, 2017.[3] ECF No. 12, Order.

On May 25, 2017, Lunn was released from detention. On May 29, 2017, Respondents moved to dismiss the habeas petition, arguing that the petition was moot as Lunn was no longer in custody. ECF Nos. 15 and 16. Lunn opposed the motion, arguing that, because ICE could re-detain Lunn if he violates his OSUP, notwithstanding its ability to obtain travel documents and remove him, the case was not moot. ECF No. 17. On July 11, 2017, after oral argument, the Court denied Respondents' Motion to Dismiss and ordered Respondents to file a response to the petition. ECF Nos. 26, 27.

## ARGUMENT

Lunn challenges ICE's detention of him, arguing that detaining him for violating his OSUP when his removable is not reasonably foreseeable violates 8 U.S.C. § 1231 and the Due Process Clause of the Fifth Amendment. Pet. at ¶¶ 28-38; *see also* ECF No. 3, Mem. in Support, at 5-11. He asserts that the violation of his terms of supervised release does not independently

---

[2] His request to be released from physical custody was mooted out by his May 25, 2017, release from custody. *See* ECF No. 16-1, McGrath-Boyle Decl. at ¶ 4; ECF No. 15, Motion to Dismiss (discussing Lunn's release from custody).

[3] The Order also dismissed all named Respondents except for Yolanda Smith, Superintendent of the Suffolk County House of Correction. *Id.* at ¶ 1. On May 26, 2017, Lunn moved to reconsider the court's order terminating the respondents. ECF No. 14, Mot. to Reconsider. As Respondents moved to dismiss the Petition for lack of jurisdiction, Respondents did not file a separate opposition to Lunn's motion to reconsider the order terminating respondents. In its July 11, 2017 Order, the Court reinstated the dismissed Respondents. ECF No. 26.

authorize detention absent a showing that he is reasonably likely to be removed. ECF No. 3,

Mem. In Support at 9-10. However, ICE's ability to detain Lunn for violating his conditions of

release is neither unlawful under 8 U.S.C. § 1231 nor a violation of the Due Process Clause of

the Fifth Amendment. Indeed, the Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678

(2001), clearly anticipates both release under an OSUP and re-detention when that OSUP is

violated.

## I.     THE IMMIGRATION AND NATIONALITY ACT AND *ZADVYDAS.*

Under the INA, if ICE does not remove an alien subject to a final removal order within

90 days (the "removal period"), 8 U.S.C. § 1231(a)(1)(A), ICE may continue detention if it is

"reasonably necessary" to effectuate removal, or ICE may release the alien "subject to

supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *See*

*Zadvydas*, 533 U.S. at 689; 8 U.S.C. § 1231(a)(3) and (6) (providing that an alien who is subject

to mandatory detention, inadmissible, or who has been determined to be a risk to the community

or a flight risk, "*may* be detained beyond the removal period") (emphasis added).   Those

regulations provide, *inter alia*, that supervision orders shall contain various reporting

requirements, limitations on travel without prior ICE approval, and a mandate that the alien

"continue efforts to obtain a travel document and assist the Service in obtaining a travel

document." *See* 8 C.F.R. § 241.5(a). Neither the statute nor the regulations contain a time limit

on the period of supervision. The *Zadvydas* Court did not set a time limit and implicitly endorsed

supervision for the duration of an alien's presence in the United States when it held that

deportable aliens with no foreseeable possibility of deportation should be released under

supervision. 533 U.S. at 695-96; *see also Yusov v. Shaughnessey*, 671 F.Supp.2d 523, 527-28

(S.D.N.Y. 2009).

In *Zadvydas*, the Supreme Court determined that under the Fifth Amendment, detention for an additional 90 days after the removal period, or six months combined, is presumptively reasonable. *Zadvydas*, 533 U.S. at 700. The Court stated that if detention is no longer constitutional because the likelihood of removal is too remote, the proper alternative is release under conditions of supervision. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 699-700 (citing 8 U.S.C. §§ 1231(a)(3), 1253 (1994 ed., Supp. V), and 8 C.F.R. § 241.5(2001)). The Court specifically noted that "we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions," *Id.* at 695 (citing 8 U.S.C. § 1231(a)(3) (1994 ed. Supp. V) (granting authority to the Attorney General to prescribe regulations governing the supervision of aliens not removed within 90 days), and § 1253 (imposing penalties for failure to comply with release conditions).

## II.   LUNN'S CHALLENGE TO THE REGULATIONS

In his petition, Lunn asserts that Respondent's detention of Lunn for violating his OSUP is not permitted under 8 U.S.C. § 1231(a)(6), which, according to Lunn, only authorizes detention once removal is reasonably foreseeable. Pet. at ¶¶ 28-30 (citing *Zadvydas*, 533 U.S. at 699); ECF No. 3, at 5-11. As an initial matter, inasmuch as Lunn's request that Respondents must first seek permission from this Court to re-detain him by establishing that his removal has become reasonably foreseeable is an attempt to ask this Court to interfere with the actual

removal process, Pet. ¶ 40c; ECF No. 3, Mem. in Support at 11-12 (asking the court to enjoin

DHS from detaining Lunn unless there is a significant likelihood of removal and to require DHS

to first establish in this Court, by a preponderance of the evidence, that his removal has become

reasonably foreseeable), such an injunction is prohibited by 8 U.S.C. § 1252(g) (federal courts

lack subject matter jurisdiction over "any cause or claim by or on behalf of an alien arising from

the decision or action by the Attorney General to commence proceedings, adjudicate cases, or

execute removal orders . . . ."); *see also INS v. St. Cyr*, 533 U.S. 289, 311 n.34 (2001).

Moreover, Lunn's argument that his detention for violating the terms of his OSUP

violates 8 U.S.C. § 1231, ECF No. 3, Mem. in Support at 5-10, ignores the plain language of

§ 1231(a)(6), which permits an alien subject to a final order of removal to be "detained beyond

the removal period and, if necessary, . . . subject to the terms of supervision in paragraph (3)."

Paragraph 3 states that an alien who "is not removed within the removal period . . . shall be

subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C.

§ 1231(a)(3). These provisions are set forth below:

> If the alien does not leave or is not removed within the removal period, the alien,
> pending removal, shall be subject to supervision under regulations prescribed by
> the Attorney General. The regulations shall include provisions requiring
> the alien--
> **(A)** to appear before an immigration officer periodically for identification;
> **(B)** to submit, if necessary, to a medical and psychiatric examination at the
> expense of the United States Government;
> **(C)** to give information under oath about the alien's nationality, circumstances,
> habits, associations, and activities, and other information the Attorney General
> considers appropriate; and
> **(D)** to obey reasonable written restrictions on the alien's conduct or activities that
> the Attorney General prescribes for the alien.

Lunn asserts that *Zadvydas* does not permit detention after the presumptively reasonable

period of six months if removal is no longer reasonably foreseeable. ECF No. 3, Mem. in

Support at 5-6. However, Lunn's argument ignores the plain language of § 1231(a)(6), and

contradicts the Supreme Court's explicit language in *Zadvydas*, which permits Respondents to detain him if he violates these conditions. *Zadvydas*, 533 U.S. at 695, 699-700 (allowing for incarceration for violating the OSUP conditions); *see also supra*. For instance, if an alien subject to a removal order fails to report to ICE as directed as a condition of release, ICE has no assurance that he will be available for execution of the removal order when that becomes reasonably foreseeable.

At its core, Lunn's challenge to Respondents' ability to detain him for violating his conditions of release unless his removal is reasonably foreseeable, Pet. at ¶¶ 29, 32, 35; ECF No. 3, Mem. in Support at 5-11, makes no practical sense. If ICE were unable to detain an alien for violating conditions of release unless such alien's removal were reasonably foreseeable, then those conditions of release are hollow; to wit, one could violate them indefinitely with no consequence until such time as that person is likely to be removed. Such a result would render the statutorily prescribed conditions superfluous and meaningless. Along those lines, Lunn's request that this Court "[e]njoin Respondents from re-detaining [him] without first establishing in this Court, by a preponderance of the evidence, that his removal has become reasonably foreseeable," Pet. at ¶ 40c, should be rejected, because such an injunction would render the OSUP conditions of no value. Yet, as the *Zadvydas* Court clearly stated, "[t]he choice is not between imprisonment and the alien 'living at large'[; rather,] [i]t is between imprisonment and supervision under release conditions that may not be violated." 533 U.S. at 696 (citing 8 U.S.C. §§ 1231(a)(3), 1253 (1994 ed., Supp. V), and 8 C.F.R. § 241.5 (2001) (establishing conditions of release after removal period).

Lunn argues that the regulations which permit detention of an individual who violates conditions of release in order to "effect the alien's removal . . . and to effect the conditions under

which the alien had been released," are in clear violation of *Zadvydas's* holding that detention is no longer authorized once removal is no longer reasonably foreseeable. *See* ECF No. 3, Mem. in Opp. at 9-10 (citing 8 C.F.R. § 241.13(i)(l)). However, without undue repetition, the Supreme Court in *Zadvydas* has explicitly stated that release under such conditions and re-detention for violating such conditions is permitted. While Lunn argues that *Zadvydas* only permitted such a return to custody "in the context of *criminal prosecution*, [and] not civil immigration detention as punishment for violating conditions of release," ECF No. 3, at 9-10 (emphasis in original), the *Zadvydas* Court did not so limit its holding. Indeed, the Supreme Court in *Zadvydas* was reviewing a civil immigration custody provision. Moreover, and as discussed *supra*, such a result would render the conditions a nullity and would permit an alien with a final order of removal to be "living at large", a prospect the *Zadvydas* Court rejected. 533 U.S. at 696.

Moreover, to the extent Lunn is challenging the regulations as unconstitutional because they permit ICE to re-detain Lunn when, *inter alia*, "[t]he purposes of release have been served," 8 C.F.R. § 241.4, ECF No. 17, Opposition at 5, such an argument fails.  As an initial matter, this argument was not raised in his Petition. *See generally* Pet. and ECF No 3, Mem. in Support. Notably, Lunn fails to demonstrate that the termination of his release would occur for reasons other than violations of the OSUP, which clearly delineates – Lunn's speculations aside – under what conditions ICE justifiably could re-detain him.[4] Indeed, Respondents have made it clear that absent Lunn's re-involvement with the criminal justice system, his violation of his conditions of supervision, the necessity for his presentation for an interview in pursuit of issuance of Cambodian travel documents enabling him to return to Cambodia, or the willingness

---

[4] Lunn signed the OSUP, which states "I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution." ECF No. 18, Exh. A, Order of Supervision.

of a third country to accept him, he will remain on release. *See* ECF No. 23, Reply at 4-5.
Indeed, each of the two prior times that Lunn was re-detained occurred because Lunn violated
his conditions of release. ECF No. 23-1, Piepiora Decl. at ¶¶ 6-8. Thus, any as-applied
constitutional challenge to the regulation must fail. *See Rosales-Garcia v. Holland*, 322 F.3d
386, 396-97 (11th Cir. 2003) (discussing *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir.
1991), in which the Ninth Circuit held that a Mariel Cuban's parole mooted his habeas petition
and noting that because in *Picrin-Peron*, the government stated that it would not re-detain
petitioner "[a]bsent his reinvolvement with the criminal justice system, a change in the Cuban
government enabling him to return to Cuba, or the willingness of a third country to accept him,
he will be paroled for another year, and that, in contrast, in the *Rosales* case before the Eleventh
Circuit, "[t]he government in Rosales's case, however, has made no such promise, nor has the
government made it 'absolutely clear' in any other way that potentially indefinite detention of
Rosales by the INS cannot reasonably be expected to recur). Here, like *Picrin-Peron*,
Respondents have clearly delineated under what circumstances Lunn could be re-detained:
"Lunn's re-involvement with the criminal justice system, his violations of his conditions of
supervision, the necessity for his presentation for an interview in pursuit of issuance of
Cambodian travel documents enabling him to return to Cambodia, or the willingness of a third
party to accept him. . . ." ECF No. 23, Reply at 4-5.[5]

---

[5] Cambodia is currently cooperating with the repatriation of its citizens, and removals to
Cambodia are being conducted. ECF No. 23-1, Piepiora Decl. at ¶ 10. Accordingly, travel
documents may be issued to facilitate Lunn's removal in the future. *Id.* In such a circumstance, it
may be necessary to conduct an in-person interview with the consulate for travel documents,
which would require that Lunn be taken back into ICE custody and presented before consulate
personnel. *Id.*

Finally, to the extent Lunn argues that his detention violates the Fifth Amendment's Due Process Clause because it is not reasonably related to removal and lacks basic procedural safeguards, Pet. at ¶¶ 36-38; ECF No. 3, Mem. in Support at 10-11, as discussed in our Motion to Dismiss and Reply, ECF Nos. 15-16, 23, existing regulations that provide for revocation of release for purposes of removal set out procedures by which the alien is provided notice and an opportunity to contest the revocation. 8 C.F.R. § 241.13(i)(2) and (3); 8 C.F.R. § 241.5(l)(1) and (3). The regulations provide that ICE may revoke an alien's release if there are changed circumstances and ICE determines there is now a significant likelihood of removal in the reasonably foreseeable future, 8 C.F.R. § 241.13(i)(2), or if an alien violates conditions of release, 8 C.F.R. § 241.5(l)(1). In these circumstances, the alien is notified of the revocation basis, is provided an opportunity to respond, and may submit evidence or information to respond to the reasons for revocation. 8 C.F.R. § 241.13(i)(3); 8 C.F.R. § 241.5(l)(1) and (3). ICE must comply with these regulations. Equally significant is the fact that in order to be released, Lunn agreed to the terms of his release as evidenced by his signing the OSUP in four separate locations. ECF No. 18, Exh. A Order of Supervision. Below one of his signatures, the form states that "failure to comply with the terms of this order may subject me to a fine, detention, or prosecution." *Id.* Thus, Lunn was made aware what could occur if he were to violate any of his release conditions.

## III.    LUNN'S CHALLENGE TO HIS RELEASE CONDITIONS

To the extent Lunn is challenging the actual conditions of release as laid out in the OSUP, *see* ECF No. 17, at 8 (discussing the "onerous" release conditions), such a challenge likewise fails. As an initial matter, this Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) as he has failed to exhaust his administrative remedies.

Exhaustion of available administrative remedies is a prerequisite to habeas relief. *See Kaweesa v. Ashcroft*, 345 F.Supp.2d 79, 97-98 (D. Mass. 2004). Aliens seeking to amend the conditions of their release can do so by submitting a written request to Respondents. Lunn has not alleged that he has done so. *See* ECF No. 1, Pet.; ECF No. 3, Mem. in Support; ECF No. 17, Opposition. In order to exhaust his administrative remedies, Lunn needs to seek from ICE modifications to his OSUP. *See Yusov v. Shaughnessy*, 396 F.App'x 780 (2d Cir. 2010) (unpublished) (petitioner able to request changes to his OSUP and to pursue administrative appeals of a denial). Because Lunn has not sought changes to his conditions from ICE, he has not exhausted all available administrative remedies, and the Court lacks subject matter jurisdiction over his habeas petition.

What is more, 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of the discretionary duty to revoke an OSUP, and of the very conditions of supervision, because discretionary authority for setting conditions and revocation is implicit in the grant of statutory authority for "supervised" release under "reasonable" restrictions at 8 U.S.C. § 1231(a)(3). *See Bernardo ex rel. M&K Engineering, Inc. v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016) (holding that the judicial review bar at § 1252(a)(2)(B)(ii) applied as a result of statutory terms suggesting a grant of administrative discretion). *Cf. Zadvydas*, 533 U.S. at 695 (supervised release when removal is not likely in the reasonably foreseeable future should be upon conditions "appropriate in the circumstances").

Nonetheless, even assuming *arguendo* that Lunn had exhausted his remedies and had sought modification of the conditions from ICE, courts that have considered habeas challenges to post-removal orders of supervision have given administrative authorities "wide latitude" to impose such orders. *Yusov*, 671 F.Supp.2d at 528 (citing cases). The Supreme Court has explained that the "Due Process Clause does not require [the government] to employ the least

burdensome means" in this context. *Demore v. Kim*, 538 U.S. 510, 528 (2003); *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."). Accordingly, this Court should apply rational basis review to determine the constitutionality of the conditions of supervision.  "'[L]egislation is presumed to be valid and will be sustained if the classification drawn . . . is rationally related to a legitimate state interest.'" *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 9-10 (1st Cir. 2011) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). "The challenger has the devoir of persuasion and must negate any and all conceivable bases upon which the challenged regulation might appropriately rest." *Id.* (citing *Bd. Of Trs. Of Univ. of Ala. V. Garrett*, 531 U.S. 356, 367 (2001)).

Several different statutory and regulatory sources detail the release conditions permitted under *Zadvydas* and those authorities govern Lunn's release. *See Zadvydas*, 533 U.S. at 699-700 (citing 8 U.S.C. §§ 1231(a)(3), 1253, 8 C.F.R. § 241.5). Indeed, the conditions of Lunn's supervision are envisioned by statute, either because they are included in the statute itself or because they are "reasonable" provisions pursuant to the regulations. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.4(e). Pending his removal, "the alien … shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The statute goes on to require that regulations "shall include provisions requiring the alien: (A) to appear before an immigration officer periodically for identification . . . (C) to give information  under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." *Id*. The regulations promulgated pursuant to the aforementioned statute likewise require several

conditions of release, including that the alien "continue efforts to obtain a travel document and assist the Service in obtaining a travel document" and that he obtain "advance approval of travel beyond previously specified times and distances." 8 C.F.R. § 241.13(h); *see also* 8 C.F.R. §§ 241.5(a)(2), (a)(4).

Lunn conditions are all required under the aforementioned statutes and regulations and are reasonable to Lunn's situation. In his Opposition, Lunn discusses the following conditions, "notifying ICE prior to travelling outside of Massachusetts, being subject to ICE check-ins and home visits, potentially undergoing medical and psychological evaluations, and enrolling in an alternatives to Detention program that may subject him to electronic monitoring and a curfew."[6] ECF No. 17, at 8.  However, the requirement that Lunn notify ICE in advance of travel over 48 hours is detailed in 8 C.F.R. § 241.13(h) and ensures that ICE is able to effectuate Lunn's removal at the appropriate time. The reporting requirements are required under 8 U.S.C. § 1231(a)(3)(A), and ensure that Lunn remains locatable and that his contact information is up-to-date. The requirement that Lunn provide appropriate information under oath is required under 8 U.S.C. § 1231(a)(3)(C). The requirement that Lunn not commit any crimes protects public safety and national security. The requirement to notify ICE of changes in address or employment, is required under 8 C.F.R. § 241.5(a)(5), and ensures that ICE is able to contact him to be able to effectual his removal at the appropriate time.

ICE releasing Lunn pursuant to these reasonable conditions is justified by Congress's intent to effectuate the removal or aliens and prevent them from absconding. *Demore v. Kim*, 538 U.S. 510, 528 (2003); *see also Nguyen v. B.I. Inc.*, 435 F.Supp.2d 1109, 1115 (D.Or. 2006)

---

[6] As discussed in our Reply, ECF No. 23-1, Piepiora Decl. at ¶ 9, Lunn was removed from the Alternatives to Detention Program because his homeless status made it difficult for him to charge his GPS bracelet and be contacted regularly by phone.

14

("Reducing the number of absconding aliens and protecting the community from aliens with criminal propensities are two legitimate governmental interests furthered by the ISAP program."); *Yusov*, 571 F.Supp.2d at 530 (discussing specific conditions). The restrictions detailed in the OSUP and the Release Notification are reasonable given Lunn's final order of removal and his past violations of criminal laws. Moreover, under the larger scheme of the entire INA, numerous provisions impose affirmative obligations on aliens to assist in their removal. In fact, an alien willfully failing to assist in procuring necessary travel documents can result in criminal imprisonment. 8 U.S.C. § 1253(a)(1)(B); *see also Sango-Dema v. District Director, I.N.S.*, 122 F. Supp. 2d 213, 221 (D. Mass. 2000)[7] (where alien petitioner "has refused to complete any of the applications necessary to facilitate his return to his country of origin" no arguable constitutional right to be free from indefinite detention is implicated, because "an alien cannot trigger such a right with his outright refusal to cooperate with INS officials").

## CONCLUSION

ICE's detention of Lunn for having violated his conditions of release, when his removable is not reasonably foreseeable, is lawful under 8 U.S.C. § 1231, the Due Process Clause of the Fifth Amendment, and the Supreme Court's holding in *Zadvydas*. Moreover, as Respondents have made it clear that Lunn will only be re-detained in certain articulated circumstances, any hypothetical challenge he has to the regulations must fail. Accordingly, Lunn's habeas petition should be denied.

---

[7] *Sango-Dema* predates *Zadvydas*, but was cited by *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1059 (9th Cir. 2003) (*Zadvydas* inapplicable where alien has taken steps to thwart INS' efforts for removal).

Dated: July 25, 2017                           Respectfully submitted,


CHAD A. READLER                  By:   /s/ Kathleen A. Connolly
Acting Assistant Attorney General       KATHLEEN A. CONNOLLY
Civil Division                          CT Bar 426183
                                        Senior Litigation Counsel
WILLIAM C. PEACHEY                      Department of Justice, Civil Division
Director                                Office of Immigration Litigation (OIL)
                                        District Court Section
SHEREASE PRATT                          P.O. Box 868
Senior Litigation Counsel               Washington, DC 20044
                                        Tel: (202) 305-8627
                                        Fax: (202) 307-8781
                                        Email: Kathleen.a.connolly@usdoj.gov

                                        **Attorneys for Respondent**



## CERTIFICATE OF SERVICE


        I hereby certify that a true copy of the above Response and Opposition to the Petition for
Writ of Habeas Corpus was served upon the attorney of record for each other party on July 25,
2017, through the CM/ECF for the District of Massachusetts.  All parties are registered CM/ECF
participants and were served electronically, as identified on the Notice of Electronic Filing
(NEF).

                                        /s/ Kathleen A. Connolly
                                        Kathleen A. Connolly
                                        Senior Litigation Counsel

Date:  July 25, 2017