FILED IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SREYNUON LUNN,

*Petitioner,*

v.

YOLANDA SMITH, Superintendent of Suffolk County House of Correction; STEVEN W. TOMPKINS, Sheriff of Suffolk County; SECRETARY JOHN F. KELLY, United States Secretary of Homeland Security; THOMAS D. HOMAN, Director (acting), United States Immigration and Customs Enforcement; CHRISTOPHER CRONEN, Director, United States Immigration and Customs Enforcement, Boston Field Office,

*Respondents.*

Civil Action No.

17-cv-10938-IT

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER PERMITTING REMOTE ACCESS TO ELECTRONIC COURT FILINGS PURSUANT TO FRCP 5.2(c), OR TO PERMIT THE PUBLIC TO PRINT AND/OR COPY NON-SEALED COURT RECORDS ("OPEN THE DOCKET")**

John A. Hawkinson, a freelance news reporter writing for *Cambridge Day*, respectfully submits this memorandum of law in support of his motion for an order (1) allowing the public to remotely access non-sealed electronic court filings on PACER in this case pursuant to Fed. R. Civ. P. 5.2(c); or, in the alternative, (2) permitting the public to print and/or copy non-sealed case file records made available in the courthouse.

In other words, Hawkinson seeks to "open the docket" and make docket entries in this case available to the public and press by remote access through PACER.

This case presents issues of significant concern to the residents of Commonwealth, and indeed the nation. Petitioner Lunn has drawn the attention of all of Massachusetts when

the Supreme Judicial Court ruled in his favor, concluding that honoring a civil immigration detainer constituted arrest as a matter of Massachusetts law. *Lunn v. Commonwealth*, 477 Mass. 517 (Mass. July 24, 2017), SJC-12276 (*"Lunn I"*) (moot but capable of repetition, and raising "important, recurring, and time-sensitive legal issues that would likely evade review in future cases").

The use of federal immigration detainers is of especial concern given the President's executive order sanctioning so-called "sanctuary jurisdictions" that may not comply with federal immigration detainer requests. Executive Order 13768: *Enhancing Public Safety in the Interior of the United States* (Jan. 25, 2017), 82 Fed. Reg. 8799 (Jan. 30, 2017).

Petitioner Lunn was a lawful permanent resident of the United States who was born in a Thai refugee camp of Cambodian parents, and is recognized as citizen by none of those three countries. In 2008, 2012, and 2013 the United States government attempted to deport Lunn to Cambodia, which declined to accept him. Petitioner Lunn claims that after arrest in 2016 on charges subsequently dismissed, the Government has attempted to hold him despite having no realistic possibility of removing him, but has released him subject to monitoring during the pendancy of this case; Lunn seeks an injunction barring the Government from detaining him further absent realistic possibility of removal. The Government contends the case is moot, it having released Lunn.

The dispute presents a compelling story of how immigration issues work in practice "on the ground" in the United States generally and Massachusetts in particular, the power of immigration detainers to serve as determinative instruments that change the course of people's lives, and the frequency of government actions that ultimately moot cases prior to their adjudication, reducing the likelihood of adjudication despite the frequent possibility of repetition. The nature of the dispute and political climate, heightened by petitioner's notoriety from *Lunn I*, demonstrates the public's interest in these proceedings, and that the ability of the press to gather and disseminate information about how the judicial branch resolves the dispute directly serves the First Amendment's "common core purpose of assuring

freedom of communication on matters relating to the functioning of government." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980).

On July 25, 2017, the day after the *Lunn I* was handed down, the Government filed D.E. 28, its Answer to Lunn's May 22 complaint. The entry was filed at 5:28pm, making it inaccessible in a timely fashion to even the most dedicated reporters, as the case's immigration status bars remote public access to docket filings, and access to the Clerk's public terminal stops at 5:00pm. Hawkinson resolved to go to the courthouse to review it, but didn't make it until a week later, Aug. 2, after additional materials were filed. See Declaration of John A. Hawkinson (Ex. B).

For the reasons set forth below, Hawkinson asks for the right to remotely access electronic public court records through PACER in this case (*i.e.*, court records that have not been sealed) in order to better inform himself and the public at large of how the court resolves this dispute and, depending upon the contents of the court records, make them available to the public. The current lack of remote access prevents Hawkinson and other members of the media from reporting on court filings in a timely fashion, particularly when the filings are made close to or after the hours in which the clerk's office is open to the public. In the alternative, Hawkinson seeks the right to copy and/or print unsealed court filings made available at the courthouse. *Id.*

# I. Argument

## A. This case warrants an order permitting remote access under Rule 5.2(c)

Fed. R. Civ. P. 5.2(c) provides that, "*[u]nless the court orders otherwise*, in an action ... relating to an order of removal, to relief from removal, or to immigration benefits or detention, access to an electronic file" is limited to the parties and their attorneys. (*emphasis* added). The rule further provides that "any other person may have *electronic access* to the *full record*

*at the courthouse*," but may have remote electronic access only to the docket and any opinion, order, judgment or other disposition of the court. (*emphasis* added)

The intent of Rule 5.2 is to "protect privacy and security" of documents, and subdivision (c) grants immigration cases "special treatment due to the prevalence of sensitive information and the volume of filings." See Rule 5.2 Committee Notes on Rules—2007 (attached as Ex. A). The Notes explain that the limitation on remote electronic access in immigration cases is "due to the prevalence of sensitive information and the volume of filings."[1]

The Notes also state that "nonparties can obtain *full access to the case file at the courthouse*, including access through the court's public computer terminal." (*emphasis* added)

There is no doubt that some immigration case files contain sensitive, private information (as do some social security benefit cases, to which Rule 5.2(c) also applies). In this case, petitioner's counsel has published a subset of filings of particular interest on the web: `https://aclum.org/cases-briefs/commonwealth-v-lunn/`

Disclosure of information in asylum applications, for example, "could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." *Anim v. Mukasey*, 535 F.3d 243, 253–55 (4th Cir. 2008); see also *Lin v. US Dept. of Justice*, 459 F.3d 255, 263–64 (2d Cir. 2006) (citing U.S. Citizenship and Immigration Services, *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (June 3, 2005)); *A.B.T. v. U.S. Citizenship & Immigration Servs.*, No. 2:11-cv-02108-RAJ, 2012 WL 2995064, at *5 (W.D. Wash. July 20, 2012) ("there exists a strong public interest in restricting asylum seekers' identities from the public"). Filings in this case to-date raise no such concerns — no other government will even accept Lunn, much less retaliate against him.

Were the docket open, counsel might of course request to file under seal any sensitive

[1] The issue issue of voluminous filings in immigration cases, another underlying concern of the Rule, does not appear to be relevant in this case: the docket comprises a mere 32 filings, all of which are short in length. In any event, such a concern about volume is insufficient to overcome the public's compelling interest in this particular case.

information. Indeed, because of the interest and public access at the courthouse, counsel should already be exercising a similar degree of care. The rule does not effectively protect any private information in this case's filings, it merely makes the process cumbersome for the public and press.

Furthermore, as counsel for plaintiffs is more quickly able to coordinate the release of its own filings, the effect of the rule is to make the Government's filings comparatively more difficult to access, especially in a timely fashion.

Nothing in the Rule, its Advisory Committee Notes, nor its history suggests that it was intended to protect the *Government* from public scrutiny. See generally *Panel Two: Should There Be Remote Public Access to Court Filings in Immigration Cases?*, 79 Fordham Law Review 25, 31 (2011) ("deportation can be a sort of enforcement tsunami that bears close watching, especially by lawyers, advocates, policy groups, and the press").

Even if Rule 5.2(c) established a mandatory prohibition against remote access (which it does not), the press and the public still should have the right to print and/or copy court filings at the courthouse. The Rule does not contain any language limiting the public's common law or constitutional right to inspect and copy judicial records (discussed further below and in the attached declaration). To the contrary, the Advisory Committee Notes expressly state that "nonparties can obtain *full access to the case file at the courthouse, including* access through the court's public computer terminal." Rule 5.2 Committee Notes on Rules—2007 (emphasis added). Rule 5.2(c)'s limitation on immediate, world-wide remote access to certain electronic judicial records does not reverse the historical presumptive right to inspect and copy public court records, a right that serves important public interests in a case of this magnitude. And the presence of the words "full access" and "including" suggests that other kinds of access, such as hardcopy access, are contemplated as well.

Finally, Rule 5.2(c) explicitly contemplates the Court ordering the docket opened ("Unless the court orders otherwise."). In applying Rule 5.2, courts routinely recognize the strong interest in public access to court records and balance that interest against the privacy in-

terests at stake. Here, those privacy interests are quite limited. See, e.g., *Skky, LLC v. Facebook, Inc.*, No. 16-cv-94, 2016 WL 3228175, D.E. 80 (D. Minn., June 10, 2016) (denying motion to file documents under seal under Rule 5.2 because the public right of access to documents outweighed limited privacy interests).

In an immigration case of national prominence in this same District, Judge Gorton granted a nearly identical motion (by *The Boston Globe*) to open the docket. *Louhghalam v. Trump*, No. 17-cv-10154, D.E. 49 (D. Mass, Feb. 2, 2017) ("Motion allowed" endorsement).

## B. The public has a common law right to copy Court records.

"It is clear that the courts of this country recognize a general right to inspect and *copy* public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (*emphasis* added). See also *In re Providence Journal Co.*, 293 F.3d 1, 17 (1st Cir. 2002) ("Historically, the common-law right of access permitted the public to *copy the contents of written documents.*") (citing *United States v. Myers* (*In re Application of Na'l Broad. Co.*), 635 F.2d 945, 950 (2d Cir. 1980) (*emphasis* added); *In re Globe Newspaper Co.*, 920 F.2d 88, 96 (1st Cir. 1990) ("The Supreme Court has recognized a historically based common law right to inspect and *copy* judicial records and documents.") (*emphasis* added).

This common law right of access is "no paper tiger." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). The party seeking to restrict the public's common law right bears the "heavy burden" of proving "good cause" to overcome the presumption of public accessibility. *Id.* at 412–13; see also *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). A finding of good cause must be based on a "particular factual demonstration of potential harm and not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). See also *Standard Fin. Mgmt.*, 830 F.2d at 412 ("[o]nly the most compelling reasons can justify non-disclosure of judicial records") (quoting *In re Knoxville News-Sentinel* Co., 723 F.2d 470, 476 (6th Cir.1983)) (internal quotations

omitted). Accordingly, a court "must carefully balance the competing interests that are at stake." *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1998).

"The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Standard Fin. Mgmt.*, 830 F.2d at 410. In such cases, the "threshold showing required for impoundment of the materials is correspondingly elevated," and the interests asserted in support of impoundment must be balanced against the public's "substantial stake and interest in the proceedings at bar." *Standard Fin. Mgmt.*, 830 F.2d at 412. See also *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

The D.C. Circuit gave strong affirmation to the common law right of public access early this month: "The right of public access is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch. Although the right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife, Inc. v. Fin. Stability Oversight Council, Better Markets, Inc.*, No. 16-5188, 2017 U.S. App. LEXIS 13914 at *2 (D.C. Cir., Aug. 1, 2017).

The facts here overwhelmingly favor recognition of the public's common law right to inspect *and copy* court records. The case concerns a matter of national importance involving the legality of governmental conduct in the area of immigration, interest in which is heightened at present. Even if remote electronic access is not allowed under Rule 5.2(c), the public should be allowed to exercise its common law right to copy public judicial records available at the courthouse.

## C. The public has a first amendment right to copy Court records

The United States Supreme Court has considered two complementary factors in determining whether a First Amendment right of access attaches to a judicial proceeding. The first consideration, the "experience" factor, considers whether there is a historical tradition of

openness to the proceeding at issue. See *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *Richmond Newspapers*, 448 U.S. at 589 (Brennan, J., concurring); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505–08 (1984) (*"Press-Enterprise I"*); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*"Press-Enterprise II"*). The second consideration, the "logic" factor, considers whether public access plays a positive role in the functioning of the governmental process at issue by, for example, enhancing the quality and safeguarding the integrity of the system, fostering an appearance of fairness, and permitting the public to participate in and serve as a check upon the judicial process — "an essential component in our structure of self government." *Globe*, 457 U.S. at 606 (internal citation omitted); *Press-Enterprise I*, 464 U.S. at 508–10; *Press-Enterprise II*, 478 U.S. at 8–9.

Applying these principles, the First Circuit has held that the First Amendment provides the public with a right of access to court records in criminal cases. See *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989). The basis for this right is that without access to documents the public often would not have a "full understanding" of the proceeding and therefore would not always be in a position to serve as an effective check on the system. 868 F.2d at 502. See also *In re Globe Newspaper Co.*, 729 F.2d 47, 52, 59 (1st Cir. 1984).

Application of the experience and logic factors to this case similarly compels the conclusion that the public has a First Amendment right of access to court records of immigration proceedings. "We have long recognized that deportation is a particularly severe 'penalty,'" and that, although removal proceedings are civil in nature, "deportation is nevertheless intimately related to the criminal process." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010). See generally *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984) (applying two part test of history and functioning and finding First Amendment right of access to civil trials); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (First Amendment protects public's right of access to records of civil proceedings); *Hartford Courant v. Pellegrino*, 371 F.3d 49 (2d Cir. 2004) (First Amendment provides right of access to docket sheets); *Virginia Department of State Police v. The Washington Post*,

386 F.3d 567 (4th Cir. 2004) (recognizing First Amendment right of access to investigatory police records filed in civil case).

As to the experience factor, the historical tradition of access to civil judicial proceedings and records is beyond dispute. See *Nixon*, 453 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents. ... In contrast to the English practice, American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit.") (internal citation and footnotes omitted). To paraphrase the Supreme Court, "Whether the First Amendment right of access to [civil judicial records] can be restricted in the context of any particular [civil case] depends not on the historical openness of that type of [civil case] but rather on the state interests assertedly supporting the restriction." *Globe Newspaper*, 457 U.S. at 605 n.13. See also *In re Boston Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003) (court was "unpersuaded" that both the "history" and "logic" factors must be met for First Amendment right of access to apply). The constitutional right of access to records of civil proceedings similarly applies in full force to this case.

In addition to the "favorable judgment of experience," access to the records of civil cases unquestionably plays a positive role in the functioning of the judicial process, the second factor to be considered in determining whether the First Amendment right of access applies. *Globe*, 457 U.S. at 605 (citation and internal quotation omitted). As the Supreme Court has stated, "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n. 15 (1979).

Public access to court documents in civil cases "allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'" *Standard Fin. Mgmt.*, 830 F.2d at 410. See also *Publicker*, 733 F.2d at 1070 ("Public access to civil trials, no less than criminal trials, plays an important role in the participation and the free discussion of governmental affairs."). "Although courts have a number of internal

checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. ... Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honest of judicial proceedings." *Amodeo*, 71 F.3d at 1048.

Recognition of the public's constitutional right of access to court records does not mean that the public never may be denied access to any portion of any record under any circumstances whatsoever. It does mean, however, that the barriers to impoundment are extraordinarily high.

First, "[w]here ... the state attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest." *Globe Newspaper*, 457 U.S. at 506–507; *Press-Enterprise II*, 478 U.S. at 13–14; *Pokaski*, 868 F.2d at 505. In addition, any sealing order must be "narrowly tailored to serve that interest." *Id.*

The First Amendment also requires that any docket restrictions must effectively serve the interest asserted by the proponents of closure. *Press-Enterprise II*, 478 U.S. at 13–14 (restriction on public access must be "essential" to prevent harm "that closure would prevent"); *Globe Newspaper*, 457 U.S. at 607 n.19, 610 (assessing effectiveness of closure order in protecting juvenile rape victims required distinguishing injury caused by testifying in general from incremental injury caused by testifying in the presence of the press); *Pokaski*, 868 F.2d at 505 ("the means chosen by the state must effectively promote the statute's objectives").

Finally, in those rare circumstances where access to a judicial record may be limited, the justification for the restriction must be articulated in specific findings made by the trial court sufficient to enable appellate review. *Richmond Newspapers*, 448 U.S. at 581; *Press-Enterprise II*, 478 U.S. at 13–14.

Hawkinson respectfully submits that, on the facts of this case, the public's First Amendment right to inspect and copy the court records overcomes any asserted competing interest,

regardless of whether remote electronic access under Rule 5.2(c) is permitted.

### D. Exception to opening the docket

Hawkinson has reviewed the filings in this case and notes that page 4 of docket entry 18 (Petitioner Lunn's *Memorandum in Opposition to Motion to Dismiss*, Exhibit A) is the back page of an I-220-B form and contains Petitioner's photograph and a single fingerprint.

On that basis, Hawkinson omits D.E. 18 from his request to open the docket until such time as petitioner may file a redacted copy for public access and a motion to seal the original.

### E. Certification of conference per Local Rule 7.1(a)(2)

Hawkinson has conferred with attorneys for Petitioner Sreynuon Lunn. Petitioner's attorneys represent they intend to move to seal certain docket entries in the case by Aug. 14, and assent to this motion provided those documents are in fact sealed. Petitioners anticipate filing redacted versions of sealed documents.

Counsel for Respondents declined to confer with Hawkinson pursuant to Local Rule 7.1(a)(2), but wrote through its public affairs office that it neither opposes nor assents, but rather "we defer to the Court."

## II. Conclusion

For the foregoing reasons, Hawkinson requests that the court enter an order (1) allowing the public to remotely access non-sealed electronic court filings on PACER in this case pursuant to Fed. R. Civ. P. 5.2(c); or, in the alternative, (2) permitting the public to print and/or copy non-sealed case file records made available in the courthouse. Both with the exception of D.E. 18.

(pending) **INTERVENOR**,
**JOHN A. HAWKINSON**, pro se

11 Aug 2017

John A. Hawkinson
Box 397103
Cambridge, MA 02139-7103
617-797-0250
*jhawk@MIT.EDU*

Dated: August 11, 2017