## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SREYNUON LUNN,<br>　　　　　　Petitioner,<br>　　v.<br><br>YOLANDA SMITH, Superintendent of<br>Suffolk County House of Correction,<br>*et al.*,<br>　　　　　　Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 17-cv-10938-IT

## PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO QUASH DISCOVERY

Petitioner Sreynuon Lunn petitioned this Court for a writ of habeas corpus on May 22, 2017, challenging his detention and seeking to enjoin further unlawful custody. ECF No. 1. Since then, Respondents have submitted five declarations regarding Mr. Lunn's past detentions, his most recent immigration custody, repatriation discussions with Cambodia, and the government's present intent to detain him. ECF Nos. 16-1, 23-1, 28-1, 56-1, 59-1. During the two-month discovery period agreed-to by the parties, Mr. Lunn made a single, narrow request for responses to 16 interrogatories. These interrogatories seek information about the underpinnings of factual assertions made in Respondents' own declarations, foreseeability of Mr. Lunn's removal, the circumstances of his own prior detentions, and about the potential grounds for future custody. Because Mr. Lunn's interrogatories seek factual development of issues central to this case, this Court should deny Respondents' motion and require Respondents to respond to the Interrogatories.

## BACKGROUND

Petitioner Sreynuon Lunn filed his petition for writ of habeas corpus on May 22, 2017. *See* ECF No. 1. The petition alleged a pattern of past detentions, relying on a declaration by Mr. Lunn

that was based upon his best recollection of the periods of time during which he had previously been detained by immigration authorities.  Declaration of Shivan Sarin ("Sarin Decl.") ¶ 4; *see also* ECF No. 5.

Respondents moved to dismiss on May 29, 2017, providing a declaration by Acting Assistant Field Office Director Jennifer McGrath-Boyle indicating that Mr. Lunn had been released from Immigration and Customs Enforcement ("ICE") custody.  ECF No. 16-1. An additional declaration, this time by Deportation Officer Robert Piepiora, was attached to Respondents' reply brief.  ECF No. 23-1.  It provided an account of the dates and circumstances of Mr. Lunn's prior detentions and releases from ICE custody, and discussed Cambodia's cooperation with the repatriation of its citizens.  *Id.*

Petitioner's counsel had access to few records regarding his detention.  Sarin Decl. ¶ 5. Thus, at a hearing on the motion to dismiss, Petitioner's counsel was forced to guess at the regulatory basis for Mr. Lunn's most recent release from custody. *See* ECF No. 29 at 16–17.

On July 11, 2017, this Court denied Respondents' Motion to Dismiss the Petition.  ECF No. 26.  Respondents responded to the petition on July 25, 2017.  ECF No. 28.  The response included a declaration by Acting Assistant Field Office Director Mark Gentile, providing the dates of Mr. Lunn's initial arrest that were previously erroneously reported in the Piepiora Declaration. ECF 28-1.

On July 28, 2017, noting the challenge of litigating this matter without documents establishing the facts surrounding his prior detentions, Mr. Lunn's counsel requested documents regarding Mr. Lunn's past immigration detentions and communications between the United States and Cambodian government officials regarding his removal.  *See* Sarin Decl., Ex. A, Letter from Kim B. Nemirow to Kathleen A. Connolly.  Counsel stated their intention to "seek Court-ordered

discovery compelling the production" of the requested documents if the government did not provide them. *Id.*

On August 8, 2017, Petitioner moved to stay further briefing in light of Respondents' agreement to produce records. ECF No. 31. The motion noted Respondents' position that discovery was "inappropriate and/or premature" and that documents were being produced merely "as a courtesy and in the interests of furthering the efficient progress of this case." ECF No. 31 at 2.

Respondents made a production of responsive documents on September 7, 2017. Following negotiation and entry of a protective order, ECF No. 52, Respondents made additional productions of documents and privilege logs on September 28, 2017, October 2, 2017, October 4, 2017, and October 17, 2017. Sarin Decl. ¶ 3.

On October 14, 2017, following Mr. Lunn's arrest on state charges, Respondents gave the Court notice of its intent to redetain Mr. Lunn upon his release from state custody and potentially transfer him to California. ECF No. 56. The notice included a declaration by Assistant Field Office Director Immaculata Guarna-Armstrong addressing Mr. Lunn's state charges and ICE's intention to detain him and transport him to a "verification interview" with Cambodian officials. ECF No. 56-1. The Court ruled that Respondents shall not remove Mr. Lunn from Massachusetts absent further court order. ECF No. 57.

On October 19, 2017, Respondents filed a motion to reconsider and submitted an affidavit by the Deputy Assistant Director of ICE's Removal Management Division (East) John A. Schultz, Jr., providing information about recent discussions with the Cambodian government, including the successful repatriation of 28 individuals between March and May 2017, the availability of new "verification interviews" in October and November 2017, and the expectation that travel

documents would be issued within 30 days for approved individuals. ECF No. 59-1 at ¶¶ 5–11. Although the affidavit acknowledged that Cambodian officials had *never* communicated with the United States about Mr. Lunn, it asserted that Mr. Lunn fell within the parameters of a memorandum of understanding between the two countries and concluded that Mr. Lunn's removal "is significantly likely in the reasonably foreseeable future."   ECF No. 59-1 at ¶¶ 4–6, 11. Respondents have never disavowed that contention.   In response to Respondents' motion, the Court issued a revised order on October 27, 2017, allowing United States Immigration and Customs Enforcement ("ICE") to take custody of Mr. Lunn and transport him out of Massachusetts if it has a good faith belief that Mr. Lunn will be interviewed by Cambodia.  ECF No. 66.

Meanwhile, the parties submitted a joint proposed schedule on October 18, 2017, *see* ECF No. 58.  The schedule provided for a two-month discovery period, to conclude on December 15, 2017.  ECF No. 58 at ¶ 1.a.  The Court adopted that schedule on October 23, 2017.  ECF No. 60.

Mr. Lunn made a single discovery request during this agreed-upon discovery period. Specifically, on November 10, 2017, Mr. Lunn served his First Set of Interrogatories on Respondents, which narrowly focused on the likelihood of Mr. Lunn's removal from the United States.  ECF No. 71-1.  The government moved to quash this discovery request on December 5, 2017, agreeing only to provide information in response to Interrogatory No. 13, regarding the regulatory basis for Mr. Lunn's prior detentions and releases, and only as to his most recent release in May 2017.  ECF No. 71 at 5 & n.4.

**ARGUMENT**

## I.  THERE IS NO REQUIREMENT THAT MR. LUNN SEEK LEAVE OF COURT TO PROPOUND DISCOVERY REQUESTS DURING THE AGREED-TO DISCOVERY PERIOD IN THIS CASE.

No rule required Mr. Lunn to seek leave of court to conduct discovery in a 28 U.S.C. § 2241 action after the denial of Respondents' motion to dismiss and during a two-month discovery period agreed-to by the parties.  Petitioners who challenge their state or federal *criminal* custody under 28 U.S.C. §§ 2254 and 2255, respectively, are required to seek leave of court before promulgating discovery, *see* Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules"), but no separate requirement exists in § 2241 cases.[1]  And while district courts have discretion to apply the 2254 Rules to § 2241 cases,[2] the mechanical application of those rules to this case would make little sense for two reasons.

First, unlike § 2254 and § 2255 petitioners, Mr. Lunn lacks an underlying record on which he can rely.  Discovery, whether formal or informal, is thus the only means for him to obtain access to any documentary evidence regarding his custody.

Second, it would be inappropriate to require Mr. Lunn to seek leave in this case where he believed, in good faith, that Respondents would respond to the Interrogatories.  While Respondents had previously objected to discovery as "inappropriate and/or premature," *see* ECF No. 31 at ¶ 5, Respondents did ultimately negotiate a protective order, produce documents responsive to Mr.

---

[1] If this Court finds § 2246 governs discovery, the Court should allow Mr. Lunn's interrogatories in response to Respondents' affidavits.  *See* 28 U.S.C. § 2246 ("If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants . . . .").

[2] 2254 Rules, Rule 1(b) ("The district court *may* apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)") (emphasis added); *Dillon v. Grondolsky*, C.A. No. 12-40082-TSH, 2012 WL 3139001, at *4 (D. Mass. July 31, 2012) ("[T]he rules governing Section 2254 cases may be applied at the discretion of the district court to other habeas petitions.").

5

Lunn's requests, negotiate regarding the disclosure of information potentially subject to the deliberative process privilege, and later agree to the Joint Submission of Case Schedule, which set a two-month "deadline for completing fact discovery." ECF No. 58.[3]

## II.    THERE IS GOOD CAUSE TO PERMIT DISCOVERY.

The Court should allow Mr. Lunn to propound the Interrogatories. Should the Court, in its discretion, apply the 2254 Rules, those rules allow courts to authorize discovery under the Federal Rules of Civil Procedure for "good cause."[4] *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). To find good cause, this Court must identify the "essential elements" of Mr. Lunn's claims and determine whether Mr. Lunn's discovery requests satisfy the elements of those claims. *Id.* at 904– 05. If Mr. Lunn makes "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . it is the duty of [this Court] to provide the necessary facilities and procedures for an adequate inquiry." *United States v. Djokich*, No. CR 08-10346-MLW, 2016 WL 927145, at *3 (D. Mass. Mar. 7, 2016); *see also Bracy*, 520 U.S. at 905–10 (quoting *Harris*, 394 U.S. at 300). [5]

---

[3] Mr. Lunn expects that he will seek modification of the Joint Submission of Case Schedule given the delay in the completion of discovery that might attend resolution of the motion. This will include a modification to the close of discovery and the summary judgment dates.

[4] If the Court were not to apply the 2254 Rules, the general standard set forth in *Harris v. Nelson*, 394 U.S. 286 (1969) before the promulgation of the 2254 Rules, would govern, specifically that a district court "may use or authorize the use of . . . interrogatories . . . reasonably fashioned to elicit facts necessary to help the court dispose of the matter as law and justice require." *Id.* at 1086. If Mr. Lunn's request satisfies the 2254 Rules standard, it would also satisfy *Harris.*

[5] Respondents state Mr. Lunn's burden incorrectly. *See* ECF No. 71 at 6 ("Lunn has not and cannot demonstrate that the information he seeks in his interrogatories would demonstrate that he is entitled to relief."). Rather, the 2254 Rules require Mr. Lunn present "a *plausible theory* to warrant discovery." *Djokich*, 2016 WL 927145, at *4 (D. Mass March 7, 2016) (emphasis added) (finding good cause for petitioner to discover original tape recordings where petitioner alleged evidence of tampering on copies of recordings).

A.   Interrogatories Nos. 1–12 Request Information Concerning the Schultz
     Declaration and the Foreseeability of Mr. Lunn's Removal.

Interrogatories Nos. 1–12 request the basis for the declarant's opinion and information undergirding declarant's statements regarding, inter alia, communications between the United States and Cambodia about Mr. Lunn,[6] and the circumstances in which Cambodia issues travel documents.  Respondents submitted a declaration in which ICE Deputy Assistant Director John A. Schultz, Jr. declared that it was his "opinion that Lunn's removal is significantly likely in the reasonably foreseeable future."   Schultz Declaration, ECF No. 59-1 at ¶ 6.  This declaration followed an earlier declaration by Deportation Officer Robert Piepiora that Cambodia is "currently cooperating with the repatriation of their citizens and that removals to Cambodia are being conducted; consequently a travel document may be issued to facilitate LUNN's removal in the future."  Piepiora Declaration, ECF 23-1 at ¶ 10.

While the Schultz Declaration details the number of Cambodian nationals issued travel documents and removed, Respondents are relying on this fact without providing any context on the number of people interviewed, the number of candidates for interview, whether future interviews are scheduled, and the similarities, or lack thereof, of those cases with Mr. Lunn's case.  ECF No. 59-1 at ¶ 10.  Similarly, the Schultz Affidavit states that Mr. Lunn "falls within the

---

[6] Respondents are incorrect that 8 U.S.C. § 1252(g) bars inquiry into "diplomatic discussions." ECF No. 71 at 5.  Section 1252(g) does not apply here, as it only divests courts of jurisdiction to hear a cause or claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g).  Respondents' broad reading of § 1252(g) has already been considered and rejected by the Supreme Court.  *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (expressly rejecting the view that § 1252(g) is "a shorthand way of referring to all claims arising from deportation proceedings"); *see also Lopez-Reyes v. Gonzales*, 496 F. 3d 20, 22 (1st Cir. 2007).

parameters of those eligible for removal within the current MOU" but does not provide criteria

which makes removal more or less likely. *Id.* at ¶ 8. The Interrogatories are designed to test the

controverted facts and conclusions set forth in this declaration as well as to develop the record

regarding knowledge by ICE officials that Mr. Lunn could not be removed to Cambodia. *See*

Emergency Motion for Habeas Corpus Discovery at 6, *Doan v. Bergeron*, No. 15-cv-11725, ECF

No. 75 (D. Mass. Oct. 26, 2015) (arguing for discovery where ICE had already expanded the record

by submitting records and an affidavit, which without further discovery resulted in a record that

was incomplete and potentially misleading); *Doan v. Bergeron*, Order, No. 15-cv-11725, ECF No.

109 (D. Mass. Dec. 3, 2015) (Talwani, J.) (granting Emergency Motion and permitting discovery).

     B.     <u>Interrogatories Nos. 4 and 13–15 Request Information Concerning ICE's Past Detentions of Mr. Lunn and the Policies and Practices that Will Impact ICE's Intended Future Detention of Mr. Lunn.</u>

Interrogatories Nos. 4 and 13–15 request information about DHS's knowledge regarding

the likelihood of Mr. Lunn's removal following issuance of the final order of removal, the basis

for Mr. Lunn's prior detentions and releases, and ICE's policies and practices regarding detention

for Order of Supervision ("OSUP") violations. Mr. Lunn seeks an injunction prohibiting

Respondents from re-detaining him without first establishing in this Court that his removal has

become reasonably foreseeable. *See* ECF No. 1 at ¶ 40. Mr. Lunn seeks this relief because DHS's

pattern of re-detaining him in the face of Cambodia's repeated refusals to accept him indicates that

DHS is likely to continue this pattern of unlawful detentions. *See* ECF No. 3 at 5; *Zadvydas v.

Davis*, 533 U.S. 678, 701 (2001) (finding that detention pursuant to 8 U.S.C. § 1231(a)(6) is

authorized only if there is a "significant likelihood of removal in the reasonably foreseeable

future").

     Central to Mr. Lunn's Petition, then, are the factual circumstances surrounding each

decision by DHS to detain and release Mr. Lunn, which Mr. Lunn believes will show that these detentions were unlawful.  Indeed, documents already produced by Respondents indicate that DHS's own internal file on Mr. Lunn noted that Cambodia's refusal to issue a travel document prevented his removal; DHS appears to have unlawfully detained Mr. Lunn with full knowledge that there was no significant likelihood of removal in the reasonably foreseeable future, violating *Zadvydas*.  *See Zadvydas*, 533 U.S. at 699; Sarin Decl., Ex. B, Bates 105–107.  DHS's unlawful detention of Mr. Lunn is enough "reason to believe" that Mr. Lunn may be able to demonstrate he is entitled to relief designed to prevent another unlawful detention, *see Djokich*, 2016 WL 927145, at *3–4 (deciding that a "reason to believe" does not require definitive proof; rather, a "plausible theory is sufficient to warrant discovery"), and these Interrogatories seek information on precisely this issue.  *See* Emergency Motion for Habeas Corpus Discovery at 6, *Doan v. Bergeron*, No. 15-cv-11725, ECF No. 75 (D. Mass. Oct. 26, 2015) (arguing that there was good cause for discovery where discovery addressed issues central to petitioner's habeas claim); *Doan v. Bergeron*, Order, No. 15-cv-11725, ECF No. 109 (D. Mass. Dec. 3, 2015) (Talwani, J.) (granting Emergency Motion and permitting discovery).

Respondents attempt to characterize this dispute as a "purely legal" one that hinges entirely on the question of whether "ICE has the authority to re-detain Lunn for violating his OSUP or it does not."  ECF No. 71 at 3.  But Respondents then state that ICE will re-detain Mr. Lunn not only for violation of his OSUP, but also for "re-involvement in the criminal justice system," (a vague standard that does not necessarily require an OSUP violation), for "purposes of removal," and "to reestablish conduct [sic]."  ECF No. 71 at 6.  These conflicting purported grounds for detention highlight the necessity of discovery to nail down the regulatory scheme pursuant to which Respondents have been detaining and releasing Mr. Lunn; namely, whether Respondents have

been operating under 8 C.F.R § 241.13 or § 241.4.[7]  *See Doan*, Order, No. 15-cv-11725, ECF No.

109.  Indeed, the documents produced to date shed some light on the procedures ICE followed

regarding Mr. Lunn's detentions and releases and thus under which regulation ICE may have been

operating.  Interrogatory No. 13 explicitly seeks this information.

      C.      <u>Interrogatory No. 16 Requests Affirmation that Respondents Have Not Withheld Documentation.</u>

Finally, Interrogatory No. 16 asks Respondents for affirmation that they did not withhold

any non-privileged documents responsive to Mr. Lunn's requests for production, a typical inquiry

that that aids litigants in evaluating the completeness of the factual record and the validity of any

basis for withholding documents.  Respondents object to this Interrogatory on grounds that

discovery is not appropriate, ECF No. 71 at 6, but, having already produced documents,

Respondents will be unfairly advantaged if Mr. Lunn is kept in the dark about the existence of

other responsive documents.

## III.  IF THE COURT CONCLUDES LEAVE OF COURT IS REQUIRED, THE COURT SHOULD GRANT LEAVE.

As the foregoing demonstrates, leave is not required for Mr. Lunn to propound the

Interrogatories.  Should the Court disagree, however, the Court should grant leave for the reasons

stated above.

---

[7] Only in Respondents' most recent filing did they provide the regulation they purport governed Mr. Lunn's May 2017 release.  *See* ECF No. 29 at 5–6 ("The Court: Was that release pursuant to 241.13 or 241.4?  Ms. Connolly: Your Honor, I don't know specifically . . . under which regulatory authority that release was."); ECF No. 71 at 5 n. 4 ("Lunn's release from ICE custody in May 2017 was governed by 8 C.F.R. § 241.4.").

Dated:  December 15, 2017                    Respectfully submitted,

                                             By: */s/  Christopher G. Green*
                                                 Christopher G. Green (BBO # 643202)
                                                 Shivan Sarin (BBO # 694197)
                                                 Ropes & Gray LLP
                                                 800 Boylston Street
                                                 Prudential Tower
                                                 Boston, MA 02199
                                                 (617) 951-7000
                                                 Christopher.Green@ropesgray.com
                                                 Shivan.Sarin@ropesgray.com

                                                 Matthew R. Segal (BBO # 654489)
                                                 Laura Rótolo (BBO # 665247)
                                                 Adriana Lafaille (BBO # 680210)
                                                 American Civil Liberties Union
                                                 Foundation of Massachusetts
                                                 211 Congress Street, Suite 301
                                                 Boston, MA 02110
                                                 (617) 482-3170
                                                 msegal@aclum.org
                                                 lrotolo@aclum.org
                                                 alafaille@aclum.org

                                                 Laura Murray-Tjan (BBO # 649609)
                                                 Federal Immigration Appeals Project,
                                                 PLLC
                                                 Six Beacon Street, Suite 900
                                                 Boston, MA 02108
                                                 (617) 580-1717
                                                 laura@fiapboston.com

                                                 *Attorneys for Petitioner Sreynuon Lunn*

**CERTIFICATE OF SERVICE**

I, Christopher G. Green, hereby certify that, on December 15, 2017, the foregoing document was filed through the Electronic Court Filing system and a copy thereof will be sent electronically to the registered recipients and counsel of record as identified on the Notice of Electronic Filing.

Dated: December 15, 2017

/s/ Christopher G. Green
Christopher G. Green