UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SREYNUON LUNN,<br><br>        Petitioner,<br>   v.<br><br>YOLANDA SMITH, Superintendent of Suffolk County House of Correction, *et al.*,<br>        Respondents. | )<br>)<br>)<br>)  Civil Action No. 17-cv-10938-IT<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF PETITIONER SREYNUON LUNN'S MOTION TO COMPEL ANSWERS TO PETITIONER'S FIRST SET OF INTERROGATORIES**

Petitioner Sreynuon Lunn hereby submits this memorandum in support of his motion, pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37.1, for an order compelling Respondents to answer Petitioner's First Set of Interrogatories (the "Interrogatories") Nos. 5, 6, 7, 13, and 15.

**I.    NATURE OF THE CASE AND RELEVANT FACTS**

Petitioner Sreynuon Lunn filed a Petition for Writ of Habeas Corpus on May 22, 2017. *See* ECF No. 1. The Petition alleges that the federal government unlawfully held Mr. Lunn in immigration detention and seeks to enjoin further detentions absent a determination by this Court that his removal has become significantly likely in the reasonably foreseeable future. *Id.* at 1–2; *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

At the outset of this litigation, counsel for Mr. Lunn had access to few records regarding his immigration detentions. *See* ECF No. 74 at 2. Accordingly, when this Court inquired at a June 22, 2017 hearing whether Petitioner's release from detention had been "pursuant to [8 C.F.R. §] 241.13 or 241.4," the parties were unable to answer the Court's question. *See* ECF No. 29 at 5–6,

and 16–17. Petitioner continues to seek this information today.

On November 10, 2017, Mr. Lunn served the Interrogatories on Respondents, seeking, *inter alia*, facts relevant to the likelihood of Mr. Lunn's removal from the United States and the regulatory basis for his detentions and releases from immigration custody. ECF No. 71-1. Respondents moved to quash this discovery request on December 5, 2017. ECF No. 71. The Court denied Respondents' motion on January 22, 2018, deciding that the Interrogatories, if "limited in time from the date of the detention that led to this Petition to the present, bear on whether Petitioner is entitled to relief, and good cause exists for such interrogatories so cabined." ECF No. 79 at 3. Among other things, the Court recognized that:

> "[I]nformation regarding the standards and/or methods the Government of Cambodia has used to verify nationality, since the time of Petitioner's detention that led to this Petition, is relevant. Finally, information regarding ICE's rationale for its previous decisions to detain and then release him, and the policies and procedures it has applied or will apply, if any, to detention of Petitioner, is relevant . . . ."

*Id.* Petitioner has been unable to secure responsive answers to precisely these questions.

Respondents served their Response to Petitioner Sreynuon Lunn's First Set of Interrogatories (the "First Response") on February 21, 2018, attached hereto as Exhibit G. On February 26, 2018, counsel for Mr. Lunn sent Respondents a letter identifying deficiencies in the First Response. The parties met and conferred by telephone to discuss these issues on March 1, 2018.[1] Respondents served their First Supplemental Responses to the Interrogatories on March 5, 2018, followed by their Second Supplemental Response to the Interrogatories (the "Second Supplemental Response") on March 13, 2018, attached hereto as Exhibit A. The two sets of

---

[1] The March 1, 2018 meet-and-confer was conducted via telephone at approximately 10 a.m. EST and lasted approximately 15 minutes. Attorneys Adriana Lafaille, Laura Murray-Tjan, Jennifer Walker, Christopher Boots, and Vito Iaia were present for Petitioner. Attorneys Kathleen Connolly, Lindsay Vick, and Stephen Platt were present for Respondents.

supplemental responses resolved certain of the issues raised by counsel for Mr. Lunn and discussed in the meet and confer.

On March 14, 2018, counsel for Mr. Lunn sent Respondents another letter addressing the remaining deficiencies in the Second Supplemental Response. The parties met and conferred by telephone to discuss these issues on March 16, 2018.[2] Later that same day, counsel for Respondents sent a letter to counsel for Mr. Lunn regarding these issues, as well as Respondents' Third Supplemental Response to Interrogatory Nos. 6 and 7 of Petitioner Sreynuon Lunn's First Set of Interrogatories (the "Third Supplemental Response"), attached hereto as Exhibit B. Counsel for Mr. Lunn responded via email on March 19, 2018 to reiterate that Respondents had not fully responded to the Interrogatories.

## II.   ISSUES TO BE DECIDED BY THE COURT

Respondents have failed to provide adequate answers to five Interrogatories, despite this Court's order that good cause exists for these Interrogatories. The Interrogatories and responses at issue are set forth below, along with Petitioner's explanation of the deficiencies.[3]

**Interrogatory No. 6: For each of the following factors, state whether it is Your experience that this factor has, since 2002, influenced the likelihood of removal to Cambodia, and, if so, state the nature of that influence: 1) criminal history; 2) birth outside of Cambodia; 3) length of residence in the United States; 4) lack of prior residences in Cambodia; 5) lack of family members in Cambodia; 6) mental health; 7) physical health.**

**Respondents' Objection to Interrogatory No. 6: Respondents object to Interrogatory No. 6 as beyond the temporal scope of Petitioner's First Set of Interrogatories as limited by the Court's January 22, 2018 Order. While the Court indicated in its Order that ICE's rationale for previous decisions to detain and release the Petitioner was relevant, the Court explicitly decided that the Petitioner's First Set of Interrogatories are "limited in time from**

---

[2] The March 16, 2018 meet-and-confer was conducted via telephone at approximately 1:30 p.m. EDT and lasted approximately 10 minutes. Attorneys Adriana Lafaille, Laura Murray-Tjan, Jennifer Walker, Vito Iaia, and Will Schoenfeld were present for Petitioner. Attorneys Kathleen Connolly, Lindsay Vick, and Stephen Platt were present for Respondents.
[3] Petitioner's Interrogatories were propounded prior to the Court's ruling that the Interrogatories should be limited in time from Petitioner's 2017 detention to the present. Accordingly, although this temporal limitation does not appear in the text of the Interrogatories, Petitioner does not seek to compel answers from Respondents outside the date range previously set by the Court.

the date of the detention that led to this Petition to the present." The date of detention that led to the Petition in this case is February 6, 2017. Therefore, Respondents object to any inquiry that requires an answer relating to events or decisions prior to February 6, 2017.[4]

Furthermore, Defendants object to Interrogatory No. 6 on the basis of Law Enforcement Privilege to the extent that the Interrogatory seeks information concerning how certain factors influence the likelihood of removal. However, with respect to criminal history that is a matter of public record, when ICE executes an individuals' removal order, ICE provides the foreign government with public records concerning the individual's criminal conviction that led to his or her removal, if applicable.[5]

<u>Respondent ICE's Response to Interrogatory No. 6</u>: Respondent ICE objects to Interrogatory No. 6 on the basis of Law Enforcement Privilege to the extent that the Interrogatory seeks information concerning how certain factors influence ICE's likelihood of removing an alien to Cambodia.

To the extent Petitioner is inquiring about ICE's experience, in ICE's experience, the factors listed in Interrogatory No. 6 might influence the likelihood of removal to Cambodia in any individual case; however, each removal varies in terms of which factors may or may not be present. Similarly, because removals are considered on a case by case basis, the weight accorded to any specific factor varies.

To the extent that Interrogatory No. 6 requests information as to how the above-referenced factors influence the Government of Cambodia's decision to accept an individual for repatriation, Respondent ICE cannot answer on behalf of a third party not a party to this litigation.[6]

<u>Respondent DHS's Response to Interrogatory No. 6</u>: To the extent that Interrogatory No. 6 requests information as to how the above-referenced factors influence the Government of Cambodia's decision to accept an individual for repatriation, Respondent DHS cannot answer on behalf of a third party not a party to this litigation.

Notwithstanding the fact that the Government of Cambodia is not a party to this litigation, Respondent DHS has no knowledge about how the Government of Cambodia weighs certain factors during its decision to repatriate an individual.[7]

ICE's Response to Interrogatory No. 6 fails to answer the Interrogatory. As an initial matter, it is not clear what information, if any, ICE is withholding on the basis of the law enforcement privilege. If ICE is withholding information on this basis, ICE should be compelled

---

[4] Exhibit B at 2.
[5] Exhibit G at 5.
[6] Exhibit B at 2–3.
[7] Exhibit A at 7.

to respond, as the privilege does not apply here.  The First Circuit recognizes a qualified privilege to protect "law enforcement techniques and procedures," out of concern for "future criminal investigations."  *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62–64 (1st Cir. 2007).  Because the privilege is not absolute, invocation is proper only if "the federal government's interest in preserving the confidentiality of sensitive law enforcement techniques [outweighs] the requesting party's interest in disclosure." *Id*. at 64.  ICE must demonstrate specific grounds for asserting the privilege; the Response's "blanket assertions" and "[g]eneral claims of harm are insufficient." *Shea v. Porter*, No. CV 1:08-12148-FDS, 2013 WL 12318557, at *5 (D. Mass. Apr. 9, 2013).  Furthermore, ICE did not follow the procedure typically required to assert the privilege. *See, e.g.*, *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135–36 (D.C. Cir. 2000) (requiring, to ensure assertion of the privilege "in a deliberate, considered, and reasonably specific manner," that the agency or department head (or, in some cases, another official of sufficient rank) make a detailed assertion of the privilege based on actual consideration by that official (citation omitted)).

Interrogatory No. 6 does not seek confidential, sensitive law enforcement techniques or surveillance information.  The interrogatory is constrained to a request for disclosure of the way in which specific factors have influenced removal to Cambodia, and does not request any detail or discussion of ICE's procedures or techniques regarding gathering and analyzing these factors. *See*, *e.g.*, *Starkey v. Birritteri*, 2013 WL 3984599, at *2 (D. Mass. Aug. 2, 2013) (deciding that not even the "police reports and similar information [at issue] . . . expose[d] any confidential law enforcement techniques or procedures").

Even if ICE's response would reveal sensitive techniques, Mr. Lunn's interest in disclosure outweighs ICE's interest in keeping this information confidential.  The interrogatory

is calculated to elicit information that bears directly on the likelihood of Mr. Lunn's removal (and Respondents' knowledge of this likelihood), a fundamental, contested issue in this case. *See id.* (deciding that movant's interest in disclosure of materials central to the case was "particularly strong").

ICE's Response to Interrogatory No. 6 is also evasive and incomplete. Interrogatory No. 6 calls specifically for Respondents to "state the nature of [each factor's] influence." However, ICE's Response to Interrogatory No. 6 states only that these factors "might influence the likelihood of removal to Cambodia" and "the weight accorded to any specific factor varies," failing to specify even whether the presence or absence of each factor makes removal to Cambodia more or less likely, let alone the "weight accorded to any specific factor," and the circumstances that cause that weight to vary. ICE should be compelled to provide a responsive answer that fully states the nature of each factor's influence; Mr. Lunn is "entitled to a complete and non-evasive response." *Guarriello v. Family Endowment Partners, LP*, No. 14-cv-13351-IT, 2015 WL 12953233, at *2 (D. Mass. Dec. 21, 2015) (Talwani, J.); *see* Fed. R. Civ. P. 33(b)(3) ("each interrogatory must, to the extent it is not objected to, be answered separately and **fully**" (emphasis added)); Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

Furthermore, ICE's Response to Interrogatory No. 6 contradicts ICE's stated position in other litigation. Interrogatory No. 6 inquired whether certain characteristics would influence an individual's likelihood of removal to Cambodia – that is, whether those characteristics might make Cambodia more or less likely to accept the repatriation of an individual recognized as a citizen, and whether those characteristics might make the Government of Cambodia more or less

likely to recognize an individual as a citizen in the first place.  Counsel for Mr. Lunn stated exactly this to Respondents' counsel.  Letter from J. Walker to K. Connolly at 2–3 (Mar. 14, 2018), attached hereto as Exhibit C.  In a January 10, 2018 declaration submitted in *Chhoeun v. Marin*, 8:17-cv-01898-CJC-GJS (C.D. Cal.), Deputy Assistant Director of the Removal Management Division-East John A. Shultz, Jr. – who has submitted an affidavit in Mr. Lunn's case, *see* ECF No. 59-1 – stated that, "to increase the likelihood that Cambodia issues a high rate of travel documents, ICE selects Cambodian nationals with strong evidence of Cambodian nationality" to be presented at interviews with the Cambodian government.  Decl. of John A. Schultz at 4, *Chhoeun v. Marin*, 8:17-cv-01898-CJC-GJS (C.D. Cal.) (Jan. 11, 2018), ECF No. 60, attached hereto as Exhibit D.  ICE submitted a similar declaration last month in *Boonmy v. Nielsen*, 5:18-cv-0067-ODW-JC (C.D. Cal.), stating that ICE had "obtained additional biographic documentation verifying [Petitioner] Boonmy's Cambodian citizenship," and citing "the willingness of the Government of Cambodia to issue travel documents in similarly situated circumstances" as grounds for believing there was a significant likelihood of removal.  Decl. of Yolanda Harrison at 3, *Boonmy v. Nielsen*, 5:18-cv-0067-ODW-JC (C.D. Cal.) (Feb. 23, 2018), ECF No. 12, attached hereto as Exhibit E.  These statements indicate that ICE has knowledge of characteristics or circumstances that create a stronger likelihood that the Government of Cambodia will recognize an individual as a Cambodian national, and that these characteristics and circumstances increase the likelihood of removal to Cambodia.  ICE should be compelled to submit an answer to Interrogatory No. 6 that reflects its full knowledge of the requested information.  *Guarriello*, 2015 WL 12953233, at *4 (requiring an interrogatory response "based on information known or reasonabl[y] available to [the party]").

**Interrogatory No. 7**: State whether the Government of Cambodia has communicated to You or any representative of the United States Government any preferred of disfavored characteristics of Cambodian nationals to be repatriated, including but not limited to the characteristics described in Interrogatory No. 6. If so, state such characteristics.

**Respondent ICE's Objection to Interrogatory No. 7**: Respondent ICE object to Interrogatory No. 7 on the basis of Law Enforcement Privilege to the extent that the Interrogatory seeks substantive information concerning preferred or disfavored characteristics of Cambodian nationals to be repatriated. Answering Interrogatory No. 7 would reveal techniques and procedures ICE uses to effectuate removals to Cambodia.

**Respondent ICE's Response to Interrogatory No. 7**: With the one exception listed herein, the Government of Cambodia has not communicated to Respondent ICE preferred or disfavored characteristics of Cambodian nationals to be repatriated that it considers when making a repatriation decision. The Government of Cambodia has communicated a preference for repatriating Cambodian nationals without medical conditions.[8]

**Respondent DHS's Response to Interrogatory No. 7**: The Government of Cambodia has not communicated to Respondent DHS that there are characteristics of Cambodian nationals to be repatriated that it considers when making a repatriation decision or the nature of such characteristics, if they exist.[9]

As with the Response to Interrogatory No. 6, it is not clear what information, if any, Respondents are withholding on the basis of the law enforcement privilege. For the reasons stated above, *supra* at 4-6, the privilege does not apply to Interrogatory No. 7.

Mr. Schultz's declaration in *Chhouen*, and Ms. Harrison's in *Boonmy*, also suggest that the Response to Interrogatory No. 7 is deficient. If, as declared in these affidavits, ICE was aware that Cambodia preferred to repatriate individuals with "strong evidence of Cambodian nationality," Exhibit D at 4, and aware of the biographic documentation Cambodia used to verify citizenship, the communications with Cambodia that presumably articulated this preference and the citizenship criteria should have been disclosed in ICE's Response to Interrogatory No. 7.[10]

---

[8] Exhibit B at 3.
[9] Exhibit A at 8.
[10] Citizenship criteria presumably also should have been disclosed in ICE's Response to Interrogatory No. 5:

ICE should also disclose any communications with Cambodia that gave rise to ICE's knowledge of "the willingness of the Government of Cambodia to issue travel documents in similarly situated circumstances." Furthermore, just three days before issuing the Third Supplemental Response reproduced above, ICE responded in its Second Supplemental Response that "[t]he Government of Cambodia has not communicated to Respondent ICE that there are characteristics of Cambodian nationals to be repatriated that it considers when making a repatriation decision." Exhibit A at 8. Only after counsel for Mr. Lunn raised the *Chhouen* declaration did ICE provide an answer acknowledging communication regarding the Government of Cambodia's preference for repatriating individuals without medical conditions. ICE should be compelled to submit a complete, non-evasive answer to Interrogatory No. 7 reflecting its full knowledge of the requested information. *Guarriello*, 2015 WL 12953233, at *2, 4.

**Interrogatory No. 13**: **For each date that Petitioner was released from U.S. Immigration and Customs Enforcement Agency ("ICE") custody, state whether Petitioner's release was governed by 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. For each detention of Petitioner by ICE subsequent to issuance of Petitioner's final order of removal, state the regulatory basis for the detention.**

**Respondents' Objection to Interrogatory No. 13**: **Respondents object to Interrogatory No. 13 as beyond the temporal scope of Petitioner's First Set of Interrogatories as limited by the Court's January 22, 2018 Order. While the Court indicated in its Order that ICE's**

---

**Interrogatory No. 5**: State whether the Government of Cambodia has articulated the standards and/or methods that it applies in verifying nationality, as referenced in Paragraph 5 of the Schultz Declaration. If so, state such standards and/or methods.

**Respondent ICE's Response to Interrogatory No. 5**: The Government of Cambodia has not articulated or communicated to ICE the standards and/or methods referenced in Paragraph No. 5. Respondent ICE has no knowledge of whether the Government of Cambodia has articulated the standard and/or methods that it applies when verifying nationality to other government agencies.

**Respondent DHS's Response to Interrogatory No. 5**: DHS did not participate in the drafting or review of the Schultz Declaration, so lacks information sufficient to form a belief regarding its contents. The Government of Cambodia has not articulated or communicated to DHS the standards and/or methods referenced in Paragraph No. 5. Respondent DHS has no knowledge of whether the Government of Cambodia has articulated the standard and/or methods that it applies when verifying nationality to other government agencies.

Exhibit A at 5–6.

**rationale for previous decisions to detain and release the Petitioner was relevant, the Court explicitly decided that the Petitioner's First Set of Interrogatories are 'limited in time from the date of the detention that led to this Petition to the present." The date of detention that led to the Petition in this case is February 6, 2017. Therefore, Respondents object to any inquiry that requires an answer relating to events or decisions prior to February 6, 2017.**

**Respondent ICE's Response to Interrogatory No. 13: Notwithstanding the court-ordered limitation of the scope of Petitioner's First Set of Interrogatories, Petitioner was released on October 16, 2008; February 22, 2010; and May 24, 2017.  The detention and release of an alien who violates the conditions of an Order of Supervision is governed both by 8 C.F.R. §§ 241.4 and 241.13.  These two statutory provisions must be read in conjunction because of the manner in which they cross-reference each other. Thus, Petitioner's three detentions were each governed by both 8 C.F.R. §§ 241.4 and 241.13, and his three releases were each governed by both 8 C.F.R. §§ 241.4 and 241.13.**

**Respondent DHS's Response to Interrogatory No. 13: Respondent DHS has no direct knowledge about whether Petitioner's detentions and releases were governed by 8 C.F.R. § 241.13.[11]**

ICE's remarkable contention that Mr. Lunn's detentions and releases were each governed by **both** 8 C.F.R. § 241.4 and § 241.13 fails to respond to the Interrogatory's inquiry whether 8 C.F.R. § 241.4 **or** 8 C.F.R. § 241.13 governed, and conflicts with both the plain language of the regulations and ICE's prior statements.  The regulations provide that § 241.13 applies to cases "where the alien has provided good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future," while a decision to release an alien under § 241.4 is made "without regard to the likelihood of the alien's removal in the reasonably foreseeable future." 8 C.F.R. §§ 241.13(a), (b)(1) ("Section 241.4 shall continue to govern the detention of aliens under a final order of removal . . . **unless** the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added)).  In fact, ICE stated to Mr. Lunn in its February 7, 2017 Notice of Revocation of Release that "pursuant to 8CFR [*sic*] 241.4 you are to remain in ICE custody." ECF No. 4 at 12.  This Notice is clear evidence that ICE does not consider Mr. Lunn's detentions

---

[11] Exhibit A at 11–12.

to be governed by both regulations.  Yet ICE has refused to provide information about the regulatory provision that governed Mr. Lunn's release in May 2017, or the regulatory provision that governed the agency's October 13, 2017 determination that it would revoke Mr. Lunn's release, *see* ECF No. 56-1.

ICE should be compelled to provide a complete, non-evasive response to Interrogatory No. 13 indicating which single provision applied to Mr. Lunn's detentions and releases (within the time frame already established by the Court).  *Guarriello*, 2015 WL 12953233, at *2.

**Interrogatory No. 15: State whether, when an individual with a final order of removal is in ICE custody – whether following a violation of the conditions of release or otherwise – and a determination is made that this removal is not significantly likely to occur in the reasonably foreseeable future, the individual is entitled to immediate release.  If not, state the basis for this contention.**

**Respondents' Objection to Interrogatory No. 15: Interrogatory No. 15 requests a legal conclusion: whether an individual so described is "entitled" to immediate release. Respondents object to Interrogatory No. 15 because it requests a legal conclusion.[12]**

Respondents' Objection to Interrogatory No. 15 is improper.  The interrogatory asks only whether individuals in certain factual circumstances are entitled to release from ICE custody, and "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to . . . the application of law to fact."  Fed. R. Civ. P. 33(a)(2); *see* Local Rule 26.5(c)(8).  Counsel for Mr. Lunn, while maintaining that this interrogatory was properly propounded, offered to accept a response that did not state Respondents' contentions but was instead framed in terms of what ICE's and DHS' policies and procedures require.  Exhibit C at 2.  Counsel for Respondents declined.  Letter from K. Connolly to J. Walker at 2 (Mar. 16, 2018), attached hereto as Exhibit F.  Respondents should answer this interrogatory.  *See Marical, Inc. v. Cooke Aquaculture Inc.*, No. 1:14-cv-00366-JDL, 2017 WL 3812866, at *2 (D. Me. Aug. 31, 2017)

---

[12] Exhibit A at 13.

("Interrogatories that seek the bases of a party's claims or defenses are within the scope of permissible discovery."); *Hypertherm, Inc. v. American Torch Tip Co.*, No. 05–cv–373–JD, 2008 WL 5423833, at *2 (D.N.H. Dec. 29, 2008) ("The general view is that contention interrogatories are a perfectly permissible form of discovery . . . ." (*quoting Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n. 2 (6th Cir. 1998))).

### III.  CONCLUSION

For the foregoing reasons, Mr. Lunn respectfully requests that the Court order Respondents to answer Petitioner's First Set of Interrogatories Nos. 5, 6, 7, 13, and 15.

Dated:  March 19, 2018

Respectfully submitted,

By: */s/  Christopher G. Green*
Christopher G. Green (BBO # 643202)
Shivan Sarin (BBO # 694197)
Ropes & Gray LLP
800 Boylston Street
Prudential Tower
Boston, MA 02199
(617) 951-7000
Christopher.Green@ropesgray.com
Shivan.Sarin@ropesgray.com

Matthew R. Segal (BBO # 654489)
Laura Rótolo (BBO # 665247)
Adriana Lafaille (BBO # 680210)
American Civil Liberties Union Foundation of Massachusetts
211 Congress Street, Suite 301
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
lrotolo@aclum.org
alafaille@aclum.org

Laura Murray-Tjan (BBO # 649609)
Federal Immigration Appeals Project, PLLC
Six Beacon Street, Suite 900
Boston, MA 02108
(617) 580-1717
laura@fiapboston.com

*Attorneys for Petitioner Sreynuon Lunn*

## **CERTIFICATE OF SERVICE**

      I, Christopher G. Green, hereby certify that, on March 19, 2018, the foregoing document was filed through the Electronic Court Filing system and a copy thereof will be sent electronically to the registered recipients and counsel of record as identified on the Notice of Electronic Filing.

Dated: March 19, 2018

                                                                       */s/ Christopher G. Green*
                                                                      Christopher G. Green