UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SREYNUON LUNN, | ) |
| | ) |
| Petitioner, | ) |
| | ) C.A. No. 1:17-cv-10938-IT |
| v. | ) |
| | ) |
| YOLANDA SMITH, Superintendent of Suffolk, | ) |
| County House of Correction, et al., | ) |
| | ) |
| Respondents. | ) |

**RESPONDENTS' MEMORANDUM IN SUPPORT OF OPPOSITION TO PETITIONER'S MOTION TO COMPEL ANSWERS TO PETITIONER'S FIRST SET OF INTERROGATORIES**

Respondents hereby submit this memorandum in support of their opposition to Petitioner's Motion to Compel Answers to Petitioner's First Set of Interrogatories, filed pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37.1. Petitioner specifically moves to compel Respondents to answer Interrogatories Nos. 5[1], 6, 7, 13, and 15.

**I.  Respondents Properly Objected to Interrogatory No. 6 on the Basis of Law Enforcement Privilege and, Alternatively, Answered Interrogatory No. 6 to the Fullest Extent Possible**

Petitioner propounded Interrogatory No. 6 as follows:

**Interrogatory No. 6**: For each of the following factors, state whether it is Your experience that this factor has, since 2002, influenced the likelihood of removal to Cambodia, and, if so, state the nature of that influence: 1) criminal history; 2) birth outside of Cambodia; 3) length of residence in the United States; 4) lack of prior residences in Cambodia; 5) lack of family members in Cambodia; 6) mental health; 7) physical health.[2]

---

[1] Petitioner challenges Respondents' answer to Interrogatory No. 5; however, the basis for this challenge is unclear. Petitioner's only mention in his Motion of Respondents' answer to Interrogatory No. 5 is in footnote 10 in which he makes an unsupported presumption about what the content of Respondents' answer should have been.

[2] Petitioner clarified in footnote 2 of his Motion that he does not in fact seek to compel information outside the date range previously set by the Court. *See* ECF No. 79, Order Denying Respondents' Motion to Quash Discovery.

1

Petitioner contends that Respondents did not follow the correct procedure in asserting law enforcement privilege with respect to the interrogatories. However, an agency need not formally assert the law enforcement or deliberative process privileges in responding to an initial discovery request, such as the first set of interrogatories at issue in this case. Rather, a formal assertion need only be made to a court in response to a motion to compel or in support of a motion for protective order. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("motion to compel was the first event which could have forced disclosure of the documents," and agency had no "obligation to formally invoke its privileges in advance of the motion to compel."). A motion to compel, therefore, is the triggering event for formal privilege assertion by an executive party, *id.*,[3] and assertion by the appropriate division head within an agency is sufficient, *Landry v. FDIC*, 204 F.3d 1125, 1136 (D.C. Cir. 2000).

With Petitioner's Motion to Compel, the parties now have reached the operative procedural stage for formal invocation of the law enforcement privilege. In response to Petitioner's motion, Respondents hereby formally assert the law enforcement privilege to Interrogatory No. 6 and Respondent Immigration and Customs Enforcement ("ICE") submits herewith a declaration in support of its assertion of this privilege, executed by Philip T. Miller, Deputy Executive Associate Director of the Office of Enforcement and Removal Operations within ICE. *See* Ex. ** (Declaration of Philip T. Miller). Respondent ICE is the component of Respondent Department of Homeland Security ("DHS") that "oversee[s] programs and operations to identify and apprehend removable aliens, [] detains these individuals when

---

[3] *See also In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wis. Steel*, No. 85 C 3521, 1987 WL 20408, at *7 (N.D. Ill. Nov. 20, 1987) (rejecting assertion that agency head's privilege declaration must be submitted when privilege is first invoked); *SEC v. Downe*, No. 92 cv 4092 (PKL), 1994 WL 23141, at *5 (S.D.N.Y. Jan. 27, 1994) (unpublished) (finding government meets its obligation regarding privilege declaration by filing it with its papers opposing motion to compel).

2

necessary, and [] remove[s] illegal aliens from the United States." *Id.* at ¶ 1. As Deputy Executive Associate Director of ERO, an agency of approximately 7,600 employees, six headquarters components, and 24 field offices, Mr. Miller is an agency official of sufficient rank within ICE to execute this declaration for the assertion of law enforcement privilege. *Id.*; *see also Landry*, 204 F.3d at 1135-36 (stating that the head of the overall department or agency does not need to be the executive official asserting law enforcement privilege, but rather "the head of the appropriate regional division" is enough). Mr. Miller also demonstrated that he personally considered the issues in this case and the information withheld. Ex. A at ¶¶ 1-5; *see also Landry*, 204 F.3d at 1135 (setting forth the requirements for assertion of law enforcement privilege as (1) formal claim of the privilege by the appropriate agency head, (2) based upon "actual personal consideration by that official," and (3) an explanation of what information is privileged and why).

Moreover, Respondent ICE properly objected to Interrogatory No. 6 because the interrogatory requests information that would render an alien more or less likely to be removed, which is information that ICE uses as part of its procedure or decision to execute final orders of removal. *See* Ex. A at ¶¶ 8-10. Specifically, Petitioner seeks information concerning, in ICE's experience, how six factors in particular have influenced the likelihood of removal to Cambodia. Such information directly hones in on ICE's "law enforcement techniques and procedures" that affect future removals of aliens to Cambodia, dating back to 2002. *See Commonwealth of Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007) (recognizing "a qualified privilege for law enforcement techniques and procedures"); *see also United States v. Cintolo*, 818 F.2d 980, 983-84 (1st Cir. 1987). Mr. Miller explained in his declaration that if information about these factors and their influence on removal is made publicly available "aliens could take steps to attempt to

make themselves non-compliant . . . with the standards." Ex. A at ¶ 10. He goes on to elaborate that aliens aware of the factors and the nature of their influence on removal could provide inaccurate information to thwart removal, such as omitting or misrepresenting criminal history, presenting altered or fabricated birth certificates, misrepresenting the amount of time one has lived in the United States, and misrepresenting the status of one's health. *Id.* at Ex. A at ¶ 11. Such risks as set forth in Mr. Miller's declaration certainly concern ICE's law enforcement techniques and procedures for conducting removals, and the disclosure of such information would jeopardize future removal operations. *See Commonwealth of Puerto Rico*, 490 F.3d at 64; *Cintolo*, 818 F.2d at 1002. Thus, Petitioner's argument that Respondents have not properly asserted privilege is without merit. Accordingly, the Court should find that Respondents properly invoked law enforcement privilege with respect to Interrogatory No. 6.

Petitioner argues that Interrogatory No. 6 does not seek confidential, sensitive law enforcement techniques or surveillance information. Petitioner claims that he seeks only "the way in which specific factors have influenced removal to Cambodia," which is not a request for "procedures or techniques regarding gathering and analyzing these factors." Pet'r's Mot. to Compel Answers to Pet'r's First Set of Interrogs., ECF No. 84 at 5. Notwithstanding Petitioner's explanation, the way in which certain factors may influence removal is precisely that—it is the analysis of a factor and its impact on removal which speaks directly to law enforcement techniques and procedures for removal. Mr. Miller explains in his declaration that aliens who are aware of factors influencing removal could successfully thwart ICE's removal efforts such that ICE does not present them for interviews with Cambodian government officials or presents them for interviews but the Cambodian government officials do not issue travel documents. *See* Ex. A

at ¶ 10. This explanation of the information sought in Interrogatory No. 6 demonstrates the reason why such information is subject to the law enforcement privilege.

Alternatively, Petitioner argues that even if the response to Interrogatory No. 6 would reveal sensitive law enforcement techniques or procedures, Petitioner's interest in disclosure outweighs ICE's interest in keeping such information confidential. As support for his contention that his interest in disclosure outweighs ICE's interest in protecting such information, Petitioner contends that the interrogatory is "calculated to elicit information that bears directly on the likelihood of Mr. Lunn's removal"; however, that is not the case. In making such an argument, Petitioner is attempting to walk back an exceptionally broad interrogatory that seeks generalized information about all Cambodian removals, and a variety of factors that may have influenced those removals, dating back to 2002. Petitioner cannot now say that Interrogatory No. 6 asks something it does not and also argue that Respondents failed to answer a question that was not asked. In essence, Petitioner failed to demonstrate the "authentic necessity" for the broad scope of information he seeks in Interrogatory No. 6. *Commonwealth of Puerto Rico*, 490 F.3d at 62, 66. Moreover, Respondents submitted a declaration from an agency official explaining the information that is privileged and why. *See generally* Ex. A. Petitioner's individual interest in understanding his likelihood of removal does not override ICE's interest in being able to carry out its core function of identifying, apprehending, and removing aliens, and as relates to this case Cambodian aliens, with final orders of removal from the United States. *See id.* at ¶ 1; *see also Commonwealth of Puerto Rico*, 490 F.3d at 64.

Finally, Petitioner argues that Respondent ICE's response to Interrogatory No. 6 contradicts statements made by ICE officials in declarations submitted in other litigation, specifically *Chhoeun v. Marin*, No. 17-cv-01898 (C.D. Cal.) and *Boonmy v. Nielsen*, No. 18-

0067 (C.D. Cal.). *See* ECF Nos. 85-4 (Ex. D, *Chhoeun* Decl.); 85-5 (Ex. E, *Boonmy* Decl.). However, the statements noted by Petitioner in those cases, which concern Cambodia's issuance of travel documents, *see* ECF No. 85-4, Ex. D (*Chhoeun* Decl. at ¶ 9) ("To increase the likelihood that Cambodia issues a high rate of travel documents, ICE selects Cambodian nationals with strong evidence of Cambodian nationality."), and ECF No. 85-5, Ex. E (*Boonmy* Decl. at ¶ 19) ("Considering the biographic documents verifying BOONMY's Cambodian citizenship, the willingness of the Government of Cambodia to issue travel documents in similarly situated circumstances . . . .") do not contradict ICE's answer here that factors influencing the likelihood of removal to Cambodia are considered on a case-by-case basis and may vary depending upon the factors present in any given situation. Just because one factor may impact one aspect of removal more prominently—for example, strong evidence of nationality affecting the issuance of travel documents—does not mean that other factors are not also at play influencing the likelihood of removal overall. *See* Ex. A at ¶ 9. Generally speaking, the agency assesses removal cases on a case-by-case basis and that assessment does not contradict the fact that a particular factor may impact one aspect of removal in a particular case more than another.

In the same breath that Petitioner argues Respondents have contradicted themselves, Petitioner also reframes Interrogatory No. 6 into an entirely new interrogatory concerning "characteristics that might make Cambodia more or less likely to accept the repatriation of an individual recognized as a citizen and about characteristics that might make the government of Cambodia more or less likely to recognize an individual as a citizen in the first place." ECF No. 85-3; *see also* ECF No. 84 at 6. Petitioner's clarification of what he was really asking constitutes an entirely new interrogatory concerning an alien's recognition as a citizen by Cambodia, which is not the same issue as factors that may or may not influence removal.

Simply put, the issues Petitioner raises with respect to Interrogatory No. 6 are not the same as the issues in *Guarriello v. Fam. Endowment Paterners, LP*, No. 14-cv-13351-IT, 2015 WL 12953233 (D. Mass. Dec. 21, 2015). In that case, this Court noted the confusion that commonly arises where a party simultaneously objects and partially answers an interrogatory. *Id.* at 2. However, that case did not involve the unusual mix of law enforcement, immigration regulations, and international diplomatic issues that exist in this case. Accordingly, the Court should deny Petitioner's request for an additional answer to Interrogatory No. 6 beyond that which was already provided.

II. **Respondents Properly Objected to Interrogatory No. 7 on the Basis of Law Enforcement Privilege and, Alternatively, Answered Interrogatory No. 7 to the Fullest Extent Possible**

Petitioner propounded Interrogatory No. 7 as follows:

**Interrogatory No. 7**: State whether the Government of Cambodia has communicated to You or to any representative of the United States Government any preferred or disfavored characteristics of Cambodian nationals to be repatriated, including but not limited to the characteristics described in Interrogatory No. 6. If so, state such characteristics.

Respondent ICE properly objected to Interrogatory No. 7 on the basis of law enforcement privilege because the interrogatory requests information concerning communications between the United States Government and Cambodia directly impacting law enforcement techniques and procedures concerning removals. As similarly discussed *supra* Part I, Respondents hereby formally assert the law enforcement privilege with respect to Interrogatory No. 7. *See* Ex. A. As with Interrogatory No. 6, Respondent ICE properly objected to Interrogatory No. 7 because the interrogatory requests information impacting repatriation of Cambodian aliens, which in turn directly impacts ICE's ability to execute final orders of removal. *See* Ex. A at ¶¶ 8-10. As described in Mr. Miller's declaration, ICE's approach to working with the government of Cambodia in its repatriation efforts is part of its law enforcement procedures related to removing

7

Cambodian aliens with final orders of removal. *See id.* Thus, Interrogatory No. 7 seeks information that is subject to law enforcement privilege.

In addition, Petitioner requests information about the communications between the United States and a foreign government in relation to law enforcement—in this case, the repatriation of individuals with final orders of removal including those with criminal records. *See* Ex. A at ¶ 10. Petitioner makes no argument with respect to Interrogatory No. 7 demonstrating how his interest in such a broad scope of information outweighs that of ICE in carrying out its core functions as an executive agency tasked with identifying, apprehending, and removing aliens with final orders of removal. Common sense dictates that Petitioner's individual interest in understanding the characteristics that affect repatriation to Cambodia do not outweigh ICE's interest in maintaining the integrity of its law enforcement procedures and ability to carry out removals to Cambodia in the future. *See Commonwealth of Puerto Rico*, 490 F.3d at 64.

Petitioner faults Respondents with supplementing their answer to Interrogatory No. 7 with information concerning Cambodia's preference for repatriating individuals without medical conditions. However, Respondents provided Petitioner with clarified responses to interrogatories after meeting and conferring with Petitioner in good faith. *See* ECF Nos. 85-2, 85-3. Clarified or updated responses to interrogatories should not be cast as evasive or improper when Respondents have given Petitioner no reason for such belief. Respondents are well aware of their continuing duties under Federal Rule of Civil Procedure 26(e)(1)(A) to supplement the record with "additional or corrective information." Thus, Petitioner should not infer a nefarious motive due to supplemented answers when such supplementation is expressly called for by the Federal Rules of Civil Procedure. Respondents understood from reviewing Petitioner's various complaints and objections to Respondents' responses to interrogatories, that Petitioner was confused about some

of Respondents' answers. Respondents attempted to clarify their answers on several occasions in good faith. As noted with respect to Interrogatory No. 6, Respondents do not create the type of inappropriate ambiguity in their interrogatory responses like that at issue in *Guarriello*. *See* 2015 WL 12953233, at 2. Any ambiguity, to the extent it exists, should be excused as a result of law enforcement privilege. Accordingly, the Court should find that Respondents properly invoked the law enforcement privilege with respect to Interrogatory No. 7 and should deny Petitioner's request for an additional answer to Interrogatory No. 6 beyond that which was already provided.

**III.     Respondents Provided a Complete, Non-Evasive Response to Interrogatory No. 13**

Petitioner propounded Interrogatory No. 13 as follows:

**Interrogatory No. 13**: For each date that Petitioner was released from U.S. Immigration and Customs Enforcement Agency ("ICE") custody, state whether Petitioner's release was governed by 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. For each detention of Petitioner by ICE subsequent to issuance of Petitioner's final order of removal, state the regulatory basis for the detention.

Respondents responded that the premise behind this interrogatory was false because both regulations applied to each of Petitioner's three detentions and releases. Petitioner complains that Respondents' answer surely cannot be complete, based on his understanding of how the regulations work. Specifically, he claims it is not possible to segregate the application of 8 C.F.R. §§ 241.4 and 241.13 in the manner Interrogatory No. 13 requests, arguing that only a "single provision" can apply to detention or release. ECF No. 84 at 11. That contention reflects a failure to read both regulations in their entirety and to understand their interplay.

Section 241.4 governs ICE's custody determinations, specifically its authority to continue holding an alien in custody beyond the initial removal period and its authority to grant release or parole, with conditions or not. 8 C.F.R. § 241.4. This regulation is thus the starting point for any custody determination process. Midway through that process, an alien could show "information providing a substantial reason to believe that the removal of a detained alien is not significantly

9

likely in the reasonably foreseeable future" and initiate review procedures set forth in § 241.13. *Id.* § 241.4(i)(7). At that point, ICE must follow the process set forth in § 241.13 to determine whether "there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." *Id.* § 241.4(b)(4), (i)(7); *id.* § 241.13(b)(1). While following the § 241.13 procedures, ICE must continue to cross-reference § 241.4; for example, if it chooses to release the alien on an order of supervision. *Id.* § 241.13(b)(1). If ICE determines that there is no significant likelihood of removal in the reasonably foreseeable future, § 241.4 ceases to apply—*unless* a change of circumstances ever arises, at which point ICE must again start at the beginning of § 241.4. *Id.* § 241.4(b)(4); *see Rombot v. Souza*, No. CV 17-11577-PBS, 2017 WL 5178789, at *3–4 (D. Mass. Nov. 8, 2017) (stating that "[t]he 'special review procedures' in section 241.13 apply to aliens detained under the custody review procedures in section 241.4"). Thus, the § 241.13 review procedures to determine likelihood of removal simply add another layer of review for aliens already detained under § 241.4, and one regulation does not remove any sort of authority from the other.

Therefore, to properly follow the regulatory procedure with regard to aliens who have a final order of removal and who may have no significant likelihood of removal in the reasonably foreseeable future, ICE necessarily must start with § 241.4, at a certain point begin applying § 241.13, all the while cross-referencing § 241.4, and end with either regulation depending upon ICE's determination with respect to likelihood of removal in the reasonably foreseeable future. Respondents thus fully, accurately, and precisely answered Interrogatory No. 13 when they stated that both § 241.4 and § 241.13 provided the "regulatory basis for" Petitioner's releases and detentions.

Petitioner also argues that ICE previously stated that Petitioner was detained "pursuant to [§] 241.4," which allegedly provides "clear evidence that ICE does not consider [Petitioner's] detentions to be governed by both regulations." ECF No. 84 at 10–11. That brief statement from ICE never suggested that § 241.4 was the *sole* authority for Petitioner's detentions and releases (nor could it, given the plain language of each regulation). To state that a particular regulation provides authority for agency action does not necessarily mean that authority is exercised to the exclusion of any other regulation. ICE completely and non-evasively answered Interrogatory No. 13. Therefore, the Court should deny Petitioner's request for a more complete or different answer to Interrogatory No. 13.

**IV.   Respondents Properly Objected to Interrogatory No. 15 as Requesting a Legal Conclusion Concerning When a Person is "Entitled to Immediate Release"**

Petitioner propounded Interrogatory No. 15 as follows:

**Interrogatory No. 15**: State whether, when an individual with a final order of removal is in ICE custody – whether following a violation of the conditions of release or otherwise – and a determination is made that this removal is not significantly likely to occur in the reasonably foreseeable future, the individual is entitled to immediate release. If not, state the basis for this contention.

Respondents objected to Interrogatory No. 15 because it requests a legal conclusion. A responding party may object to an interrogatory that requests a purely legal conclusion. *E.g.*, *Lumbermen's Mut. Cas. Co. v. Pistorino & Co.*, 28 F.R.D. 1, 2 (D. Mass. 1961) ("Plaintiff is directed to answer Interrogatory 9 to the extent that it can do so by reciting facts. It need not express any conclusion of law."); *Caggiano v. Socony Vacuum Oil Co.*, 27 F. Supp. 240, 240 (D. Mass. 1939); *cf. Amoah v. McKinney*, No. 14-cv-40181-TSH, 2016 WL 1698267, at *5 (D. Mass. Apr. 27, 2016) (granting a motion to compel because the responding party did not explain *why* he believed an interrogatory sought a legal conclusion (citing *Bramante v. McClain*, No. 06-cv-0010 WWJ, 2007 WL 102314, at *2 (W.D. Tex. Jan. 8, 2007) (same)).

Such is the case here: Interrogatory No. 15 asks whether an alien for whom there is no significant likelihood of removing in the reasonably foreseeable future is "entitled" to immediate release. To be "entitled" to something is to be "grant[ed] a legal right to." *Kaufman v. Shulman*, 687 F.3d 21, 27 (1st Cir. 2012) (quoting *Entitle*, *Black's Law Dictionary* (7th ed. 1999)). Asking whether an alien who is not significantly likely to be removed in the reasonably foreseeable future has been "grant[ed] a legal right" is therefore a paradigmatic request for a legal conclusion.

Petitioner claims that he is merely "ask[ing] for an opinion or contention that relates to . . . the application of law to fact." ECF No. 84 at 11 (quoting Fed. R. Civ. P. 33(a)(2)). But as Petitioner's quote says, the responding party must provide an answer if the conclusion requested requires the application of law *to fact*. Unlike with Interrogatory No. 13, which asks about Petitioner specifically, Interrogatory No. 15 gives Respondents no facts to apply. Rather, it simply poses an alien with a final order of removal for whom there is no significant likelihood of removal in the reasonably foreseeable future. Whether an alien has such a likelihood is itself a legal conclusion. *Sisiliano-Lopez v. Sabol,* No. 1:16-CV-1793, 2017 WL 3613982, at *5 (M.D. Pa. Aug. 4, 2017) (identifying this as the "governing legal standard"); *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Because Rule 33(a)(2) prohibits Respondents only from objecting on the basis of law applied to *fact*, Respondents fairly objected to Interrogatory No. 15's request for a legal conclusion.

Petitioner tries to get around his poorly worded interrogatory by offering to accept a response to a different question: what Respondents' "policies and procedures require." *See* ECF No. 84 at 11. Except for Rule 26(a) initial disclosures, a party is not required to affirmatively produce discovery without a discovery request from the opposing party. *E.g.*, *Reinsdorf v.*

*Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616–17 (C.D. Cal. 2013); *see generally* Fed. R. Civ. P. 26–36. Interrogatory No. 15, as worded, asks nothing about Respondents' policies and procedures or about their operations generally.

## V.     Conclusion

Petitioner seeks to compel different answers to Interrogatories Nos. 5, 6, 7, 13, and 15, even though Respondents responded to the interrogatories to the fullest extent possible and objected only where necessary. Respondents provided Petitioner with clarified responses to interrogatories after meeting and conferring with Petitioner in good faith. Notably, Petitioner did not set forth an argument concerning Respondents' answer to Interrogatory No. 5, except for a brief mention of what Respondents "should have. . . disclosed" in response to that interrogatory in footnote 10 of Petitioner's Motion to Compel. Respondents did not object to Interrogatory No. 5, but instead provided a straightforward answer to Petitioner's question of whether Cambodia had articulated the standards or methods that it applies in verifying nationality.

For the foregoing reasons, Respondents respectfully request that this Court deny Petitioner's Motion to Compel Answers to Petitioner's First Set of Interrogatories because Respondents answered the interrogatories to the fullest extent possible and only objected where necessary.

| | |
|---|---|
| Dated: April 2, 2018 | Respectfully submitted, |
| CHAD A. READLER<br>Acting Assistant Attorney General<br>Civil Division | By: /s/ *Lindsay M. Vick*<br>LINDSAY M. VICK<br>MA Bar 685569<br>Trial Attorney |
| WILLIAM C. PEACHEY<br>Director | Department of Justice,<br>Civil Division<br>Office of Immigration Litigation (OIL) |
| KATHLEEN A. CONNOLLY<br>Senior Litigation Counsel | District Court Section<br>P.O. Box 868<br>Washington, DC 20044 |
| STEVEN A. PLATT<br>Trial Attorney | Tel: (202) 532-4023<br>Fax: (202) 307-8781<br>Email: Lindsay.vick2@usdoj.gov |
| | **Attorneys for Respondent** |

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above Opposition to Petitioner's Motion to Compel Answers to Petitioner's First Set of Interrogatories was served upon the attorney of record for each other party on April 2, 2018, through the CM/ECF for the District of Massachusetts. All parties are registered CM/ECF participants and were served electronically, as identified on the Notice of Electronic Filing (NEF).

                                                    */s/ Lindsay M. Vick*
                                                    Lindsay M. Vick
                                                    Trial Attorney

Date:  April 2, 2018