UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SREYNUON LUNN, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * Civil Action No. 17-10938-IT |
| | * |
| YOLANDA SMITH, et al., | * |
| | * |
| Respondent. | * |

MEMORANDUM & ORDER

February 12, 2019

TALWANI, D.J.

Before the court is Petitioner's Motion to Compel Answers to Petitioner's First Set of Interrogatories [#83]. For the following reasons, Petitioner's motion is ALLOWED in part and DENIED in part.

I. Background

Petitioner Sreynuon Lunn was born in a Thai refugee camp after his Cambodian parents fled the Khmer Rouge. Pet. ¶ 10 [#1]. On September 25, 1985, when he was seven months old, he was lawfully admitted to the United States as a refugee. Id. ¶ 11. On June 25, 2008, he was ordered removed from the United States to Cambodia. Piepiora Decl. ¶ 5 [#23-1]. Petitioner was released on an administrative Order of Supervision the following month. Id.

Since his 2008 release, the United States Immigration and Customs Enforcement ("ICE") has repeatedly detained Petitioner, and ICE reportedly has made efforts to remove him to Cambodia. Id. ¶¶ 7-8; Pet. ¶¶ 19-22 [#1]. Throughout this time, ICE has been unable to obtain travel documents from Cambodia. Piepiora Decl. ¶ 7 [#23-1]; Pet. ¶¶ 19-21 [#1].

II. The Current Litigation

Petitioner's most recent detention prior to this litigation began on February 6, 2017, when Petitioner was held in ICE custody at the Suffolk County House of Corrections. Piepiora Decl. ¶ 8 [#23-1]; Pet. ¶ 22-23 [#1].

On May 22, 2017, Petitioner filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#1], naming the United States Secretary for the Department of Homeland Security ("DHS"), the Directors of ICE and ICE's Boston Field Office, and others. Petitioner alleged that he has been subjected to a pattern of unlawful detention and sought a court order that, *inter alia*, (1) compelled his release, and (2) enjoins his re-detention absent proof to this court that his removal has become reasonably foreseeable. Pet. [#1]. Petitioner argued that post-final-order detention is not statutorily authorized, or constitutional, if the noncitizen's removal is not reasonably foreseeable. Mem. in Support of Pet. 5-10 [#3] (citing Zadvydas v. Davis, 533 U.S. 678, 699 (2001)).

Petitioner was subsequently released from ICE custody after the Cambodian consulate notified ICE's Boston Field Office that it had not scheduled any travel document interviews for the near future. Piepiora Decl. ¶¶ 8-9 [#23-1].

Respondent then moved to dismiss the Petition on mootness grounds in light of Petitioners release from custody. Resp'ts' Mot. to Dismiss [#15]. The court denied the motion, finding a live issue existed as Petitioner claimed that his immigration detention was forbidden so long as his removal was not reasonably foreseeable, and the government contended that he could nonetheless be detained. Order [#26].[1]

---

[1] Petitioner was subsequently arrested by the Boston Police and remains in state criminal custody, subject to an ICE detainer. Guarna-Armstrong Decl. ¶¶ 4-5 [#56-1]. As of December 5, 2017, Respondents reported to the court that Petitioner was not yet back in ICE custody. Resp'ts' Mot. to Quash 3 n.3 [#71].

2

On November 10, 2017, Petitioner served Interrogatories on Respondents. Mot. to Quash Ex. A (Pet'r's First Set of Interrogs.) [#71-1]. Petitioner requested, *inter alia*, (1) information regarding the Government of Cambodia's repatriation of others (Interrogatories 5-7); and (2) information regarding ICE's past detentions of Petitioner; and (3) the policies and procedures that will impact intended future detention(s) of Petitioner (Interrogatories 13 and 15). Respondents moved to quash the Interrogatories. Resp'ts' Mot. to Quash [#71]. In response, Petitioner argued that the requested discovery will aid him in showing that he is entitled to continuing release from ICE custody where his removal to Cambodia is not likely to occur in the reasonably foreseeable future. Pet'r's Opp'n to Resp'ts' Mot. to Quash 1 [#73].

The court denied Respondents' motion on January 22, 2018, stating that:

> The court agrees that this information, *with limits as to the time period*, is reasonably calculated to bear on Petitioner's entitlement to continuing release from ICE custody. For example, information about the number of nationality verification interviews conducted or scheduled to be conducted the Government of Cambodia, *since the time of Petitioner's detention that led to this Petition*, is relevant to determine whether the Government of Cambodia's position on repatriation has changed generally, and information about the Government of Cambodia's willingness to conduct such interview for Petitioner bears directly on whether its position with respect to Petitioner's repatriation has changed. For similar reasons, information regarding the standards and/or methods the Government of Cambodia has used to verify nationality, *since the time of Petitioner's detention that led to this Petition*, is relevant. Finally, information regarding ICE's rationale for its previous decisions to detain and then release him, and the policies and procedures it has applied or will apply, if any, to detention of Petitioner, is relevant to whether the question before this court is capable of repetition but evades review.
>
> Accordingly, Petitioner's First Set of Interrogatories, limited in time from the date of the detention that led to this Petition to the present, bear on whether Petitioner is entitled to relief, and good cause exists for such interrogatories as so cabined.

Order 3 [#79] (emphases added).

Respondents served their Response to Petitioner's First Set of Interrogatories on February 21, 2018. Green Decl. Ex. G (Resp'ts' First Resp.) [#85-7]. On February 26, 2018, Petitioner's counsel sent Respondents a letter identifying claimed deficiencies in Respondents' in the First Response to the Interrogatories. Pet'r's Mem. in Support of Mot. to Compel ("Pet'r's Mem.) 2 [#84]. After the parties met and conferred, Respondents served their First Supplemental Responses to the Interrogatories, followed by their Second Supplemental Response to the Interrogatories. Green Decl. Ex. A (Resp'ts' Sec. Suppl. Resp.) [#85-1]. On March 14, 2018, Petitioner's counsel sent Respondents a letter addressing the alleged remaining deficiencies in the Second Supplemental Response. Id. Ex. C (Pet'r's Letter) [#85-3]. Respondents' counsel then sent Petitioner's counsel a letter regarding the alleged deficiencies, as well as Respondents' Third Supplemental Response to Interrogatory Nos. 6 and 7 of Petitioner's First Set of Interrogatories. Id. Ex. B. (Resp'ts' Third Suppl. Resp.) [#85-2].[2]

This motion followed.

III.     Discussion

    A.     Interrogatory No. 5

In Interrogatory No. 5, Petitioner asked Respondents to "[s]tate whether the Government of Cambodia has articulated the standards and/or methods that it applies in verifying nationality, as referenced in Paragraph 5 of the Schultz Declaration. If so, state such standards and/or methods." Pet'r's First Set of Interrogs. 4 [#71-1]. Respondent did not object to Interrogatory

---

[2] Among the objections raised by Respondents was that Interrogatories Nos. 6, 7, and 13 went beyond the temporal scope of discovery as limited by this court's Order of January 22, 2018 [#79]. Resp'ts' First Resp. 8-9 [#85-7]; Resp'ts' Third Suppl. Resp. 2 [#85-2]. Petitioner explained that it does not seek information prior to Petitioner's 2017 detention, but rather information from Petitioner's 2017 detention to present. Pet'r's Mem. 3 n.3 [#84]. Because Petitioner does not seek information outside of the limitations of the court's order, the court does not need to address Respondents' objection to the temporal scope of the information sought in the Interrogatories.

No. 5 and provided responses. Resp'ts' Sec. Suppl. Resp. 5-6 [#85-1]. Petitioner's counsel did not raise any issue regarding Respondents' Interrogatory Response No. 5 in the letters following this response. See Pet'r's Letter 2 [#85-3].

In his motion, Petitioner asks the court to compel Respondents to provide a response to Interrogatory No. 5. See Pet.'s Mot. to Compel [#83]. Petitioner's memorandum does not discuss this interrogatory except in a footnote, where Petitioner suggests that the answer provided by Respondent ICE may not be accurate or complete in light of later information addressed in Petitioner's discussion about Interrogatories Nos. 6 and 7. Pet'r's Mem. 8-9 n.10 [#84]; see also Resp'ts' Opp'n 1 n.1 [#89].

The court DENIES petitioner's motion to the extent that it requests relief as to Interrogatory No. 5. Petitioner did not provide notice to Respondents of the alleged deficiency. See Pet'r's Letter 2 [#85-3]. Moreover, Petitioner's counsel has not shown that they attempted to confer with Respondents to obtain the relief sought prior to filing of this motion. See Fed. R. Civ. P. 37(a)(1); L.R. 37.1(a), D. Mass. The court does, however, remind Respondents of their ongoing obligation to supplement or correct their response "in a timely manner if [Respondents] learn that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

B. <u>Interrogatory Nos. 6 and 7</u>

In Interrogatory No. 6, Petitioner asked Respondents:

> For each of the following factors, state whether it is Your experience that this fact has, since 2002, influenced the likelihood of removal to Cambodia, and, if so, state the nature of that influence: (1) criminal history; (2) birth outside of Cambodia; (3) length of residence in the United States; (4) lack of prior

5

residence in Cambodia; (5) lack of family members in Cambodia; (6) mental health; (7) physical health.[3]

In Interrogatory No. 7, Petitioner asked Respondents to:

> State whether the Government of Cambodia has communicated to You or any representative of the United States Government any preferred o[r] disfavored characteristics of Cambodian nationals to be repatriated, including but not limited to the characteristics described in Interrogatory No. 6. If so, state such characteristic.[4]

Respondent ICE objected to Interrogatories Nos. 6 and 7 "on the basis of the Law Enforcement Privilege to the extent that the Interrogatories seek information concerning how certain factors influence ICE's likelihood of removing an alien to Cambodia, and is seeking substantive information concerning preferred or disfavored characteristics of Cambodian nationals to be repatriated."[5] Respondent ICE argues that answering these Interrogatories would "reveal techniques and procedures ICE uses to effectuate removals to Cambodia."[6]

Both Respondent ICE and Respondent DHS object to Interrogatory No. 6 that, "[t]o the extent that Interrogatory No. 6 requests information as to how the above-referenced factors influence the Government of Cambodia's decision to accept an individual for repatriation, [Respondents] cannot answer on behalf of a third party not a party to this litigation.[7]

After lodging their objections, Respondents answered as follows:

Respondent ICE's Response to Interrogatory No. 6:

> [W]ith respect to criminal history that is a matter of public record, when ICE executes an individuals' removal order, ICE provides the foreign government with public records concerning the individual's criminal conviction that led to his or her removal, if applicable.[8]

---

[3] Pet'r's First Set of Interrogs. 5 [#71-1].
[4] Id.
[5] Resp'ts' First Resp. 5 [#85-7].
[6] Resp'ts' Third Suppl. Resp. 3 [#85-2]
[7] Resp'ts' Sec. Suppl. Resp. 7 [#85-1]; Resp'ts' Third Suppl. Resp. 2-3 [#85-2].
[8] Resp'ts' First Resp. 5 [#85-7].

To the extent Petitioner is inquiring about ICE's experience, in ICE's experience, the factors listed in Interrogatory No. 6 might influence the likelihood of removal to Cambodia in any individual case; however, each removal varies in terms of which factors may or may not be present. Similarly, because removals are considered on a case by case basis, the weight accorded to any specific factor varies.[9]

Respondent DHS's Response to Interrogatory No. 6:

Notwithstanding the fact that the Government of Cambodia is not a party to this litigation, Respondent DHS has no knowledge about how the Government of Cambodia weighs certain factors during its decision to repatriate an individual.[10]

Respondent ICE's Response to Interrogatory No. 7:

With the one exception listed herein, the Government of Cambodia has not communicated to Respondent ICE preferred or disfavored characteristics of Cambodian nationals to be repatriated that it considers when making a repatriation decision. The Government of Cambodia has communicated a preference for repatriating Cambodian nationals without medical conditions.[11]

Respondent DHS's Response to Interrogatory No. 7

The Government of Cambodia has not communicated to Respondent DHS that there are characteristics of Cambodian nationals to be repatriated that it considers when making a repatriation decision or the nature of such characteristics, if they exist.[12]

In Roviaro v. United States, the United States Supreme Court first recognized the law enforcement privilege to "further and protect the public interest in effective law enforcement. 353 U.S. 53, 59 (1957). The Court explained that "[t]he scope of the privilege is limited in its underlying purpose." Id. at 60. In Commonwealth v. Puerto Rico, the First Circuit further explained that the law enforcement privilege constitutes "a qualified privilege to protect sensitive law enforcement techniques and procedures from disclosure." 490 F.3d 50, 54 (1st Cir. 2007).

---

[9] Resp'ts' Third Suppl. Resp. 2 [#85-2].
[10] Resp'ts' Sec. Suppl. Resp. 7 [#85-1].
[11] Resp'ts' Third Suppl. Resp. 3 [#85-2].
[12] Resp'ts' Sec. Suppl. Resp. 8 [#85-1].

Petitioner argues that the law enforcement privilege asserted by Respondent ICE does not apply to the information sought in Interrogatories Nos. 6 and 7 because the interrogatories do not seek confidential, sensitive law enforcement techniques or surveillance information, but rather requests disclosure of the way in which specific factors influence removal of ICE detainees to Cambodia. Pet'r's Mem. 5 [#84]. Moreover, Petitioner argues that even if Respondent ICE's response would reveal sensitive law enforcement techniques, his interest in disclosure of the information outweighs Respondent ICE's interest in keeping the information confidential. Id. at 5-6.[13]

Respondents reply that Interrogatory No. 6 requests information that would render an alien more or less likely to be removed, which is information that Respondent ICE uses as part of its procedure or decision to execute final orders of removal. Resp'ts' Opp'n 3 [#89].

The court finds that the information sought by Petitioner does not interfere with "the furtherance and protection of the public interest in effective law enforcement." Roviaro, 353 U.S. 60. As previously noted, the Law Enforcement Privilege's scope is limited to its "underlying purpose." Id. Here, Petitioners ask Respondents for information that they may have as to Cambodia's response to factors about the people that the United States government seeks to

---

[13] Petitioner further argues that Respondent ICE did not follow the proper procedure required to assert the privilege, including that an agency or department head make a detailed assertion of the privilege based on actual personal consideration by that official. Id. at 5 (citing, e.g., Landry v. FDIC, 204 F.3d 1125, 1135-36 (D.C. Cir. 2000)). Respondent argues that it had no duty to formally assert the privilege until a motion to compel was filed, which was the "triggering event for formal privilege assertion." Resp'ts' Opp'n 2 [#89] (citing In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997)).
    The court agrees with Petitioner that Respondents' late showing of "actual personal consideration" of the privilege by an asserting official disregards the obligation to respond and to meet and confer. See Fed. R. Civ. P. 37(a)(1); L.R. 37.1(a). However, the court finds that Respondents did not waive the assertion of the privilege as Petitioner was aware in advance of filing its motion to compel that Respondents likely would be formally asserting the privilege, and Petitioner was not prejudiced by any delay in Respondents' formal invocation of the privilege. See In re Sealed Case, 121 F.3d at 741.

remove. Petitioner does not seek any "law enforcement technique or surveillance information" regarding any underlying criminal investigation.

Moreover, Petitioner's interest in disclosure of the information clearly outweighs Respondent ICE's interest in keeping the information confidential. The information sought by Petitioner is relevant to the constitutionality of his immigration detentions and whether there is a "significant likelihood of removal in the reasonably foreseeable future." Zadvydas v. Davis, 533 U.S. 678, 701 (2001).

Respondents have submitted the declaration of Philip T. Miller, Deputy Executive Associate Director of the Office of Enforcement and Removal Operations within ICE. See Respd'ts' Opp'n Ex. A (Miller Decl.) [#89-1]. Mr. Miller asserts in his declaration that, despite the existence of a Protective Order [#52], if the information pertaining to the six factors addressed in Interrogatory No. 6 was made publicly available, "aliens could take steps to attempt to make themselves non-compliant . . . with the standards." Id. ¶ 10. Mr. Miller further avers that if law enforcement is required to disclose whether the Government of Cambodia has communicated "preferred or disfavored" characteristics of Cambodian nationals who are to be repatriated, as is requested in Interrogatory No. 7, "aliens could . . . misrepresent their actual circumstances or characteristics." Id. ¶ 12.

But Mr. Miller's fails to explain how disclosure of this information to Petitioner would result in "public disclosure" considering the Stipulated Protective Order [#51] currently in place. Additionally, Mr. Miller provides no substantiation whatsoever for his claims that public disclosure would hinder Respondent ICE's removal of aliens with final removal orders. And Respondents fail to explain on what basis this court should make an independent factual determination as to likelihood of removal if this information is not provided.

9

The court finds that the information sought in Interrogatories Nos. 6 and 7 are not properly subject to the Law Enforcement Privilege. The Respondents' objection on that basis is therefore OVERRULED.

As to Respondents' objections that they cannot answer questions on behalf of the Government of Cambodia, the objections are also OVERRULED. Interrogatories Nos. 6 and 7 do not seek answers on behalf of the Government of Cambodia, or how the Government of Cambodia is, in fact, making its decisions. Rather, the interrogatories seek information that the Respondents may have, based on their experience, as to the weight that the Government of Cambodia may give the six factors identified in Interrogatory No. 6, and statements that the Government of Cambodia may have made to Respondents (Interrogatory No. 7).

Accordingly, Petitioner's Motion to Compel [#83] is ALLOWED as to Interrogatories Nos. 6 and 7. Respondents are ORDERED to supplement their answers to these interrogatories accordingly.

1. Interrogatory No. 13

    In Interrogatory No. 13, Petitioner asked:

    > For each date that Petitioner was released from U.S. Immigration and Customs Enforcement Agency ("ICE") custody, state whether Petitioner's release was governed by 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. For each detention of Petitioner by ICE subsequent to issuance of Petitioner's final order of removal, state the regulatory basis for the detention.[14]

    Respondents answered:

    Respondent ICE's Response to Interrogatory No. 13:

    > Notwithstanding the court-ordered limitation of the scope of Petitioner's First Set of Interrogatories, Petitioner was released on October 16, 2008; February 22, 2010; and May 24, 2017. The detention and release of an alien who violates the conditions of an Order of Supervision is governed both by 8 C.F.R. §§ 241.4 and 241.13. These two statutory provisions must be read in

---

[14] Pet'r's First Set of Interrogs. 5 [#71-1].

conjunction because of the manner in which they cross-reference each other. Thus, Petitioner's three detentions were each governed by both 8 C.F.R. §§ 241.4 and 241.13, and his three releases were each governed by both 8 C.F.R. §§ 241.4 and 241.13.[15]

Respondent DHS's Response to Interrogatory No. 13:

Respondent DHS has no direct knowledge about whether Petitioner's detentions and releases were governed by 8 C.F.R. § 241.13.[16]

Petitioner asserts that Respondent ICE's response that Petitioner's detentions and releases were each governed by both 8 C.F.R. § 241.4 and § 241.13 fails to respond to Interrogatory No. 13 and conflicts with the plain language of the regulations. Pet'r's Mem. 10-11 [#84]. Respondents claim that it is not possible to separate the application of the two regulations, and that "to properly follow the regulatory procedure[,] . . . ICE necessarily must start with § 241.4, at a certain point begin applying § 241.13, all the while cross-referencing § 241.4, and end with either regulation depending upon ICE's determination with respect to likelihood of removal in the reasonably foreseeable future." Respd'ts' Opp'n 10 [#89].

While the court recognizes that Respondents may cross-reference both regulations when making its determination whether to detain and release an immigration detainee, Respondents have acknowledged that they "end with either regulation." It is this endpoint determination that Petitioner seeks for each of his previous immigration detentions.

Accordingly, the court ALLOWS Petitioner's motion and ORDERS Respondents to provide Petitioner information pertaining to which regulation, 8 C.F.R. § 241.4 or § 241.13, was last applied and ultimately led to Petitioner's release following each of Petitioner's immigration detentions.

---

[15] Resp'ts' Sec. Suppl. Resp. 12 [#85-1].
[16] Id.

2. Interrogatory No. 15

In Interrogatory No. 15, Petitioner asked Respondents to:

> State whether, when an individual with a final order of removal is in ICE custody – whether following a violation of the conditions of release or otherwise – and a determination is made that this removal is not significantly likely to occur in the reasonably foreseeable future, the individual is entitled to immediate release. If not, state the basis for this contention.

Pet'r's First Set of Interrogs. 7 [#71-1]

Respondents objected on the grounds that Interrogatory No. 15 requests a legal conclusion. Petitioner argues that the interrogatory, as stated, asks for an application of law to fact, and that Petitioner offered to instead accept a response as to Respondent's policies and procedures. Pet'r's Mem. 11-12 [#84]. Respondents counter that Petitioner gives no facts to apply but rather asks for a purely legal conclusion, and that Petitioner's offer to accept a response to a completely different question about Respondents' policies and procedures is improper without a proper discovery request. Respd'ts' Opp'n 11-12 [#89].

The court agrees with Respondents that that the interrogatory, as worded, requires Respondents to provide a legal conclusion that the court cannot compel. See, e.g., Silver v. Geo E. Keith Co., 14 F.R.D. 163, 163 (D. Mass. 1953). The interrogatory as worded asks Respondents to opine as to why they believe such a person (as described in the Interrogatory) is not entitled to immediate release, calling for a conclusion of law. The court further agrees that Interrogatory No. 15 did not ask for Respondents' policies and procedures, and the court therefore cannot compel a response to an interrogatory that was not properly requested. See Fed. R. Civ. P. 37.

Conclusion

For the foregoing reasons, Petitioner's Motion to Compel [#83] is ALLOWED in part and DENIED in part. Respondents shall provide Petitioner their supplemental responses, as directed by this Order, no later than March 5, 2019.

IT IS SO ORDERED.

Dated: February 12, 2019                                 /s/ Indira Talwani
                                                        United States District Judge