UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| SREYNUON LUNN, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 17-cv-10938-IT |
| YOLANDA SMITH, Superintendent of Suffolk County House of Correction, *et al.*, | ) |
| Respondents. | ) |

## MEMORANDUM IN SUPPORT OF PETITIONER SREYNUON LUNN'S MOTION TO DEPOSE RESPONDENT ICE OFFICERS

Petitioner Sreynuon Lunn moves, pursuant to Rule 6 of the Rules Governing Section 2254 Cases, for an order finding good cause to depose the two Immigration and Customs Enforcement ("ICE") officials involved in releasing him from detention on May 25, 2017. Because Respondents have failed—despite two orders from this Court—to provide an adequate answer to Petitioner's interrogatory regarding the statute governing his release from custody, and documents previously produced indicate that these two potential deponents are likely to have additional information regarding this topic, their depositions are necessary to establish the regulation that governs Petitioner's release and purportedly provides the authority for his re-detention.

### I.  BACKGROUND

#### A. Procedural History

Petitioner Sreynuon Lunn filed a Petition for Writ of Habeas Corpus on May 22, 2017. *See* ECF No. 1. The Petition alleges that the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"), unlawfully held Petitioner in immigration detention, and seeks to enjoin further detentions absent a proper determination that his removal to Cambodia is likely to occur in the reasonably foreseeable future. *Id.* at 1–2.

Following the filing of this habeas petition, Petitioner was released from custody on May 25, 2017. To date, ICE has not identified the regulatory ground for that release, despite Petitioner's repeated attempts to obtain this information.[1]

Petitioner served his First Set of Interrogatories on November 10, 2017 (the "First Set of Interrogatories"). ECF No. 71-1. Therein, Interrogatory No. 13 stated:

> For each date that Petitioner was released from U.S. Immigration and Customs Enforcement Agency ("ICE") custody, state whether Petitioner's release was governed by 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. For each detention of Petitioner by ICE subsequent to issuance of Petitioner's final order of removal, state the regulatory basis for the detention.

*Id.*[2]

On December 5, 2017, DHS and ICE moved to quash Petitioner's First Set of Interrogatories claiming, *inter alia*, that good cause did not exist for the interrogatory requests as required by Rule 6 of the Rules Governing Section 2254 Cases. ECF No. 71. On January 22, 2018, the Court found good cause existed, and denied the motion to quash. ECF No. 79. The Court stated, "information regarding ICE's rationale for its previous decisions to detain and then release [Mr. Lunn], and the policies and procedures it has applied or will apply, if any, to detention of [Mr. Lunn], is relevant…". *Id.* at 3. The Court also adopted an agreed-upon case schedule on January 11, 2018, that set March 5, 2018 as the close of discovery. *See* ECF No. 81.

---

[1] In fact, this Court inquired at a June 22, 2017 hearing whether Petitioner's release from detention had been "pursuant to [8 C.F.R. §] 241.13 or 241.4." Due to the limited factual development, the parties were unable to answer the Court's question. *See* ECF No. 29 at 5–6, and 16–17.

[2] The Court limited the temporal scope of Petitioner's First Set of Interrogatories when denying Respondents' motion to quash. ECF No. 79 at 3 ("Petitioner's First set of Interrogatories, limited in time from the date of the detention that led to this Petition to the present, bear on whether Petitioner is entitled to relief, and good cause exists for such interrogatories as so cabined.").

On February 21, 2018, ICE served its Response to Petitioner's First Set of Interrogatories, attached hereto as Exhibit A. With respect to Interrogatory No. 13, ICE stated, in part, "The detention and release of an alien who violates the conditions of an Order of Supervision is governed by *both* 8 C.F.R. §§ 241.4 and 241.13." *Id.* at 9 (emphasis added). After Petitioner objected to ICE's deficient response, ICE Served its First Supplemental Responses on March 5, 2018, attached hereto as Exhibit B, which stated, in relevant part, that Petitioner's "three detentions [and releases] were each governed by both 8 C.F.R. §§ 241.4 and 241.13." *Id.* at 9-10. After Petitioner again objected to the deficient response, ICE served its Second Supplemental Response on March 13, 2018, attached hereto as Exhibit C, which stated, in relevant part, that Petitioner's "three releases were each governed by both 8 C.F.R. §§ 241.4 and 241.13."[3]

On March 19, 2018, Petitioner moved this Court to compel ICE to provide a complete response to Interrogatory No. 13 and indicate which single provision applied to Mr. Lunn's detentions and releases. ECF No. 83. On February 12, 2019, the Court granted Petitioner's motion to compel with respect to Interrogatory No. 13, and again required ICE to establish which regulation purportedly authorized the agency to detain and release Mr. Lunn. ECF No. 93 at 11. Specifically, the Court ordered ICE "to provide Petitioner information pertaining to which regulation, 8 C.F.R. § 241.4 or § 241.13, was last applied and ultimately led to Petitioner's release following each of Petitioner's immigration detentions." ECF No. 93 at 11.

ICE provided a Fourth Supplemental Response to Petitioner's First Set of Interrogatories on March 6, 2019 ("Fourth Interrogatory Response"), attached hereto as Exhibit D. Notwithstanding this Court's order, ICE stated in its Fourth Interrogatory Response, that "ICE

---

[3] On March 16, 2018, Respondent served its Third Supplemental Interrogatory Response on Petitioner, but the response did not address Interrogatory 13.

cannot determine whether Petitioner's [releases from ICE custody were] under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13" because neither the Release Notices nor the Orders of Supervision "cite[d] any regulation as the basis for Petitioner's release[s] [and therefore] such a determination would be a retroactive legal conclusion not necessarily accurate, or even made by the ICE officer, as to the basis for Petitioner's release at that time." *Id.* at 4-5.

B. Factual Background

In the days preceding Mr. Lunn's May 25, 2017 release from ICE custody, ICE officers in the ICE Boston Regional Office considered their authority to release Mr. Lunn. Bates 000209, attached hereto as Exhibit E. On May 24, 2017, the day that the then-Boston ICE Field Office Director (the "Field Office Director")[4] approved Mr. Lunn's release notification, a Boston ICE Assistant Field Office Director (the "Assistant Field Office Director") recognized the distinction between the authority provided under each § 241.4 and § 241.13 in an internal email discussing Mr. Lunn's release. *Id.* at 1 ("It's important because it will decide whether I can cut a release decision from here or if it needs an HQ decision under 241.13."). Similarly, on May 23, 2017, while discussing the mechanics of Mr. Lunn's forthcoming release, the Assistant Field Office Director emailed the Field Office Director and acknowledged the distinction between a release decision by ICE headquarters, and a release decision by an ICE regional office. Bates 000220 at 5, attached hereto as Exhibit F ("[W]e can make the decision at our level because y [*sic*] was a [Field Office Director] release back in 2010."). Ultimately, the Assistant Field Office Director communicated his decision to release Mr. Lunn from ICE custody to the Field Office Director, *id.*, at 1 ("I'm going to sign for release with strict reporting requirements and specific info to

---

[4] For the purposes of this memorandum, Petitioner has omitted the names of the relevant ICE officers and redacted the accompanying exhibits accordingly at the Respondents' request.

EARM...."). That same Field Office Director's name appears on the May 24, 2017 Release Notification. Bates 000037 at 1, attached hereto as Exhibit G.

In this context, and as Petitioner sets out below, ICE's response to Petitioner's Interrogatory No. 13 is not responsive, is cast into question by the record in this case, and is contrary to the Court's orders on this topic. Therefore, Petitioner respectfully moves the Court to find good cause to allow depositions of the Field Office Director and the Assistant Field Office Director, the two ICE officers involved in Petitioner's May 25, 2017 release, to determine under which regulation they released Mr. Lunn.

## II. ARGUMENT

Petitioner has repeatedly sought clarification regarding a straightforward question that is central to the instant litigation: which regulation purportedly authorizes ICE to repeatedly re-detain Petitioner. Because ICE refuses to squarely address the question, and because there was no alternative means for Petitioner to make this request sooner, good cause exists for this Court to amend the case schedule and allow depositions of the ICE officers involved in releasing Mr. Lunn.

### A. There Is Good Cause for Depositions Under Rule 6

To obtain discovery in a Habeas proceeding the Petitioner must request leave of court by showing good cause for the requested discovery. Rules Governing Section 2254 Cases 6(a); *Bracy v. Gramley*, 520 U.S. 899 (1997). To determine whether good cause for discovery exists, a court must first identify the essential elements of a petitioner's claims, and then determine whether the requested discovery satisfies those elements. *Bracy*, 520 U.S. at 904-5. Where a petitioner makes "specific allegations [that] show [a] reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the Court to provide the necessary facilities and procedures for an adequate inquiry." *Id*. at 908-9 (quoting *Harris v. Nelson*, 394 U.S. 286 (1969) (internal quotation marks omitted)).

In light of ICE's refusal to squarely address Interrogatory No. 13, Petitioner proposes taking the depositions of: (1) the Field Office Director, whose name is signed on Mr. Lunn's May 24, 2017 Release Notification, attached hereto as Exhibit G; and (2) the Assistant Field Office Director, who appears to have played a key role in the decision to release Mr. Lunn on May 25, 2017. *See* Exhibits E and F. The proposed deposition notices are attached hereto as Exhibits H and I. The proposed scope of the depositions is limited to the deponents' recollections and beliefs concerning Petitioner's releases from immigration custody, including the rules, regulations, and practices, if any, they believed governed Petitioner's May 25, 2017 release.

As an initial matter, the requested depositions are limited in scope to the subject matter in Interrogatory No. 13, and this Court has already found that good cause existed for discovery of such information. ECF No. 79 at 3 ("information regarding ICE's rationale for its previous decisions to detain and then release him, and the policies and procedures it has applied or will apply, if any, to detention of Petitioner, is relevant [and] bear on whether Petitioner is entitled to relief [therefore] good cause exists…"). ICE's refusal to comply with the Court's orders does not change the fact that good cause exists for this discovery. The depositions are merely a means to establish the facts Petitioner requested in Interrogatory 13.

Further, good cause exists for the requested discovery because deposing the relevant ICE officers appears to be the only means by which Petitioner can determine which regulation purportedly provides the legal authority for Petitioner's re-detention, which goes to Petitioner's ultimate claim. Petitioner is challenging ICE's authority to re-detain him absent reasonable foreseeability of removal. ECF No. 1 at 2. ICE claims that agency regulations provide the authority to unilaterally detain Petitioner Lunn. *See, e.g.*, ECF No. 29 at 8. The regulation that provided ICE the authority to release Petitioner on May 25, 2017 determines the conditions under

which ICE may re-detain him. 8 C.F.R. § 241.13(i)(1)-(2); 8 C.F.R. § 241.4(l). In its Fourth Interrogatory Response, ICE indicated that the subjective opinions of such officers were relevant to ICE determining, for the purposes of Interrogatory No. 13, which regulation governed Mr. Lunn's releases. Exhibit D at 5 ("ICE cannot determine which regulation was the basis for [Mr. Lunn's releases] because such a determination would be a retroactive legal conclusion not necessarily accurate, *or even made by the ICE officer*, as to the basis for Petitioner's release at that time.") (emphasis added). Therefore, depositions of the relevant ICE officers are likely to lead to information relevant to the conditions under which Respondent may re-detain Petitioner.

Finally, notwithstanding ICE's contention that it cannot determine which regulation governs Mr. Lunn's release, internal ICE communications demonstrate that ICE officers considered specific release regulations and acknowledged the differences between them, when contemplating Mr. Lunn's release. See *supra*, at 4. The regulation that authorizes Mr. Lunn's release is relevant when determining whether, and how, he may be re-detained in the future. 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.4(l). Therefore, there is good cause to allow the depositions of the ICE officers to determine which regulation governs Mr. Lunn's release and purportedly authorizes his re-detention.

B.  There Is Good Cause to Amend the Case Schedule

Although allowing these depositions will require amending the case schedule, such amendment is warranted given ICE's refusal to address an interrogatory that squarely presents an issue of law that is central to this dispute. A court may amend a scheduling order and extend discovery upon a showing of good cause. *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73 (1st Cir. 2019); Fed. R. Civ. P. 16(b)(4); L.R. 16.1(g). "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." *Miceli*, 914 F.3d at 86. Good cause typically turns on whether (1) the movant had reason and opportunity to make the

request earlier in the litigation ("the moving party's diligence or lack of diligence serves as the 'dominant criterion'"), and (2) whether the request is merely an unwarranted delay tactic ("the longer a party delays, the more likely the motion to amend will be denied..."). *Id.* Evasive discovery responses are sufficient for a court to find that a discovery request could not have been made sooner, and that good cause exists to extend discovery. *Hutchins v. Cardiac Sci, Inc.*, 491 F. Supp. 2d 136, 141 (D. Mass. 2007) ("Permitting Defendant to evade additional discovery [after providing misleading discovery responses] would penalize one party for the other's deception.").

First, good cause exists to amend the scheduling order and allow the depositions because Petitioner had neither a reason nor opportunity to make the request until ICE failed to provide an adequate response to Interrogatory No. 13. *Id.* (allowing motion to compel discovery over objection that there was not good cause, because of non-moving party's deceptive interrogatory responses). As noted in the emails above, ICE's contention that "it cannot determine which regulation was the basis for [Petitioner's] May 2017 release" is called into question by the record. *Supra*, at 4-5. As noted by the Court, Mr. Lunn was ultimately released pursuant to **_one_** regulation. ECF No. 93 at 11, February 12, 2019 Order ("Respondents have acknowledged that they 'end with *either* regulation' [and] it is this endpoint determination that Petitioner seeks." (emphasis added)); *see also*, ECF No. 26 at 2, note 1 ("§241.4 generally governs custody determinations of aliens such as Petitioner; §241.13, however, supersedes §241.4 *upon agency determination*...that there is 'no significant likelihood of removal in the foreseeable future.'"). Petitioner could not have made his request sooner because he could not foresee ICE's failure to comply with this Court's orders and to squarely address Interrogatory No. 13.

Second, ICE will not be unduly prejudiced by the amended case schedule. ICE has needlessly fought Mr. Lunn's interrogatories at every opportunity, and already required this Court

to intervene twice—ruling in favor of discovery in each instance—to answer a single set of interrogatories that was originally served on November 10, 2017. In light of ICE's posture in this litigation, it cannot be that a brief schedule change to accommodate necessary discovery is prejudicial.

## III.   REQUEST FOR RELIEF

For the foregoing reasons, Petitioner respectfully requests that the Court find good cause to allow for the depositions of the two ICE officers involved in releasing Petitioner to establish which regulation governed Petitioner's release from ICE custody in 2017.

Dated:  April 5, 2019

Respectfully submitted,

By: */s/ Lindsey L. Sullivan*
    Lindsey L. Sullivan
    Daniel McCaughey (BBO # 662037)
    Ropes & Gray LLP
    800 Boylston Street
    Prudential Tower
    Boston, MA 02199
    (617) 951-7000
    lindsey.Sullivan@ropesgray.com
    daniel.McCaughey@ropesgray.com


    Matthew R. Segal (BBO # 654489)
    Laura Rótolo (BBO # 665247)
    Adriana Lafaille (BBO # 680210)
    American Civil Liberties Union
    Foundation of Massachusetts
    211 Congress Street, Suite 301
    Boston, MA 02110
    (617) 482-3170
    msegal@aclum.org
    lrotolo@aclum.org
    alafaille@aclum.org

    Laura Murray-Tjan (BBO # 649609)
    Federal Immigration Appeals Project, PLLC
    Six Beacon Street, Suite 900
    Boston, MA 02108
    (617) 580-1717
    laura@fiapboston.com

    *Attorneys for Petitioner Sreynuon Lunn*

## **CERTIFICATE OF SERVICE**

      I, Lindsey L. Sullivan, hereby certify that, on April 5, 2019, the foregoing document was filed through the Electronic Court Filing system and a copy thereof will be sent electronically to the registered recipients and counsel of record as identified on the Notice of Electronic Filing.


Dated: April 5, 2019

                                                                               */s/ Lindsey L. Sullivan*
                                                                               Lindsey L. Sullivan

## LOCAL RULES 7.1 AND 37.1 CERTIFICATION

Pursuant to Local Rules 7.1 and 37.1, Petitioner's counsel conferred with counsel for Respondents via email on March 19, 2019, and via telephone on March 25, 2019, to discuss the issues raised herein and were unable to reach a resolution.

Dated: April 5, 2019

*/s/ Lindsey L. Sullivan*
Lindsey L. Sullivan