# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SREYNUON LUNN, ) | |
| ) | |
| Petitioner, ) | C.A. No. 1:17-10938-IT |
| ) | |
| v. ) | |
| ) | |
| YOLANDA SMITH, Superintendent of Suffolk, ) | |
| County House of Correction, et al., ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' FOURTH SUPPLEMENTAL RESPONSE TO PETITIONER
SREYNUON LUNN'S FIRST SET OF INTERROGATORIES**

Pursuant to the Court's Order of February 12, 2019, and the Federal Rules of Civil Procedure, Respondent U.S. Department of Immigration and Customs Enforcement ("ICE") and Respondent Department of Homeland Security ("DHS"), file this Fourth Supplemental Response to Interrogatories Nos. 6, 7, and 13 of Petitioner Sreynuon Lunn's First Set of Interrogatories.

**DEFINITIONS**

The definitions set forth in Local Rule 26.5 are incorporated by reference as if fully set forth herein. The following defined terms also form an integral part of the Interrogatories:

1. "You" and "Your" mean and refer to Respondents in the above-captioned action, as well as any other entity or person acting at their direction or on their behalf, including without limitation each of their agents, representatives, and attorneys.

2. "Schultz Declaration" means and refers to the Declaration of Deputy Assistant Director John A. Schultz Jr. submitted in support of Respondents' October 19, 2017 Motion to Reconsider.

1

## INTERROGATORY NO. 6

For each of the following factors, state whether it is Your experience that this factor has, since 2002, influenced the likelihood of removal to Cambodia, and, if so, state the nature of that influence: 1) criminal history; 2) birth outside of Cambodia; 3) length of residence in the United States; 4) lack of prior residences in Cambodia; 5) lack of family members in Cambodia; 6) mental health; 7) physical health.

**Respondent ICE's Response to Interrogatory No. 6:**

To begin, Respondent ICE notes that the appropriate temporal scope of Interrogatory No. 6 is limited by Court Order (*see* Order 3, ECF No. 79; Order 4 n.2, ECF No. 93) to the time of Petitioner's detention that led to his Petition to present. In other words, the appropriate time period for Interrogatory No. 6 is February 6, 2017, to present.

In ICE's experience, the factor that has the strongest influence on the likelihood of removal is indicia of nationality. Periodically, the Government of Cambodia sends officials to the United States to conduct nationality verification interviews, and ICE selects nationals with the strongest evidence of Cambodian nationality to present for such interviews. As explained in Respondent ICE's response to Interrogatory No. 5, the Government of Cambodia has not articulated what standards it uses to verify nationality; however, ICE looks at whatever available information there is on the individual relating to nationality, such as whether the individual is born to Cambodian parents or whether the individual was born in or outside of Cambodia. Other than indicia of nationality, in ICE's experience, the factors listed in Interrogatory No. 6 may or may not influence the likelihood of removal to Cambodia in any individual case. Put another way, the weight given to any factor other than indicia of nationality differs from case to case, because each removal varies in terms of which factors may or may not be present.

Notably, ICE has seen Cambodian nationals repatriated with some or any combination of the

2

above-listed factors. Countries' preferences are fluid, however, and change over time. For example, in the past, in ICE's experience, the Government of Cambodia did not issue travel documents for individuals with mental and physical health issues. Presently, however, there do not appear to be any such exclusions, and in ICE's experience, the Government of Cambodia does issue travel documents for individuals with mental and physical health issues. Furthermore, in ICE's experience currently, neither criminal history, length of residence in the United States, nor lack of prior residences and family members in Cambodia appear to be factors that negatively influence the issuance of travel documents by the Government of Cambodia.

**Respondent DHS's Response to Interrogatory No. 6**

Respondent DHS has no knowledge or experience concerning how the Government of Cambodia weighs certain factors during its decision to repatriate an individual.

**INTERROGATORY NO. 7**

State whether the Government of Cambodia has communicated to You or to any representative of the United States Government any preferred or disfavored characteristics of Cambodian nationals to be repatriated, including but not limited to the characteristics described in Interrogatory No. 6. If so, state such characteristics.

**Respondent ICE's Response to Interrogatory No. 7:**

With the one exception listed herein, the Government of Cambodia has not communicated or made any statements to Respondent ICE about preferred or disfavored characteristics of Cambodian nationals to be repatriated that it considers when making a repatriation decision. The Government of Cambodia has communicated a preference for repatriating Cambodian nationals without medical conditions. That being said, the Government of Cambodia has nonetheless repatriated individuals with medical conditions.

3

## INTERROGATORY NO. 13

For each date that Petitioner was released from U.S. Immigration and Customs Enforcement Agency ("ICE") custody, state whether Petitioner's release was governed by 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. For each detention of Petitioner by ICE subsequent to issuance of Petitioner's final order of removal, state the regulatory basis for the detention.

**Respondent ICE's Response to Interrogatory No. 13:**

Petitioner has been released from ICE custody on three occasions: October 16, 2008; February 22, 2010; and May 24, 2017. When ICE initially released Petitioner in 2008, ICE issued Petitioner a Release Notice dated October 9, 2008. *See* Bates 000005-00006. The Release Notice did not cite any regulation as the basis for Petitioner's release. ICE also issued Petitioner an Order of Supervision, dated October 16, 2008, which did not cite any regulation as the basis for Petitioner's release. *See* Bates 000007-000008. Accordingly, as the ICE Officer releasing Petitioner did not make a determination at the time about which regulation would apply, ICE cannot determine whether Petitioner's 2008 release was under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13 because such a determination would be a retroactive legal conclusion not necessarily accurate, or even made by the ICE officer, as to the basis for Petitioner's release at that time.

In 2009, ICE issued Petitioner a Notice of Revocation of Release, dated November 6, 2009, which did not cite any regulation as the basis for revoking Petitioner's release. *See* Bates 000014-000015. Thereafter, ICE issued Petitioner a Release Notice, dated February 17, 2010, which did not cite any regulation as the basis for Petitioner's release. *See* Bates 000026-000027. ICE also issued Petitioner an Order of Supervision, dated February 22, 2010, which did not cite any regulation as the basis for Petitioner's release. *See* Bates 000028-000030. As with Petitioner's 2008 release, the ICE Officers detaining and releasing Petitioner did not make a determination at the time about which regulation would apply. Thus, ICE cannot determine whether Petitioner's 2009 detention and

4

release were under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13 because such a determination would be a retroactive legal conclusion not necessarily accurate, or even made by the ICE officer, as to the basis for Petitioner's release/detention at that time.

In 2017, ICE issued Petitioner a Notice of Revocation of Release, dated February 7, 2017, which cited 8 C.F.R § 241.4 as the basis for his detention. *See* Bates 000031-000033. Thereafter, ICE issued Petitioner a Release Notice, dated May 24, 2017, which did not cite any regulation as the basis for Petitioner's release. *See* Bates 000037-000038. ICE also issued Petitioner an Order of Supervision, dated May 25, 2017, which did not cite any regulation as the basis for Petitioner's release. *See* Bates 000039-41. ICE can determine that Petitioner's 2017 detention was under 8 C.F.R § 241.4 because the Notice of Revocation of Release cited that regulation as the basis for his detention. However, ICE cannot determine which regulation was the basis for his May 2017 release because such a determination would be a retroactive legal conclusion not necessarily accurate, or even made by the ICE officer, as to the basis for Petitioner's release at that time.

Notably, despite the fact that the determination of whether to detain or release an alien may end with either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, there is no practical distinction regarding revocation of release for aliens who have been released under 8 C.F.R. § 241.4 as compared to 8 C.F.R. § 241.13. In other words, the underlying facts that serve as the basis for revocation under one provision also serve as the basis for revocation under the other provision. For example, violating the terms of release or a change of circumstances resulting in a significant likelihood of removal of the alien in the foreseeable future serve as bases for revocation under either section. In addition, the due process requirements under each section are the same. Aliens who have had their release revoked under either section are entitled to notice of the reasons for the revocation, an informal interview promptly after return to custody, and an opportunity to respond.

## **VERIFICATION**

I, John A. Schultz, Jr., declare, under penalty of perjury:

I am employed by ICE as the Office of Enforcement and Removal Operations Deputy Assistant Director, Removal Management Division - East. As such, I am authorized to make this verification on behalf of ICE in this matter, for the responses to Interrogatories one through sixteen.

I have read and know the contents of these responses. These responses were prepared after obtaining information available to ICE through its officers and employees and through its document and records. These responses, subject to inadvertent and undiscovered errors, are based upon, and necessarily limited by, the records and information still in existence, able to be located, presently recollected, and thus far discovered in the course of preparing these responses. The responses regarding ICE are true and correct to the best of my knowledge, information, and belief.

Dated at Washington D.C., this 6th day of March, 2019.

_____
John A. Schultz Jr.
Deputy Assistant Director

Dated: March 6, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General Civil
Division, U.S. Dep't of Justice

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

KATHLEEN A. CONNOLLY
Senior Litigation Counsel

By:   */s/ Lindsay M. Vick*
LINDSAY M. VICK
MA Bar # 685569
Trial Attorney
Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, DC 20044
Tel: (202) 532-4023
Email: Lindsay.vick@usdoj.gov

**Attorneys for Respondents**

## CERTIFICATE OF MAILING

I hereby certify that on March 6, 2019, I served a copy of the foregoing upon the persons listed below via email:

> Lindsey Sullivan
> Ropes & Gray
> Lindsey.Sullivan@ropesgray.com
>
> Adriana Lafaille
> American Civil Liberties Union
> Alafaille@aclum.org
>
> Laura Murray-Tjan
> Federal Immigration Appeals Project
> Laura@fiapboston.com

*/s/ Lindsay M. Vick*
LINDSAY M. VICK
Trial Attorney
Office of Immigration Litigation