UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
)
SREYNUON LUNN,                                     )
                                                   )
    Petitioner,                        )
                                                   )     C.A. No. 1:17-cv-10938-IT
    v.                                 )
                                                   )
YOLANDA SMITH, Superintendent of Suffolk,          )
County House of Correction, et al.,                )
                                                   )
    Respondents.                       )
———————————————————————)

## RESPONDENTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT

The applicable law allows U.S. Immigration and Customs Enforcement ("ICE") to revoke a noncitizen's release on an order of supervision when the noncitizen violates a condition of release. Under the relevant statute and regulations, the violation of a condition of release by a noncitizen who has a final removal order triggers ICE's assessment of release conditions and review of whether removal is significantly likely in the reasonably foreseeable future. ICE must be able to redetain when someone violates their release conditions to re-assess the conditions, confirm the person's location, and ensure compliance. However, through the instant habeas petition, Petitioner Sreynuon Lunn seeks to prevent the execution of his removal order by seeking an order precluding the revocation of his order of supervision ("OSUP") and allowing him to remain released while continuing to violate the conditions of his release. Even though Lunn is present in this country under a final removal order that he has never challenged, he seeks an order from the Court finding his prior detentions unlawful and requiring ICE to obtain a judicial finding of a significant likelihood of removal in the reasonably foreseeable future ("SLRRFF") prior to

any future re-detention. Neither the Constitution, the Immigration and Nationality Act ("INA"), nor the implementing regulations support Lunn's claims or require the process he seeks.

Pursuant to Federal Rule of Civil Procedure 56, the parties bring cross-motions for summary judgment on two issues: 1) whether ICE may lawfully revoke Lunn's OSUP and detain him for purposes of removal, and 2) whether ICE should be required to obtain a judicial finding of SLRRFF prior to any future re-detention. The material facts are largely uncontested. For the reasons that follow, *infra*, Respondents are entitled to judgment as a matter of law and request that this Court enter judgment in their favor.

*First*, to the extent Lunn cites the Suspension Clause as the basis for jurisdiction to review his habeas petition challenging ICE's ability to re-detain him for purposes of removal, *see* ECF No. 1, Petition ("Pet.") at ¶ 8, the Supreme Court's recent decision in *Thuraissigiam* precludes judicial review of his claims. *Second*, neither the INA nor the Due Process Clause of the Fifth Amendment preclude Lunn's re-detention after release for purposes of removal or modification of release conditions, and the Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678 (2001), clearly anticipates both release under an OSUP and re-detention when that OSUP is violated. *Third*, Lunn is not entitled to declaratory and injunctive relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Lunn was born in a refugee camp in Thailand several months before immigrating to the United States with his Cambodian-born parents. ECF No. 123, Pet'r's Statement of Undisputed Facts ("Pet'r's SOUF") ¶ 1. Years after Lunn was admitted to the United States as a refugee, he was convicted of distribution of marijuana. *Id.* at ¶ 3. ICE detained Lunn and charged him with removability based on this aggravated felony drug trafficking offense. *Id.* at ¶¶ 2-3. An immigration judge ordered Lunn removed to Cambodia on June 25, 2008, and Lunn waived his

right to appeal causing his removal order to become administratively final. Resp'ts' SOUF at ¶ 4. Lunn remained in detention while ICE sought to effect his removal order by obtaining Cambodian travel documents for him. *Id.* ¶¶ 4-6. However, ICE was unable to obtain travel documents within the 90-day removal period, and therefore released Lunn on an OSUP on October 16, 2008. *Id.* at ¶ 7. The OSUP required that Lunn, among other things, appear as requested by ICE for check-ins, obey all local, state, and federal laws, and that he not commit any crimes. *Id.* at ¶ 7. Lunn signed the OSUP directly below a statement that provided: "I understand that failure to comply with the terms of this order and addendum may subject me to a fine, more restrictive release conditions, *detention*, criminal prosecution, and/or revocation of my employment authorization document." *Id.* (emphasis added). Other than Lunn's declaration, ECF No. 5, the only evidence of Lunn's assistance in obtaining travel documents is the Post Order Custody Review Worksheet where it reflects only that Lunn "completed all forms requested." *Id.* at ¶ 5.

On November 6, 2009, ICE revoked Lunn's release after he was convicted of assault and battery with a dangerous weapon and detained him. Resp'ts' SOUF ¶ 8. Because Lunn violated several conditions of his release, including committing a new crime and failing to report to ICE as required, ICE renewed efforts to determine whether there was SLRRFF, to obtain a travel document, and to remove Lunn. *Id.* Again, ICE attempted to obtain travel documents for Lunn but was unsuccessful. Pet'r's SOUF ¶¶ 9, 10. ICE released Lunn on an OSUP on February 22, 2010. *Id.* at ¶ 10; Resp'ts' SOUF ¶ 10. As with the prior OSUP, this OSUP required that Lunn appear as requested by ICE for check-ins and that he not commit any crimes. Resp'ts' SOUF ¶ 10. Lunn signed the OSUP below a statement that provided: "I understand that failure to comply with the terms of this order may subject me to a fine, *detention*, or prosecution." *Id.* (emphasis added).

On February 6, 2017, ICE revoked Lunn's release again after he was arrested on October 24, 2016, for unarmed robbery. Pet'r's SOUF ¶ 11. Because Lunn violated several conditions of his release, including continuing to commit new crimes and failing to report to ICE as required, ICE again renewed efforts to determine whether there was SLRRFF, to obtain a travel document, and to remove Lunn. Resp'ts' SOUF ¶ 13. On May 22, 2017, while he was still in ICE detention, Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2241 challenging his prior detentions and seeking release and injunctive relief. Pet'r's SOUF ¶ 18. On May 25, 2017, Lunn was released from detention on an OSUP. Resp'ts' SOUF ¶ 22. As with the prior OSUPs, this OSUP required that Lunn appear as requested by ICE for check-ins and that he not commit any crimes. *Id.* Lunn signed the OSUP below a statement that provided: "I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution." *Id.*

Respondents moved to dismiss the habeas petition, arguing that the petition was moot as Lunn was no longer in custody. ECF Nos. 15 and 16. The Court denied Respondents' motion to dismiss concluding "a live issue exists between the parties, and if [Lunn] prevails on his claim, this court could issue a non-advisory injunction that would accord relief." ECF No. 26.

On October 14, 2017, after Lunn was charged with unarmed robbery and assault and battery with injuries, Respondents notified the Court of their intent to re-detain Lunn after his release from state custody and transfer him to California for an interview with Cambodian authorities. Pet'r's SOUF ¶ 24; Resp'ts' SOUF ¶ 24. The Court denied this request. ECF No. 57, Order. The Court later revised its order on October 27, 2017, allowing Lunn's detention and transport by ICE to conduct a nationality verification interview with Cambodian officials. ECF No. 66, Order. However, ICE did not end up transporting Lunn to any Cambodian nationality interviews. Resp'ts' SOUF ¶ 28.

4

Since Lunn's release from ICE custody in May 2017, Lunn has been charged with two crimes—in October 2017, as previously noted, he was charged with unarmed robbery and assault and battery with injuries, and as recently as March 2020, he was charged with armed robbery. *Id.* at ¶¶ 24, 32. The unarmed robbery charge was dropped, but the armed robbery charge remains pending. Pet'r's SOUF ¶ 29; Resp'ts' SOUF ¶ 32. Each of these charges constitute additional violations of the conditions of his release. Resp'ts' SOUF ¶ 22.

## SUMMARY JUDGMENT STANDARD

The Court should find that there is no genuine dispute of material fact and conclude that Respondents are entitled to judgment as a matter of law. Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it can affect the substantive outcome of the litigation, and a dispute is genuine if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require us to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'" *Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 51 (1st Cir. 2010) (quoting *Adria Int'l Group, Inc., v. Ferré Development, Inc.*, 241 F.3d 103, 107 (1st Cir. 2001)).

## ARGUMENT

## I. *THURAISSIGIAM* FORECLOSES LUNN'S CLAIM

Lunn seeks an order from this Court requiring ICE to obtain a judicial finding of SLRRFF prior to any future re-detention. However, the Supreme Court's recent decision in *Dep't of Homeland Sec. v. Thuraissigiam* decisively forecloses this claim. 140 S. Ct. 1959, 1971 (2020).

5

The Supreme Court reaffirmed that the "historic role of habeas is to secure release from custody." *Id.* at 1970. *Thuraissigiam* makes clear that the relief Lunn seeks is not a remedy in habeas because such relief "falls outside the scope of the common-law habeas writ." 140 S. Ct. at 1970 ("Such relief might fit an injunction or writ of mandamus . . . but that relief falls outside the scope of the common-law habeas writ."). Therefore, the Court should conclude that it lacks jurisdiction to review Lunn's habeas petition and claims for injunctive relief, and grant Respondents' motion.

In *Thuraissigiam*, the Supreme Court held that a noncitizen seeking to prevent his removal may not invoke the Suspension Clause to do so. *Id.* at 1968-71. While the focus of the decision was whether the jurisdiction-limiting provisions of 8 U.S.C. § 1252(e)(2) violate the Suspension Clause, the Court ruled that "[h]abeas has traditionally been a means to secure *release* from unlawful detention." *Id.* at 1963. The respondent in *Thuraissigiam*, however, sought to *prevent* his release, to obtain review of an asylum claim, or to obtain authorization to remain in the country. *Id.* Because the respondent did "not want 'simple release' but, ultimately, the opportunity to" either avoid "removal" or to "remain lawfully in the United States ... the relief requested falls outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at 1971.

The Supreme Court's decision squarely forecloses the Court from "issu[ing] a non-advisory injunction." ECF No. 26 at 2. Lunn seeks to prevent ICE from re-detaining him unless ICE obtains a finding from the Court that his removal is significantly likely in the reasonably foreseeable future. Mem. in Support of Pet'r's Mot. Summ. J. 17-20. However, "[c]laims so far outside the 'core' of habeas" such as here, "may not be pursued through habeas." *Thuraissigiam*, 140 S. Ct. at 1971.

Lunn's contention that the Court has jurisdiction to review his habeas petition pursuant to the Suspension Clause and to grant him injunctive relief, *see* ECF No. 1 at ¶ 8, is no longer tenable

in light of *Thuraissigiam*. Lunn does not seek "simple release," but instead challenges ICE's decision to revoke his release when he violates a release condition and re-detain him to assess his conditions of release, SLRRFF, and to execute his valid removal order. Mem. in Support of Pet'r's Mot. Summ. J. 7-17. Under *Thuraissigiam*, the writ of habeas corpus as preserved by the Suspension Clause does not encompass claims seeking to challenge such decisions of the Executive Branch to execute a removal order. 140 S. Ct. at 1966-72; *see also Hamama v. Adducci*, 912 F.3d 869, 875-76, 880 (concluding "[b]ecause the common-law writ could not have granted Petitioners' requested relief, the Suspension Clause is not triggered here" and "[t]here is no Suspension Clause violation because the Suspension Clause can only be triggered when a petitioner is requesting release from custody. That is not what Petitioners request in the instant case."). And indeed, the Supreme Court contemplated the circumstances presented by Lunn's case—to wit: a habeas petition seeking injunctive relief beyond release from detention—rejecting any cognizable right in habeas to do anything other than to secure "simple release." *Id.* at 1971.

The only plausible claim preserved by the Suspension Clause is a request for "release" to one's home country. *Id.* at 1970. Were the government refusing to release Lunn to his home country after an order of removal issued, Lunn could "claim an entitlement to release," but only if such release "occurs in the cabin of a plane bound for" his home country. *Id.*; *see also id.* ("That would be the equivalent of the habeas relief Justice Story ordered in a case while riding circuit. He issued a writ requiring the release of a foreign sailor who jumped ship in Boston, but he provided for the sailor to be released into the custody of the master of his ship. *Ex parte D'Olivera*, 7 F. Cas. 853, 854 (No. 3,967) (CC Mass. 1813)."). Lunn does not seek "release[]" at all; instead he seeks "entirely different relief" requiring a judicial finding of SLRRFF *prior* to any future re-detention. *Id.* That is not cognizable in habeas under the Suspension Clause. *See id.* at 1971.

Because Lunn seeks to prevent his re-detention and seeks "a non-advisory injunction" requiring ICE to obtain a judicial finding of SLRRFF prior to any future detention, rather than simply secure his release from detention, *Thuraissigiam* forecloses any argument that his claims are cognizable in habeas as encompassed by the Suspension Clause. ECF No. 26 at 2. Accordingly, the Court must deny Lunn's motion and grant Respondents judgment as a matter of law.

## II.     8 U.S.C. § 1252(g) DIVESTS THIS COURT OF SUBJECT-MATTER JURISDICTION

In no uncertain terms, Congress barred courts from reviewing "any cause or claim" that "aris[es] from the decision or action" to "execute removal orders." 8 U.S.C. § 1252(g). Even if Lunn avoids the Supreme Court's ruling in *Thuraissigiam*, § 1252(g) precludes judicial review of his request for an injunction requiring Respondents to first seek permission from this Court to re-detain him by establishing that his removal has become reasonably foreseeable. Mem. in Support of Pet'r's Mot. Summ. J. 1, 7, 17-20. Such a request asks this Court to interfere with the actual removal process, and the INA sharply limits the manner and scope of judicial review of all claims connected to execution of a removal order. *See* 8 U.S.C. § 1252. Simply put, an injunction requiring ICE to obtain a judicial finding of SLRRFF prior to re-detaining Lunn for purposes of removal is prohibited by 8 U.S.C. § 1252(g); *see also INS v. St. Cyr*, 533 U.S. 289, 311 n.34 (2001).

Section 1252(g), as amended by the REAL ID Act, specifically deprives district courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). In other words, this provision removes district court jurisdiction over "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings,

*adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.* *("AADC")*, 525 U.S. 471, 482 (1999); *see also Elgharib v. Napolitano*, 600 F.3d 597, 606-07 (6th Cir. 2010) (explaining that § 1252(g)'s reference to "Attorney General" now refers to the Secretary of Homeland Security). Accordingly, if the challenged conduct falls within one of these three discrete areas, § 1252(g) bars the claim. *See AADC*, 525 U.S. at 482. This particular limitation exists for "good reason": "[a]t each stage the Executive has discretion to abandon the endeavor." *Id*. at 483-84. Judicial review is provided through the familiar petition-for-review process and the immigration courts, the Board of Immigration Appeals, and the courts of appeals have ample authority to halt the execution of a removal order. *See id*. §§ 1252(a)(1), (b)(3)(B); *see also* 8 C.F.R. §§ 1003.2(f), 1003.6(b), and 1003.23(b)(1)(v).[1]

Section 1252(g)'s jurisdictional bar applies "notwithstanding any other provision of law (statutory or nonstatutory)"—"[e]xcept as" otherwise "provided in" § 1252. *Id*. This unequivocal language protects the government's authority to make "discretionary determinations" over whether and when to execute a removal order, *AADC*, 525 U.S. at 485, and reaches constitutional claims. *Elgharib*, 600 F.3d at 606 ("[T]he Constitution qualifies as 'any other provision of law (statutory or nonstatutory)' under all subsections of § 1252."). The provisions of 8 U.S.C. § 1252 thus grant exclusive jurisdiction to review removal orders and related matters to the courts of appeals and deprive district courts of any such review power.

Here, Lunn challenges one of those discrete actions— the execution of his removal order— and he attempts to couch his claims as constitutional challenges. Mem. in Support of Pet'r's Mot. Summ. J. 7-18. However, he is asking this Court to prevent Respondents from revoking his

---

[1] Notably, Lunn never challenged his removal order by way of appeal to the Board of Immigration Appeals or through a motion to reopen. *See* Pet'r's SOUF at ¶ 4.

supervised release, without first obtaining a judicial finding of SLRRFF, to execute his removal order. When a noncitizen violates an OSUP, that violation triggers ICE's revocation of release and detention of the noncitizen for purposes of removal as well as for re-assessment of release conditions. *See* § 241.13(i)(1) ("The alien may be continued in detention . . . to effect the conditions under which the alien had been released."). Specifically, part of ICE's execution of the removal order comprises its re-assessment of conditions of release, SLRRF, and its ability to obtain travel documents. *See generally* 8 C.F.R. §§ 241.4; 241.13; Resp'ts' SOUF ¶¶ 8, 13. The Court does not have jurisdiction to hear claims challenging these actions by ICE to execute a removal order. *See Andoh v. Barr*, No. 19 CIV. 8016 (PAE), 2019 WL 4511623, at *3 (S.D.N.Y. Sept. 18, 2019) (finding lack of jurisdiction to hear similar challenges to OSUP revocation); *Probodanu v. Sessions*, No. SACV 18-00888-CJC-KS, 2019 WL 3024872, at *6 (C.D. Cal. June 28, 2019) (same).

Further, a country's repatriation preferences as well as foreign relations with particular countries are subject to change and just because ICE cannot obtain travel documents for a noncitizen at one point does not mean those circumstances will not change. Resp'ts' SOUF ¶ 31. For this reason, judicial deference is "especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999); *accord Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("[T]he authority of the executive branch to fill gaps is especially great in the context of immigration policy."). While Respondents' position is that every country has a legal obligation to accept the return of its nationals whom another state seeks to expel, remove, or deport, the cooperation of the receiving country is essential. Respondents must have the latitude to work with Cambodia on repatriation without judicial interference. Because

Cambodians require in-person nationality verification interviews at one location, it is nearly impossible for ICE to ascertain SLRRFF prior to detention for purposes of an interview. Resp'ts' SOUF ¶¶ 21, 24. If the Court requires a judicial finding of SLRRFF prior to OSUP revocation, ICE would be unable to detain and transport Lunn for an interview to obtain a travel document.

Thus, the decision to revoke an OSUP and re-detain a noncitizen for removal arises from the execution of the removal order. Likewise, the decision to re-detain a noncitizen when he violates an OSUP arises from the execution of a removal order. But for the decision to execute a removal order, there would be no assessment of SLRRFF. 8 C.F.R. § 241.4(l). Accordingly, this Court lacks jurisdiction over Lunn's claims, and the Court should deny his motion for summary judgment and grant judgment in favor of Respondents.

### III.    THE IMMIGRATION AND NATIONALITY ACT AND *ZADVYDAS* PERMIT ICE TO REVOKE LUNN'S RELEASE TO RE-ASSESS SLRRFF

The plain language of 8 U.S.C. § 1231(a)(6) authorizes the detention of a noncitizen who is subject to a final order of removal for "a period reasonably necessary to bring about that noncitizen's removal from the United States." *Zadvydas*, 533 at 689. The Supreme Court has concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," *id.* at 699, but it recognized six months as a "presumptively reasonable period of detention," *id.* at 701. Section 1231(a)(6) permits a noncitizen under a final removal order to be "detained beyond the removal period and, if necessary, . . . subject to the terms of supervision in paragraph (3)." Paragraph 3 states that a noncitizen who "is not removed within the removal period . . . shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

Lunn argues that post-order detention under § 1231(a)(6) and *Zadvydas* require SLRRFF as the substantive prerequisite to any revocation of release and subsequent detention in order to comport with Due Process. Mem. in Support of Pet'r's Mot. Summ. J. 8-11. However, Lunn's argument ignores

the plain language of § 1231(a)(6), and contradicts the Supreme Court's explicit language in *Zadvydas*, which permits Respondents to detain him if he violates his conditions of release. 533 U.S. at 695, 699-700 (allowing for incarceration for violating the OSUP conditions). For instance, if a noncitzen subject to a removal order fails to report to ICE as directed as a condition of release, ICE has no assurance that he will be available for execution of the removal order when that becomes reasonably foreseeable. *See generally* 8 C.F.R. §§ 241.4; 241.13. ICE should therefore be permitted to re-detain him to confirm location so that when removal becomes possible, ICE can locate him to effect removal. In other words, neither § 1231(a)(6) nor *Zadvydas* require ICE to definitively ascertain SLRRFF *prior* to revoking a noncitizen's release based on a violation of release conditions and detaining him. Likewise, neither § 1231(a)(6) nor *Zadvydas* stand for the proposition that post-order custody after revocation of release becomes punitive because ICE did not assess SLRRFF or obtain travel documents for purposes of executing a person's removal order prior to taking him back into custody. Indeed, here where an interview with the Cambodian government is essential to obtain travel documents, SLRRFF would be virtually impossible to have prior to revocation of release. Resp'ts' SOUF ¶¶ 21, 24.

Also unavailing is Lunn's argument that the regulations which permit detention of an individual who violates conditions of release in order to effect removal and to effect the conditions of release are in clear violation of *Zadvydas's* holding that detention is no longer authorized once removal is no longer reasonably foreseeable. Mem. in Support of Pet'r's Mot. Summ. J. 11-12. However, without undue repetition, the Supreme Court in *Zadvydas* explicitly stated that release under such conditions and re-detention for violating such conditions is permitted. 533 U.S. at 700 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."). While Lunn argues that *Zadvydas* only permitted such a return to custody in the context of criminal prosecution, the *Zadvydas* Court did not so limit its holding. Indeed, the Supreme

12

Court in *Zadvydas* was reviewing a civil immigration custody provision. Moreover, and as discussed *infra*, such a result would render the conditions a nullity and would permit a noncitizen with a final order of removal to be "living at large," a prospect the *Zadvydas* Court rejected. 533 U.S. at 696. That *Zadvydas* permits re-detention when a person violates an OSUP also counters Lunn's argument that a prior detention was unlawful because ICE allegedly waited two months before attempting to obtain a travel document. Mem. in Support of Pet'r's Mot. Summ. J. 17.

Lunn's challenge to Respondents' ability to detain him for violating his conditions of release unless ICE first ascertains SLRRFF renders those conditions toothless. Pet'r's Mot. Summ. J. 12-13. If ICE were unable to detain a noncitizen for violating conditions of release unless such noncitizen's removal were reasonably foreseeable, then those conditions of release are hollow; to wit, one could violate them indefinitely with no consequence until such time as that person is likely to be removed. Such a result would render the statutorily prescribed conditions superfluous and meaningless. Moreover, ICE can redetain someone who has violated their OSUP, in part, to reassess the conditions of release and to determine if other or additional conditions would be more appropriate. Resp'ts' SOUF ¶ 23. Along those lines, the Court should reject Lunn's request that this Court enjoin Respondents from detaining him until they obtain a judicial finding of SLRRFF because such an injunction would render the OSUP conditions of no value. For all of these reasons, the agency is in the best position to make a SLRRFF determination. Thus, the Court should deny Lunn's motion and rule in favor of Respondents.

## IV. LUNN HAS NOT DEMONSTRATED A PROCEDURAL OR SUBSTANTIVE DUE PROCESS VIOLATION CONCERNING 8 C.F.R. §§ 241.4 OR 241.13

No authority—constitutional, statutory, or regulatory—precludes ICE from revoking a person's release and re-detaining that person upon violation of the conditions of release in order to assess SLRRFF and ICE's ability to effect the removal order. Nor does anything preclude ICE from re-detaining a person upon violation of an OSUP to re-assess and potentially modify

conditions of release. *See* § 241.13(i)(1) ("The alien may be continued in detention . . . to effect the conditions under which the alien had been released."). In these circumstances, the substantive justification for detention is to effect removal and to re-assess condition of release prior to removal. *Zadvydas*, 533 U.S. at 696-97. The regulations promulgated in light of *Zadvydas* provide the necessary due process protections in light of the competing interests at stake. However, Lunn challenges these regulations arguing that they violate substantive and procedural due process. Mem. in Support of Pet'r's Mot. Summ. J. 11-18.

The current regulations prescribe procedures for re-detaining a noncitizen with a final order of removal and were promulgated in response to *Zadvydas*. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001) (codified at 8 C.F.R. §§ 241.4, 241.13). Pursuant to these regulations, ICE conducts periodic post-order custody reviews to determine whether a noncitizen subject to a final removal order should continue to be detained beyond the initial removal period. *See* 8 C.F.R. §§ 241.4; 241.13(a). If ICE determines that there is no SLRRFF, a noncitizen may be released on an OSUP. *Id.* at § 241.13(h). Further, ICE retains discretion to revoke release and return an individual to custody when that individual violates the conditions of his release. *Id.* at §§ 241.4(l)(1); 241.13(i)(1); *Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018) ("The regulation prescribes in considerable detail a set of custody reviews, release procedures, and other processes."). ICE must notify the noncitizen of the reasons for revocation of release upon his return to custody, and conduct an informal interview after return to custody so the noncitizen may respond to the reasons for revocation. 8 C.F.R. § 241.4(l)(1); 241.13(i)(3). The noncitizen may submit any evidence or information that he believes supports his contention that he did not violate the OSUP *or* demonstrates that there is no SLRRFF. *Id.* at § 241.13(i)(3). That the regulation is written in the disjunctive here means that the violation of the

OSUP alone can be a lawful basis for ICE to re-detain. If the noncitizen is not released after the informal interview, then the normal custody review process goes forward with notification of record review and interview within 3 months. *Id.* at § 241.4(l)(3).

### A.  The Regulations Do Not Violate Lunn's Substantive Due Process Rights

Lunn frames his liberty interest as the right to remain released and under supervision while continuing to freely violate the conditions of his release and avoid detention unless ICE determines, prior to revoking his release and re-detaining him for purposes of removal, that there is SLRRFF. Mem. in Support of Pet'r's Mot. Summ. J. 11-12. He concedes that *Zadvydas* "expressly recognizes that the government has the ability to detain individuals for violating conditions of release," but then he falsely asserts that *Zadvydas* holds that such detention would pass constitutional muster only if it is "*criminal* in nature." *Id.* at 12. Lunn is wrong.

In this case, ICE exercised its discretion to re-detain Lunn after he violated the conditions of his release to execute his removal order. 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(1).[2] Respondents acted lawfully in re-detaining Lunn as he had made himself a priority for removal when he violated the conditions of his release and ICE had the right to exercise its discretion to re-assess SLRRFF and its ability to obtain a travel document for him. Resp'ts' SOUF ¶ 23. Lunn does not have a

---

[2]  Despite the fact that the determination of whether to detain or release a noncitizen may end with either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, there is no practical distinction regarding revocation of release for noncitizens who have been released under 8 C.F.R. § 241.4 as compared to 8 C.F.R. § 241.13. In other words, the underlying facts that serve as the basis for revocation under one provision also serve as the basis for revocation under the other provision. For example, violating the terms of release or a change of circumstances resulting in a significant likelihood of removal of the noncitizen in the foreseeable future serve as bases for revocation under either section. In addition, the due process requirements under each section are the same. Noncitizens who have had their release revoked under either section are entitled to notice of the reasons for the revocation, an informal interview promptly after return to custody, and an opportunity to respond. For this reason, Lunn's notices of revocation and release did not contain specific citation to the applicable regulatory provisions. Pet'r's SOUF ¶¶ 7, 10, 22.

protectable interest against the revocation of an OSUP to effect removal. An OSUP does not permit a noncitizen to stay in the United States indefinitely while violating his release conditions. Such an interpretation would run directly counter to the purposes of removal and supervision orders.

## B. The Regulations Do Not Violate Lunn's Procedural Due Process Rights

Each time Mr. Lunn was released or had his OSUP revoked, he was provided notice of the release, notice of the revocation of release, and notice of the consequences of violating the conditions of release, which included detention. Resp'ts' SOUF ¶¶ 7, 10, 22. Respondents have provided Lunn with all of the notice he is due, and therefore the Court should find that Lunn's procedural due process arguments lack merit.

In addition to Lunn's due process challenge concerning his prior detentions and releases, Lunn argues that he has a procedural due process right to "notice and a prompt evidentiary hearing to refute the allegations against [him] . . . [and] the government [should] bear the burden of proof and establish backward-looking factual findings under a reasonable doubt standard." Mem. in Support of Pet'r's Mot. Summ. J. 16. Lunn has not demonstrated that anything more than the extensive procedures for revocation of release and assessment of SLRRFF provided by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 is required. *See Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *7 (D. Mass. Oct. 1, 2018) (no notice required in advance of informal interview).

The Supreme Court has held that appropriate procedural safeguards must be provided before any person may be deprived of life, liberty, or property, *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972), and due process requirements extend to noncitizens who have entered the United States, *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). However, an individual must show that the interest is one protected by the Constitution or created by statute. *See Kerry v. Din*, 135 S. Ct. 2128, 2136 (2015) (due process rights attach only to constitutional liberty interests or those

16

"created by nonconstitutional law, such as a statute"); *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 463 (1989) (plaintiff must establish a "legitimate claim of entitlement" to the relief sought to succeed on a procedural due process claim). As part of this determination, courts must "examine closely the language of the relevant statutes and regulations." *Thompson*, 490 U.S. at 461. The Supreme Court has required that a regulation "contain explicitly mandatory language" in order to create an expectation of entitlement. *Id.* at 463. Generally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Clukey v. Town of Camden*, 717 F.3d 52, 56 (1st Cir. 2013).

Here, a post-order detainee is entitled to review of his or her custody status before the expiration of the removal period, *see* 8 C.F.R. § 241.4(k)(1), and at annual intervals thereafter, *see* § 241.4(k)(2). The noncitizen may submit evidence on the likelihood of his removal. *Id.* In accordance with *Zadvydas*, if ICE determines during a custody review that there is not good reason to believe there is SLRRFF, the noncitizen should be released on an OSUP. *Id.* at § 241.13(h). Further, ICE may revoke release and re-detain a noncitizen who violates any of the conditions of release. *Id.* at §§ 241.4(l)(1); 241.13(i)(1) ("The alien may be continued in detention . . . to effect the conditions under which the alien had been released."). Upon revocation, ICE notifies the noncitizen of the reasons for release and provides an initial informal interview where the noncitizen may respond to the reasons for revocation. *Id.* at 241.4(l)(1); 241.13(i)(3). If after the informal interview, the noncitizen is not released, "[t]he normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* at 241.4(l)(3).

Lunn's procedural due process argument fails because he cannot carry his burden to show that he has "a legitimate claim of entitlement to it." *Thompson*, 490 U.S. at 460. Each time Lunn

17

was re-detained he received notice of the reasons for revocation of his release, notice of the conditions of release, notice that he could be detained for violating those conditions, and custody review. Pet'r's SOUF ¶¶ 8-10, 13, 14, 22; Resp'ts' SOUF ¶¶ 7, 10, 22. Lunn has not shown an entitlement—created by the Constitution or by statute—to anything more than the extensive custody review procedures provided in 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *See Din*, 135 S. Ct. at 2136; *Thompson,* 490 U.S. at 460, 463. He certainly has not demonstrated an entitlement to additional notice, a more formal evidentiary hearing, and a shifting of the burden of proof. Accordingly, Lunn's motion should be denied.

V.     **LUNN IS NOT ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF REQUIRING ICE TO OBTAIN A JUDICIAL FINDING OF SLRRFF PRIOR TO RE-DETENTION**

As discussed above, *Thuraissigiam* is clear that a habeas petition provides relief only in the form of a release from custody and does not provide injunctive relief such as that which Lunn seeks in his motion. *See* 140 S. Ct. at 1963; Mem. in Support of Pet'r's Mot. Summ. J. 18-20. However, to the extent the Court entertains Lunn's declaratory and injunctive relief claims, he has not established his entitlement to such a remedy. Injunctive relief may be ordered where (1) the petitioner shows he will prevail on the merits, (2) the petitioner shows he will suffer irreparable harm absent an injunction, (3) harm to the petitioner outweighs the harm to the respondent from an injunction, and (4) an injunction would not adversely affect the public interest. *Joyce v. Town of Dennis*, 720 F.3d, 12, 25 (1st Cir. 2013).

Lunn is unlikely to prevail on his claims that ICE's revocation of his release and detention of him violate Due Process, the INA, or *Zadvydas*. As discussed *supra*, 8 C.F.R. §§ 241.4 and 241.13 specifically and in great detail lay out the grounds for which ICE can revoke an OSUP, which includes a violation of the conditions of release. The fact that Lunn has been released on an

OSUP after each time he has been taken into custody, the OSUP includes notice of the conditions of release, and notice that he could be re-detained, shows that the regulations comport with due process. Resp'ts' SOUF ¶¶ 7, 10, 22. In other words, no authority specifically precludes ICE from revoking release upon an OSUP violation and re-detaining the person in order to subsequently re-assess conditions of release, SLRRFF, and ICE's ability to effect the removal order.

Further, Lunn cannot show a likelihood of future irreparable harm. Lunn contends that in the past ICE has unlawfully detained him because ICE did not ascertain whether there was SLRRFF prior to revoking his release resulting in punitive detention. Mem. in Support of Pet'r's Mot. Summ. J. 18-19. Again, ICE first detained Lunn due to a criminal offense and for the purpose of his removal proceedings. Pet'r's SOUF ¶ 3. Once ICE determined there was no SLRRFF, ICE released him. *Id.* ¶ 7. Thereafter, each time ICE detained Lunn was due to his OSUP violation prompting ICE to re-assess his conditions of release, SLRRFF, and to determine whether it could obtain a travel document to execute Lunn's removal order. Resp'ts' SOUF ¶¶ 7, 10, 22, 23. Each time, ICE released Lunn within three months once ICE determined that there was no SLRRFF and it could not obtain a travel document. Pet'r's SOUF ¶¶ 7, 10, 22. ICE did not violate Lunn's constitutional rights, the INA, or the applicable regulations when it detained him in the past. Therefore, Lunn has failed to show a likelihood of future harm on the basis of his past detentions.

Moreover, the balance of interests tips in favor of Respondents. The relief Lunn seeks—injunctive relief requiring a judicial finding of SLRRFF prior to revocation of an OSUP—creates an unjustifiable burden on the government. Lunn claims that ICE unlawfully detained him for over 300 days since his removal order in 2008; however, that is not the case. Mem. in Support of Pet'r's Mot. Summ. J. 19. ICE lawfully revoked Lunn's release and likewise lawfully sought to re-assess his release conditions and execute his removal order each time he violated his OSUP. To require

judicial approval prior to revocation of an OSUP would significantly harm the flexibility ICE requires for the removal of noncitizens to Cambodia. Resp'ts' SOUF ¶ 21, 24. The time ICE would have to wait to present its case concerning SLRRFF to this Court could mean that ICE misses the window for nationality verification interviews, which often require traveling out of state. This harm outweighs any hardship to Lunn absent injunctive relief because Lunn's unlawful detention claims lack merit and the applicable regulations comport with Due Process.

Finally, it is well-settled that the public interest in enforcement of immigration laws is significant. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009) ("There is always a public interest in prompt execution of removal orders."). Specifically, the continued presence of a noncitizen lawfully ordered removed undermines the streamlined removal proceedings in 8 U.S.C. § 1252, and the consequence of delaying the execution of a removal order is "to permit and prolong a continuing violation of United States law." *AADC*, 525 U.S. at 490. Here, the public interest in enforcing the immigration laws that are applicable to Lunn are great where Lunn has demonstrated a fundamental lack of respect for United States law through his frequent and very recent criminal behavior. Resp'ts' SOUF ¶ 24, 32. Accordingly, the Court should deny Lunn's request for declaratory and injunctive relief.

## CONCLUSION

Respondents respectfully request that the Court grant Respondents' cross-motion for summary judgment. The Court should deny Lunn's motion for summary judgment; specifically, the Court should deny Lunn's requests for habeas and declaratory and injunctive relief.

Dated:   July 24, 2020                    Respectfully submitted,

                                          ETHAN P. DAVIS
                                          Acting Assistant Attorney General
                                          WILLIAM C. PEACHEY
                                          Director
                                          KATHLEEN A. CONNOLLY
                                          Senior Litigation Counsel

                                          */s/ Lindsay M. Vick*
                                          LINDSAY M. VICK
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division
                                          Office of Immigration Litigation
                                          District Court Section
                                          Washington, D.C. 20044
                                          Tel.: (202) 532-4023
                                          Fax: (202) 305-7000
                                          Email: Lindsay.Vick@usdoj.gov

                                          *Counsel for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above Cross-motion for Summary Judgment and Opposition to Petitioner's Motion for Summary Judgment was served upon the attorney of record for each other party on July 24, 2020, through the CM/ECF for the District of Massachusetts. All parties are registered CM/ECF participants and were served electronically, as identified on the Notice of Electronic Filing (NEF).

<i>/s/ Lindsay M. Vick</i>

Lindsay M. Vick
Trial Attorney

Date:   July 24, 2020